1  PAUL F. RUGANI (SBN 342647)
   prugani@orrick.com
2  ORRICK, HERRINGTON & SUTCLIFFE LLP
   2050 Main Street, Suite 1100
3  Irvine, CA 92614-8255
   Telephone:    +1 949 567 6700
4  Facsimile:    +1 949 567 6710

5  RICHARD JACOBSEN (admitted pro hac vice)
   rjacobsen@orrick.com
6  ORRICK, HERRINGTON & SUTCLIFFE LLP
   51 West 52nd Street
7  New York, NY  10019-6142
   Telephone:    +1 212 506 5000
8  Facsimile:    +1 212 506 5151

9  CLEMENT S. ROBERTS (SBN 209203)
   croberts@orrick.com
10 ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
11 405 Howard Street
   San Francisco, CA 94105-2669
12 Telephone:    +1 415 773 5700
   Facsimile:    +1 415 773 5759

13
   Attorneys for Defendants
14 Honey Science, LLC and PayPal, Inc.

15              UNITED STATES DISTRICT COURT

16            NORTHERN DISTRICT OF CALIFORNIA

17

18 TOM CAMPBELL, DANIEL JENKS-            Case No. 5:25-cv-02850-PCP
   BERRYMAN, DECLAN LYNN, ADITHYA
19 NARAYANAN, JAMES POAD, DAN            **DEFENDANTS' MOTION TO DISMISS**
   SORAHAN, ALAN SUTCH, individually and **PURSUANT TO RULE 12(B)(6) AND**
20 on behalf of all others similarly situated, **MEMORANDUM OF POINTS AND**
                                          **AUTHORITIES IN SUPPORT**
21             Plaintiff,
                                          Date:   June 26, 2025
22      v.                                Time:   10:00 AM
                                          Dept:   Courtroom 8, 4th Floor
23 HONEY SCIENCE, LLC, a Delaware limited Judge:  Hon. P. Casey Pitts
   liability company, PAYPAL, INC., a Delaware
24 corporation, and DOES 1 through 50

25             Defendants.

26

27

28

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .................................................................................................. 2

II.     BACKGROUND .................................................................................................... 3

    A.    Plaintiffs Obtain and Use PayPal's Free Honey Browser Extension in the
          U.K. ...................................................................................................................... 3

    B.    PayPal Advertises the Honey Browser Extension on its Website........................... 4

    C.    Plaintiffs' Claims Are Based on PayPal's Honey Advertising. .............................. 6

III.    LEGAL STANDARD ............................................................................................ 6

IV.     ARGUMENT ......................................................................................................... 7

    A.    Plaintiffs' Claims Are Governed By English Law Under the TOU...................... 7

    B.    Plaintiffs Have No Implied Contract Claim.......................................................... 8

        1.    The Implied Contract Claim Is Foreclosed By The Express
              Contract. ...................................................................................................... 8

        2.    Plaintiffs Have Not Alleged The Existence Of An Implied Contract. ...... 10

        3.    Plaintiffs Fail To Allege Actual Damages. ................................................ 12

    C.    Plaintiffs Have No California Unfair Competition Law Claim. .......................... 13

        1.    Plaintiffs' UCL Claim Is Foreclosed By The TOU. ................................. 13

        2.    Plaintiffs Cannot Sue Under The UCL Because Their Alleged Harm
              Did Not Occur in California...................................................................... 14

        3.    Plaintiffs' UCL Claim Fails on its Own Terms. ....................................... 15

            a.    Plaintiffs Do Not Have Standing Under the UCL........................ 15

            b.    Plaintiffs Do Not Allege PayPal's Advertisements Were
                  False or Misleading. ................................................................... 17

            c.    Plaintiffs Do Not Allege Actions That Are Substantially
                  Injurious to Consumers ............................................................... 19

V.      CONCLUSION .................................................................................................... 20

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Amalgamated Transit Union, Loc. 1756, AFL-CIO v. Super. Ct.*,
5
    46 Cal. 4th 993 (2009) .................................................................................. 13

6

*Anunziato v. eMachines, Inc.*,
    402 F. Supp. 2d 1133 (C.D. Cal. 2005)......................................................... 18

7

*Ashcroft v. Iqbal*,
8
    556 U.S. 662 (2009) ........................................................................................ 6

9

*Bell Atl. Corp. v. Twombly*,
10
    550 U.S. 544 (2007)......................................................................................... 6

11

*Buttram v. Owens–Corning Fiberglas Corp.*,
    16 Cal. 4th 520 (1997) .................................................................................. 13

12

*Campusano v. BAC Home Loans Servicing LP*,
13
    2012 WL 13008750 (C.D. Cal. Jan. 20, 2012) ............................................ 14

14

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
15
    20 Cal. 4th 163 (1999) .................................................................................. 19

16

*de Fontbrune v. Wofsy*,
    838 F.3d 992 (9th Cir. 2016)........................................................................... 7

17

*Donovan v. RRL Corp.*,
18
    26 Cal. 4th 261, 27 P.3d 702 (2001) ...................................................... 10, 11

19

*Drum v. San Fernando Valley Bar Ass'n*,
20
    182 Cal. App. 4th 247 (2010)....................................................................... 20

21

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of California*,
    2018 WL 10072961 (C.D. Cal. May 1, 2018) ............................................. 16

22

*Ehret v. Uber Techs., Inc.*,
23
    68 F. Supp. 3d 1121 (N.D. Cal. 2014) ......................................................... 14

24

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011)................................................................. 16, 17

25

*Feld v. Am. Exp. Co.*,
26
    2010 WL 9593386 (C.D. Cal. Jan. 25, 2010) ............................................. 13

27

*Harris v. Time, Inc.*,
28
    191 Cal. App. 3d 449 (Ct. App. 1987) ........................................................ 11

*Haskins v. Symantec Corp.*,
  2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) ........................................................................ 19

*Huynh v. Quora, Inc.*,
  2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ..................................................................... 13

*Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*,
  2010 WL 3619884 (N.D. Cal. Sept. 10, 2010) ..................................................................... 15

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009).................................................................................. 7, 13, 17

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ................................................................................................................ 7

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005).................................................................................................. 4

*Kurcharczyk v. Regents of Univ. of Cal.*,
  946 F. Supp. 1419 (N.D.Cal.1996) .......................................................................................... 9

*Mattel, Inc. v. MGA Entertainment, Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2011).............................................................................. 15, 16

*McLaughlin v. Aussie Pet Mobile, Inc.*,
  2008 WL 11637482 (C.D. Cal. Dec. 17, 2008) ................................................................... 14

*Mountain View Surgical Ctr. v. Cigna Health Corp.*,
  2015 WL 5456592 (C.D. Cal. Sept. 17, 2015)..................................................................... 12

*Nedlloyd Lines B.V. v. Superior Ct.*,
  3 Cal. 4th 459 (1992) ......................................................................................................... 7, 8

*Norwest Mortg., Inc. v. Superior Ct.*,
  72 Cal. App. 4th 214 (1999).................................................................................... 13, 14, 15

*O'Connor v. Uber Techs., Inc.*,
  58 F. Supp. 3d 989 (N.D. Cal. 2014) ................................................................................ 4, 10

*Pac. Structures, Inc. v. Greenwich Ins. Co.*,
  No. 21-CV-04438-HSG, 2022 WL 875639 (N.D. Cal. Mar. 24, 2022) ................................ 17

*Papasan v. Allain*,
  478 U.S. 265 (1986)................................................................................................................ 6

*Roley v. Google LLC*,
  40 F.4th 903 (9th Cir. 2022).................................................................................................. 11

*Rutherford Holdings, LLC v. Plaza Del Rey*,
  223 Cal. App. 4th 221 (2014)................................................................................................. 9

iii

*Slattery v. Athena Cosms., Inc.*,
    740 F. Supp. 3d 1009, 1020 (C.D. Cal. 2024) ....................................................... 14

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997).............................................................................. 18

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011) ....................................................................................... 14

*Svenson v. Google Inc.*,
    65 F. Supp. 3d 717 (N.D. Cal. 2014) .................................................................. 13

*Svenson v. Google Inc.*,
    2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ...................................................... 20

*T & M Solar and Air Conditioning, Inc. v. Lennox Int'l Inc.*,
    83 F. Supp. 3d 855 (N.D. Cal. 2015) ........................................................... 11, 12

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ......................................................................................... 17

*Turner v. City & Cnty. of San Francisco*,
    788 F.3d 1206 (9th Cir. 2015).............................................................................. 12

*Wesch v. Yodlee, Inc.*,
    2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) .................................................... 16

*Winzig v. Stockpile Invs., Inc.*,
    2021 WL 4812956 (C.D. Cal. July 2, 2021) ....................................................... 16

*Yastrab v. Apple Inc.*,
    173 F. Supp. 3d 972 (N.D. Cal. 2016) ................................................................ 17

**Statutes**

California's Unfair Competition Law .............................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) ......................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 6

Fed. R. Civ. P. 44.1 ......................................................................................................... 7

1

## NOTICE OF MOTION AND RELIEF SOUGHT

PLEASE TAKE NOTICE that on June 26, 2025 at 10:00 AM, or as soon thereafter as may be heard by the Honorable District Judge P. Casey Pitts, United States District Court, Northern District of California, San Jose Courthouse, Courtroom 8, 4th Floor, 280 South First Street, San Jose CA 95113, Defendants Honey Science, LLC and PayPal, Inc. (together "PayPal") will and hereby do move to dismiss Plaintiffs' First Amended Complaint.

This motion is based upon this notice of motion and motion, the memorandum of points and authorities in support that follows, the Request for Judicial Notice, the Declaration of Julian Chan in Support of Defendants' Motion to Dismiss ("Chan Declaration") and exhibits thereto, the Declaration of Simon Willis Regarding English Law in Support of Defendants' Motion to Dismiss ("Willis Declaration"), the proposed order filed concurrently herewith, all pleadings and papers on file in this action, the arguments of counsel, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing on this motion.

Dated: April 16, 2025                          ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _/s/ Paul F. Rugani_
PAUL F. RUGANI
Attorney for Defendants
HONEY SCIENCE, LLC and PAYPAL,
INC.

DEFENDANTS' MOTION TO DISMISS
5:25-CV-02850-PCP

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    **INTRODUCTION**

Plaintiffs Tom Campbell, Daniel Jenks-Berryman, Declan Lynn, Adithya Narayanan, James Poad, Dan Sorahan, and Alan Sutch ("Plaintiffs") are U.K. citizens who downloaded PayPal's free Honey browser extension in the U.K. and used it to obtain discounts when shopping online while in the U.K.  Plaintiffs now sue PayPal alleging the free service Honey provided breaches an implied contract between Plaintiffs and PayPal and violates California's Unfair Competition Law ("UCL").  Their claims fail as a matter of law.

By downloading and/or using the Honey browser extension, Plaintiffs agreed to the Honey Terms of Use ("TOU"), which provide that any dispute concerning the parties' relationship is "governed by the laws of England and Wales."  The Court should, therefore, evaluate the Plaintiffs' claims under English law.

Under English law, a party cannot imply a term into a contract where there is a written contract to the contrary.  That is the case here.  Plaintiffs contend PayPal's advertisements about Honey constitute an implied contract to provide users the "best" price and the "biggest" savings, every time.  The TOU specifically address the terms on which Honey provides coupon codes and, contrary to Plaintiffs' theory, expressly provide that Honey "may not always find you the best deal," "does not promise or guarantee . . . the best prices, best terms or lowest rates available," and that "PayPal is not responsible for any missed savings or rewards opportunities."  The TOU thus expressly preclude the implied contract claim.  California law would compel the same outcome—it does not permit Plaintiffs to pursue an implied contract claim where the parties have an express contract governing the same subject matter.

Plaintiffs' claim for breach of an implied contract separately fails because, under English law, advertisements do not carry contractual weight where—as here—the parties contemplated subsequent agreement to written terms, particularly where those written terms contradict the advertisements.  Likewise, under California law, advertisements and statements alone, without accompanying conduct, are insufficient to form an implied contract.  Nor have Plaintiffs properly pled they were damaged.

Plaintiffs' California Unfair Competition Law claim is also improper. *First,* having agreed to English law, Plaintiffs cannot advance a claim that only arises under California law. *Second*, even if the Court were to ignore the parties' choice of law, Plaintiffs cannot advance a UCL claim because the statute does not apply extraterritorially—it has no application where a group of U.K. citizens challenge conduct and seek redress for alleged injuries that occurred entirely abroad. *Third,* because Plaintiffs plead a species of fraud, their UCL allegations are subject to Rule 9(b)'s heightened pleading standard, which Plaintiffs do not meet. For example, Plaintiffs do not allege the existence and availability of any specific, "better" coupon code which they were allegedly denied—much less a coupon code they were entitled to. All Plaintiffs allege is that merchants control the availability of their coupon codes on Honey. But that does nothing to advance Plaintiffs' claims because the codes belong to the merchants to make available, or not, as they see fit. The allegation that merchants do sometimes remove codes from Honey's system does not remotely suggest Honey withheld codes a merchant otherwise would have recognized— much less that it withheld codes Plaintiffs had a right to receive.

Plaintiffs likewise do not allege loss of money or property under the UCL: the lost opportunity to save more in a particular transaction is (i) not a loss for which the UCL provides a remedy and (ii) not cognizable economic harm. Nor do Plaintiffs allege anything "unfair" about how Honey advertises and provides its free service to consumers.

For all those reasons, Plaintiffs' First Amended Complaint ("FAC") should be dismissed with prejudice.

## II.    BACKGROUND

### A.    Plaintiffs Obtain and Use PayPal's Free Honey Browser Extension in the U.K.

Honey is a downloadable browser extension for computers and mobile devices. FAC ¶ 16. Honey is completely free to obtain and use. *Id.* Among the free services Honey provides its users is a tool that automatically searches for and applies coupon codes to save users money on their online purchases. *See id.* ¶¶ 16-18. Plaintiffs are all citizens and residents of the U.K. "who downloaded the Honey browser extension from within the U.K." to use when shopping online in the U.K. *Id.* ¶ 31. To download the browser extension, "[e]ach Plaintiff …

DEFENDANTS' MOTION TO DISMISS
5:25-CV-02850-PCP

provided his or her email through the Honey website," *id*. ¶ 33, and, in the course of doing so, was required to accept Honey's U.K. TOU.[1]  *See* Chan Declaration ¶¶ 6-9.  Those terms apply "regardless of whether you are a 'Member' (which means you have created an account with Honey) or are a 'Visitor' (which means that you are using the Service but have not created an account with Honey)."  Chan Decl. Ex. 2 at 1.  Further, the TOU "and [users'] relationship with Honey under [the TOU], shall be governed by the laws of England and Wales."  *Id*. at 12.

The TOU expressly address the allegations in this case.  They repeatedly advise users that the browser extension may not always find the best coupon:

- "While we try and find you the best available discounts and coupons, and to identify low prices, we may not always find you the best deal. PayPal is not responsible for any missed savings or rewards opportunities."

- "Offers, coupons, and discount codes are provided subject to availability. Exclusions, restrictions, and terms and conditions (including third-party merchant exclusions, restrictions, and terms and conditions) may apply. Deals change often, and due to this, your application of offers, coupons and discount codes at checkout may or may not result in savings for your order."

- "PayPal does not promise or guarantee that the product details, prices, coupon availability or other service terms, rates or rewards offered by any particular advertiser or other third party via our Service are the best prices, best terms or lowest rates available in the market."

*Id.* at 2-3.  These provisions are also consistent with reasonable users' expectations—any internet search tool will not always find everything the user is looking for.

### B.    PayPal Advertises the Honey Browser Extension on its Website.

Plaintiffs allege PayPal advertises the free benefits and services Honey provides to its consumers on its website.  FAC ¶¶ 19, 27-28.  For example, some advertisements note "Stop

---

[1] As described in more detail in PayPal's Request for Judicial Notice, having selectively detailed in their FAC aspects of the user download experience (including via exhibits with the user sign-up confirmation), Plaintiffs incorporated by reference the entirety of that experience, including acceptance of the Terms of Use.  *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (where plaintiff identified particular pages of a website relevant to their claim, court considered, as incorporated by reference, other pages of the website that users would have seen but were omitted from the complaint).  Further, this Court may take notice of an express contract between the parties (whose authenticity is not subject to dispute) when necessary to demonstrate the absence of an implied contract claim.  *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1001 (N.D. Cal. 2014) (taking notice of Uber's terms of service, via incorporation by reference, in addressing plaintiff's implied contract claim).

1    wasting time and money – Honey helps you find coupon codes on 30,000+ sites;" "Whether

2    you're ordering pizza, picking up shoes, or booking travel, we'll look for coupons when you shop

3    on thousands of sites;" "Still looking for codes on your own? We'll search for them so you don't

4    have to." *Id*. ¶ 27.  Plaintiffs' FAC focuses on advertisements stating that Honey will "search for

5    the internet's best coupons" and apply the "biggest savings to your cart." *Id*.  Plaintiffs do not

6    allege they personally saw these advertisements but instead allege on information and belief they

7    could be seen by "any person who accessed the Honey Website from the U.K." *Id*. ¶ 29.

8    Plaintiffs acknowledge the Honey Website viewable in the U.K. is tailored to U.K. residents,

9    including by displaying currency in pounds rather than dollars, but allege that certain content they

10   access in the U.K. is the same as would be visible to a user in the U.S.  *Id*. ¶ 25.

11       Plaintiffs allege they voluntarily provided their email addresses to Honey when

12   downloading the browser extension and, upon doing so, received an email stating "[i]f there's a

13   better price, we'll find it." *Id*. ¶ 34.  After downloading the Honey browser extension, Plaintiffs

14   allege that, at some point thereafter, they "purchased items over the Internet, and clicked on the

15   Honey button to have PayPal search for and apply the 'best' coupons or discount codes." *Id*.

16   ¶ 36.  While Plaintiffs speculate that "on at least some occasions" Plaintiffs "did not receive the

17   'best' coupons or discount codes because Defendants had agreements with many vendors

18   pursuant to which Defendants would not find and apply the 'best coupons or discount codes" (*id*.

19   ¶ 37), they do not identify any specific agreement with any merchant or any specific transaction

20   in which a coupon was available that would have provided them a "better" deal than Honey

21   returned.  Instead, they rely on PayPal's public statements on the Honey "FAQ" (Frequently

22   Asked Questions) page, which discloses to consumers that Partner vendors (i.e., merchants) can

23   exercise control over which coupons they choose to make available through Honey.  *Id*. ¶ 38.  In

24   light of that disclosure, Plaintiffs allege, on information and belief, "on at least some occasions,

25   each Plaintiff, and each member of the Plaintiff Class, paid more for an item than he or she would

26   have paid if he or she knew that the Honey browser extension did not actually search for the

27   'best' coupons or discount codes." *Id*. ¶ 40.  The FAC not only fails to identify any such situation,

28   but also contains no allegations about how any consumer would have (in this hypothetical

5

situation) found the "better" coupon code that Honey allegedly failed to provide.  There is nothing, for example, explaining how the Plaintiffs would have, in the absence of using Honey, obtained a "better" coupon code using less effort than they were able to using Honey or saved more money than they did through Honey.

### C.     Plaintiffs' Claims Are Based on PayPal's Honey Advertising.

Plaintiffs' operative FAC asserts two causes of action (presented as "legal theor[ies]"). *First*, ignoring the TOU the Plaintiffs accepted when downloading and using the Honey browser extension, Plaintiffs allege the existence of an implied contract.  Specifically, they claim PayPal breached an implied agreement between PayPal and Plaintiffs that provided, "[w]henever a Honey user activates the Honey browser extension when making a purchase, PayPal will cause the Honey browser extension to automatically search the Internet for the 'best' coupons and discount codes." *Id*. ¶ 48.  Plaintiffs allege this breach occurs because PayPal allows merchants to withhold certain coupon codes through Honey.  *Id*. ¶ 50.

*Second*, Plaintiffs allege PayPal breached California's Unfair Competition Law by making allegedly misleading public statements on the Honey Website regarding its practice of searching for and applying the "best" coupons.  *Id*. ¶¶ 53-62.

## III.     LEGAL STANDARD

A complaint must be dismissed where it fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint cannot survive a motion to dismiss unless it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. Legal conclusions—even if couched as factual allegations—need not be accepted as true.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Further, when fraud is alleged, "a party must state with particularity the circumstances constituting fraud."  *See* Fed. R. Civ. P. 9(b).  If a plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the

1    basis of their claim, they are required to satisfy the particularity requirements of Rule 9(b).  *Kearns*

2    *v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

3    **IV.    ARGUMENT**

4        **A.    Plaintiffs' Claims Are Governed By English Law Under the TOU.**

5        Where parties enter into a written agreement that includes a choice of law clause,

6    California law "reflect[s] a strong policy favoring enforcement of such provisions."  *Nedlloyd*

7    *Lines B.V. v. Superior Ct*., 3 Cal. 4th 459, 465 (1992) (citation omitted); *see Klaxon Co. v. Stentor*

8    *Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (noting that a federal court sitting in diversity applies

9    the choice of law rules of the forum state).  "The law of the state chosen by the parties to govern

10   their contractual rights and duties will be applied, even if the particular issue is one which the

11   parties could not have resolved by an explicit provision in their agreement directed to that issue."

12   *Nedlloyd Lines B.V.*, 3 Cal. 4th at 465.  The sole exceptions to this presumptive rule are if "(a) the

13   chosen state has no substantial relationship to the parties or the transaction and there is no other

14   reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be

15   contrary to a fundamental policy of a state which has a materially greater interest than the chosen

16   state in the determination of the particular issue."  *Id.*

17       Here, the parties' agreement, which is enforceable under English law, contains a choice-

18   of-law provision providing that Plaintiffs' "relationship with Honey under th[e] Agreement, shall

19   be governed by the laws of England and Wales."  Chan Decl. Ex. 2 at 12; Willis Decl. ¶¶ 8-18.[2]

20   Neither exception under *Nedlloyd Lines B.V* applies or warrants disregard for the parties' chosen

21   law.  The U.K. has a substantial relationship to the parties and their choice of governing law.

22   Plaintiffs allege each of them and each absent class member are "are citizens and *residents of the*

23   *U.K.* and who are *based within the U.K.*, who downloaded the free *Honey* software browser

24   extension *from within the U.K.*"  FAC ¶ 31 (emphasis added); *see also id.* ¶ 43.  In addition,

---

[2] Pursuant to Federal Rule of Civil Procedure 44.1, PayPal submits the Declaration of Simon
26   Willis, which sets forth the relevant legal principles of U.K. contract law.  *See de Fontbrune v.*
     *Wofsy*, 838 F.3d 992, 994 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Nov.
27   14, 2016) ("[U]nder Rule 44.1's broad mandate, foreign legal materials—including expert
     declarations on foreign law—can be considered in ruling on a motion to dismiss where foreign
28   law provides the basis for the claim.").

DEFENDANTS' MOTION TO DISMISS
                                                                     5:25-cv-02850-PCP

1    Plaintiffs allege PayPal's "advertisements and influencer campaigns [were] directed to *U.K.*

2    *nationals*" and those who "accessed the *Honey* Website *from the U.K.*"  *Id.* ¶¶ 24, 29 (emphasis

3    added).  Because the case concerns U.K. citizens and U.K. residents who viewed advertisements

4    and downloaded the Honey browser extension in the U.K., the U.K. has a "substantial

5    relationship to the parties [and] the transaction" and there is an eminently "reasonable basis for

6    the parties' choice."  *Nedlloyd Lines B.V.*, 3 Cal. 4th at 465.  Nor is there any state with a

7    materially greater interest, particularly given that the events and injuries Plaintiffs allege occurred

8    in the U.K.  As such, there is plainly a "reasonable basis for the parties' choice of law" and

9    English law applies to Plaintiffs' claims.  *Id.*

10             **B.      Plaintiffs Have No Implied Contract Claim.**

11             Plaintiffs' implied contract claim fails for three independent reasons.  *First,* there is a

12    written contract between Plaintiffs and PayPal with terms that contradict the alleged implied

13    contract.  *Second,* Plaintiffs do not adequately allege the existence of an implied contract.

14    Plaintiffs base the existence of the implied contract entirely on PayPal's advertisements, which do

15    not create a contract under the circumstances under either English or California law.  *Third*,

16    Plaintiffs do not allege any actual damages arising out of a breach of any implied contract.

17             **1.      The Implied Contract Claim Is Foreclosed By The Express Contract.**

18             Plaintiffs' breach of implied contract claim is predicated upon allegations that PayPal had

19    an implied contract with Plaintiffs to provide the "best" coupons or discounts.  FAC ¶¶ 48, 50.

20    However, under English law, no term can be implied into a contract if the parties have a written

21    agreement and the terms sought to be implied contradict express terms in the parties' written

22    agreement.  Willis Decl. ¶ 29.  This principle was recognized in *Marks and Spencer plc v BNP*

23    *Paribas Securities Services Trust Company (Jersey) Ltd and another* [2015] UKSC 72, in which

24    the Supreme Court described the operative test as follows:  "[F]or a term to be implied, the

25    following conditions (which may overlap) must be satisfied: (1) it must be reasonable and

26    equitable; (2) it must be necessary to give business efficacy to the contract, so that no term will be

27    implied if the contract is effective without it; (3) it must be so obvious that 'it goes without

28

1    saying'; (4) it must be capable of clear expression; (5) *it must not contradict any express term of*

2    *the contract*." *Id.*

3        Here, the terms Plaintiffs allege should be implied contradict the express terms of the

4    parties' agreement.  Plaintiffs assert the implied terms are that:  "[w]henever a Honey user

5    activates the Honey browser extension when making a purchase, PayPal will cause the Honey

6    browser extension to automatically search the Internet for the 'best' coupons and discount codes,

7    and will apply them to the Honey user's purchase to provide the Honey user with the lowest

8    possible price – ' … the best one …' – to obtain for the Honey user, '… the biggest savings …'"

9    FAC ¶ 48.  But PayPal's TOU address the very same subject matter: the extent to which Honey

10   will find and provide the "best" coupon codes.  And, contrary to Plaintiffs' allegations, the TOU

11   advise users that PayPal may not always identify the largest discounts and disclaim responsibility

12   for any missed savings.  Specifically, the TOU state:

13
14       &bull;  While we try and find you the best available discounts and coupons, and to
     identify low prices, ***we may not always find you the best deal***. *PayPal is not*
     *responsible for any missed savings or rewards opportunities.*

15
16       &bull;  Offers, coupons, and discount codes are provided subject to availability.
     Exclusions, restrictions, and terms and conditions (***including third-party merchant***
17   ***exclusions***, restrictions, and terms and conditions) may apply. Deals change often,
     and due to this, *your application of offers, coupons and discount codes at checkout*
18   *may or may not result in savings for your order*.

19       &bull;  *PayPal does not promise or guarantee* that the product details, prices, coupon
     availability or other service terms, rates or rewards offered by any particular
20   advertiser or other third party via our Service *are the best prices, best terms or*
     *lowest rates available in the market*.
21

22   Chan Decl. Ex. 2 at 2-3.  Because the terms identified by Plaintiffs contradict express terms of the

23   parties' contract, they cannot constitute implied terms under English law.  Willis Decl. ¶¶ 29, 31.

24       The same outcome would follow under California law.  California law provides that a

25   cause of action for implied contract is foreclosed "where there exists between the parties a valid

26   express contract covering the same subject matter."  *Rutherford Holdings, LLC v. Plaza Del Rey*,

27   223 Cal.App.4th 221, 231 (2014); *Kurcharczyk v. Regents of Univ. of Cal.*, 946 F.Supp. 1419,

28   1432 (N.D. Cal. 1996) ("[T]erms that conflict with an express written contract cannot be implied

9

in a written contract."). In *O'Connor v. Uber Tech., Inc.*, 58 F.Supp.3d 989, 1001 (N.D. Cal. 2014), plaintiffs brought a claim for breach of implied contract based on Uber's alleged misrepresentation in advertising that Uber would remit gratuities to drivers. *Id*. The court explained that the breach of implied contract claim conflicted with Uber's Terms and Conditions. *Id*. Accordingly, the court held that plaintiffs failed to state a claim for breach of implied contract because "the purported implied contract encompasses the same subject (Uber's advertising) and requires a result contrary to that required by the Terms and Conditions of the express contract—a result not allowed by California law of contracts." *Id*. Here, Plaintiffs' implied contract claim fails for the same reason: it "encompasses" the same subject matter as Honey's TOU. This is fatal to Plaintiffs' claim.

**2.    Plaintiffs Have Not Alleged The Existence Of An Implied Contract.**

Plaintiffs' implied contract claim separately fails because Plaintiffs have failed to allege the existence of an offer or mutual assent.

Plaintiffs' implied contract claim is predicated exclusively on PayPal's advertisements – i.e., the statements on PayPal's websites. Under English law, the display of an object or service terms is not usually an offer to sell. Willis Decl. ¶ 21. Rather, it is an invitation to negotiate or an "invitation to treat." *Id*. Ultimately, the inquiry is whether the advertiser (here, PayPal) manifested an objective intention to be bound and to create a legal obligation predicated upon the statements. *Id*. Clearly, that is not the case here because the very website Plaintiffs identify discloses that Honey had terms and conditions pertaining to the service by which it *did* intend to be bound. *Id*. ¶ 24. In addition to the mere existence of the TOUs, the fact that their substance contradicts the statements on PayPal's website evince PayPal did not intend for its advertisements to constitute a binding contract. *Id*. ¶ 26.

The same conclusion follows under California law. It is well-settled that an advertisement does not constitute an offer but rather an invitation to negotiate. *See Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271 (2001) ("advertisement or other notice disseminated to the public at large generally does not constitute an offer, but rather is presumed to be an invitation to consider, examine, and negotiate.") (citations omitted). This is because advertisements do not demonstrate

DEFENDANTS' MOTION TO DISMISS
5:25-CV-02850-PCP

1    mutual assent or constitute affirmative conduct demonstrating an intent to be bound by a contract,

2    both of which are essential elements of implied contracts.  *Id.* at 270-71 ("An essential element of

3    any contract is the consent of the parties, or mutual assent[,]" which "usually is manifested by an

4    offer communicated to the offeree and an acceptance communicated to the offeror") (citations

5    omitted); *T & M Solar and Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 873

6    (N.D. Cal. 2015) (an implied contract requires conduct that "further separately implie[s] intent to

7    be bound by such an agreement").

8            An advertisement does not qualify as a firm offer unless it includes clear language

9    directing one to act with no expectation of negotiation.  *See Donovan*, 26 Cal.4th at 272

10   (advertisements rise to the level of formal offers only "where they invite the performance of a

11   specific act without further communication and leave nothing for negotiation."); *Harris v. Time,*

12   *Inc.*, 191 Cal. App. 3d 449, 455 (Ct. App. 1987) (holding that external wording on the envelope

13   of an item of bulk rate mail promising to give the recipient a watch "just for opening the

14   envelope" before a certain date was held to constitute an operative offer accepted by performance

15   of the act of opening the envelope).  That is not what Plaintiffs allege here.  The advertisements

16   Plaintiffs challenge do not invite performance.  They simply describe features of a product.  An

17   advertisement stating Honey will find the "best" coupon is thus insufficient to create a contract

18   because it does not invite the performance of a particular action.  *See also Roley v. Google LLC*,

19   40 F.4th 903, 909 (9th Cir. 2022) (upholding district court's conclusion that Google's

20   advertisement did not constitute an offer under California law because it "neither informed users

21   how they might conclude the bargain, nor invite[d] the performance of a specific act without

22   further communication, leaving nothing for negotiation") (citations omitted).

23           Plaintiffs' implied contract claim separately fails because statements alone, without

24   accompanying conduct, do not suffice to demonstrate the existence of an implied contract, much

25   less breach of such an agreement.  *See Retired Employees Assn. of Orange County, Inc. v. County*

26   *of Orange*, 52 Cal.4th 1171, 1176 (2011) ("The existence and terms of an implied contract are

27   manifested by conduct.") (citing Cal. Civ. Code § 1621).  Here, Plaintiffs' claim is based

28   exclusively on statements—they do not allege any conduct by PayPal that implied an intent to be

1  bound by the statements in those advertisements.  As a result, Plaintiffs cannot state a claim for

2  breach of implied contract.  *See T & M Solar and Air Conditioning, Inc.*, 83 F. Supp. 3d at 873

3  (dismissing breach of implied contract cause of action to the extent it is based on allegations of

4  oral statements made by defendant to plaintiffs because plaintiffs "have not identified conduct

5  that further separately implied intent to be bound by such an agreement."); *see also Mountain*

6  *View Surgical Ctr. v. Cigna Health Corp.*, No. CV 13-08083 DDP, 2015 WL 5456592, at *2

7  (C.D. Cal. Sept. 17, 2015) (dismissing breach of implied contract claim that was based on oral

8  statements by defendant).

9  **3.    Plaintiffs Fail To Allege Actual Damages.**

10        Even if Plaintiffs could demonstrate the existence of an implied contract (they cannot),

11  their claim fails because they have not alleged damages.

12        Under English law, a non-breaching party is entitled to recover expectation damages.

13  Here, that would be the difference in value between the savings which Plaintiffs achieved in fact

14  and the savings which they would have achieved had Honey found the best codes or applied the

15  best savings.  Willis Decl. ¶ 33.  Plaintiffs advance a similar damages theory, asserting they were

16  injured by PayPal withholding better coupons from Plaintiffs.  FAC ¶ 40 (alleging PayPal

17  withheld more lucrative coupons, causing them to have "paid more for an item than he or she

18  would have paid if he or she knew that the Honey browser extension did not actually search for

19  the 'best' coupons or discount codes").  But even if that were true, Plaintiffs do not allege

20  anything to suggest that they would have found the "better" coupon code—much less that they

21  could have done so in a reasonable time frame.  And, more fundamentally, Plaintiffs do *not* allege

22  that they lost more opportunities in the aggregate than they saved as a result of using Honey.

23        Further, the FAC does not even identify a specific coupon that Honey found Plaintiffs or

24  any "better" coupons that Honey withheld.  Indeed, Plaintiffs acknowledge they "as yet have no

25  information as to the number of purchase transactions in which this occurred."  FAC ¶ 37.  Such

26  baseless, conclusory allegations of damages cannot sustain a contract claim.  *See, e.g., Turner v.*

27  *City & Cnty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) ("[C]onclusory allegations of

28  law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.") (citation

1   omitted); *see also Buttram v. Owens–Corning Fiberglas Corp*., 16 Cal. 4th 520, 531 n. 4 (1997)

2   ("[T]o be actionable, harm must constitute something more than nominal damages, speculative

3   harm, or the threat of future harm-not yet realized.").

4           Moreover, where a defendant provides a free service, under California law, there is no lost

5   benefit of the bargain and therefore no damages under an implied contract theory. *See Svenson v.*

6   *Google Inc.*, 65 F. Supp. 3d 717, 724 (N.D. Cal. 2014) (finding benefit of bargain theory of

7   damages defective because defendant's services were free); *Huynh v. Quora, Inc.*, No. 18-cv-

8   07597-BLF, 2019 WL 11502875, at *10 (N.D. Cal. Dec. 19, 2019) (same).  Plaintiffs readily

9   acknowledge—indeed, allege—that Honey's services are free.  FAC ¶ 16.  Because Plaintiffs

10  paid nothing to use Honey's service, Plaintiffs were not deprived of the benefit of the bargain and

11  suffered no damage.

12          **C.**      **Plaintiffs Have No California Unfair Competition Law Claim.**

13          Plaintiffs cannot advance claims under California law because they agreed to the TOU's

14  choice of law provision.  Even if the Court were to entertain the UCL claim, it must still be

15  dismissed.  To allege a violation of the UCL, Plaintiffs must allege (1) a business act or practice

16  that is fraudulent, unlawful, or unfair, (2) standing in the form of lost money or property as a

17  result of the alleged misconduct, and (3) that the alleged misconduct occurred in California.

18  *Amalgamated Transit Union, Loc. 1756, AFL-CIO v. Superior Ct*., 46 Cal. 4th 993, 998 (2009);

19  *see also Norwest Mortg., Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 225 (1999).  Because

20  Plaintiffs allege misrepresentations, they must also meet Rule 9(b)'s heightened pleading

21  standard.  *Kearns*, 567 F.3d at 1125 (noting that a claim based upon alleged misrepresentation

22  and deception requires application of a heightened pleading standard).  The FAC falls woefully

23  short of pleading the necessary elements.

24          **1.**      **Plaintiffs' UCL Claim Is Foreclosed By The TOU.**

25          The parties agreed in the TOU that claims arising out of Plaintiffs' "relationship with

26  Honey" would "be governed by the laws of England and Wales."  Chan Decl. Ex. 2 at 12.  These

27  claims arise out of Plaintiffs' relationship with Honey.  Their agreement therefore prevents them

28  from bringing a statutory claim under California law.  *See, e.g.*, *Feld v. Am. Exp. Co*., No. CV 09-

DEFENDANTS' MOTION TO DISMISS
5:25-CV-02850-PCP

7202-GW RCX, 2010 WL 9593386, at *4 (C.D. Cal. Jan. 25, 2010) (where "choice-of-law provision in the Agreements" providing for Utah law was deemed "valid and enforceable," court held that "Plaintiff's sole cause of action for violation of California's UCL does not constitute a viable cause of action"); *Campusano v. BAC Home Loans Servicing LP*, No. CV11-04609 AHM (JCX), 2012 WL 13008750, at *4 (C.D. Cal. Jan. 20, 2012) (dismissing Plaintiffs' UCL claim "to the extent this claim is asserted on behalf of non–California residents" where "choice–of–law clause" in parties' agreement dictated that "the law of the jurisdiction in which the Property is located" shall control); *McLaughlin v. Aussie Pet Mobile, Inc*., No. SACV 08-1150 DSF (SHX), 2008 WL 11637482, at *2 (C.D. Cal. Dec. 17, 2008) (same).

### 2.    Plaintiffs Cannot Sue Under The UCL Because Their Alleged Harm Did Not Occur in California.

Plaintiffs cannot establish that any of the allegedly offending conduct or resulting damages occurred in California.  California courts have "made clear that there is a strong presumption against the extraterritorial application of California law," including with respect to UCL claims.  *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1129-30 (N.D. Cal. 2014). "Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially." *Sullivan v. Oracle Corp*., 51 Cal. 4th 1191, 1207 (2011).  The court is therefore required to determine whether Plaintiffs' proposed application of the UCL would cause it to impermissibly operate with respect to occurrences outside of the state.  *See Norwest Mortg., Inc.*, 72 Cal. App. 4th at 225; *see also Slattery v. Athena Cosms., Inc*., 740 F. Supp. 3d 1009, 1020 (C.D. Cal. 2024) (collecting cases) (noting that "[m]ultiple courts in [the Ninth Circuit] have ruled that plaintiffs 'do not have standing to assert claims from states in which they do not reside.'").  Plaintiffs cannot apply California's UCL to cure harm allegedly suffered by U.K. residents as a result of transactions occurring in the U.K. and in connection with alleged false statements made in the U.K.

Plaintiffs do not allege conduct occurring in California.  They allege "the Honey Website invited members of the public, including citizens and residents of the U.K. who are based within the U.K., to 'join' Honey by downloading the free Honey software browser extension."  FAC

1    ¶ 30.  They state that each member of the Plaintiff Class "are citizens and residents of the U.K.,"

2    "are based within the U.K.," and "downloaded the free Honey software browser extension from

3    within the U.K."  *Id*. at ¶ 31.  They specifically allege the offending advertising was made "to any

4    person who accessed the Honey Website from the U.K."  *Id*. at ¶ 29.  Finally, they allege that

5    members of the class "purchased items over the Internet" and, "[o]n at least some occasions,"

6    "did not receive the 'best' coupons or discount codes."  *Id*. at ¶¶ 36-37.  The FAC does not

7    include a single allegation concerning any offending conduct or resulting damages to Plaintiffs

8    that took place in California.

9        The fact that Plaintiffs allege that the advertisements appear generally on Honey's website

10   does not entitle them to invoke the UCL to litigate claims on behalf of a class of U.K. citizens

11   using Honey in the U.K. and who saw Honey's advertisements in the U.K.  The UCL contains

12   "no express declaration that it was designed or intended to regulate claims of non-residents

13   arising from conduct occurring entirely outside of California."  *Norwest Mortg., Inc.*, 72 Cal.

14   App. 4th at 222; *see also Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice

15   Cream, Inc*., No. 09-5815 CW, 2010 WL 3619884, at *8 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F.

16   App'x 362 (9th Cir. 2012) (allegations that California-based employees directed the making of

17   fraudulent statements did not change the fact that "the alleged falsehoods were made outside of

18   California and [] the purported injury befell a limited liability corporation based in Kentucky.").

19                    **3.    Plaintiffs' UCL Claim Fails on its Own Terms.**

20                    **a.    Plaintiffs Do Not Have Standing Under the UCL.**

21       Plaintiffs cannot establish standing for their UCL claims.  To bring a claim under the

22   UCL, Plaintiffs must allege they parted, deliberately or otherwise, with some identifiable sum

23   such that they have suffered a *loss*.  *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d

24   911, 1012 (C.D. Cal. 2011).  Plaintiffs attempt to satisfy this requirement by alleging they "paid

25   more for an item than he or she would have paid."  FAC ¶ 40.

26       While this kind of "benefit of the bargain" theory can work in some circumstances, it is

27   only an injury-in-fact under the UCL when a plaintiff (i) has paid money or property ***to the***

28   ***defendant*** in exchange for a product or service and (ii) did not receive what he bargained for.

15

1    *Winzig v. Stockpile Invs., Inc.*, No. 2:21-CV-02170-RGK-E, 2021 WL 4812956, at *4 (C.D. Cal.

2    July 2, 2021).  That means Plaintiffs must allege they paid money to PayPal and did not receive

3    the product for which they bargained.  *Wesch v. Yodlee, Inc*., No. 20-CV-05991-SK, 2021 WL

4    1399291, at *6 (N.D. Cal. Feb. 16, 2021) (noting that because Plaintiffs have not paid the

5    defendant any money for the use of its service, "Plaintiffs have not alleged how they lost money

6    or property in this manner.").  Yet Honey is free, and Plaintiffs do not allege they ever paid

7    PayPal anything.  FAC ¶¶ 16, 30-31.  Any monies paid were to third party merchants, not to

8    PayPal.  Accordingly, Plaintiffs have no cognizable loss of money or property under the UCL.

9            Even if the Court chose not to view Plaintiffs' claim for damages through the lens of a

10   benefit of the bargain theory, a lost opportunity at additional savings does not establish a

11   cognizable loss under the UCL.  *See Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of*

12   *California*, No. SACV150736DOCDFMX, 2018 WL 10072961, at *2 (C.D. Cal. May 1, 2018)

13   (the Court "rejected Plaintiffs' first allegation of economic injury because Plaintiffs did not allege

14   that lost opportunity to collect more money up front resulted in Plaintiffs losing money or

15   property, as required by the UCL.").  Plaintiffs theorize there was some unspecified better deal

16   the Honey browser extension did not provide to them and which (in some way they don't explain)

17   they would have found but for their reliance on Honey.  FAC ¶ 40.  But the lost opportunity to

18   save more (especially on some isolated transaction) is not a deprivation of property.  Plaintiffs do

19   not allege "some identifiable sum [of money] formerly belonging to [them] or subject to [their]

20   control" that they lost by virtue of their use of Honey.  *Mattel, Inc.*, 782 F. Supp. 2d at 1012.  To

21   the contrary, Plaintiffs' allegations establish that Honey provided them with coupon codes that

22   allowed them to obtain a discount.  Plaintiffs cannot allege a loss of money under such

23   circumstances and, as a result, lack standing under the UCL.

24           In any event, Plaintiffs' conclusory allegations that they "paid more for an item than he or

25   she would have paid" without even alleging the existence of more lucrative coupons that could

26   have been applied to any purchase made by the Plaintiffs are nothing more than "legal

27   conclusions" "cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th

28

DEFENDANTS' MOTION TO DISMISS
5:25-CV-02850-PCP

1    Cir. 2011) (per curiam) (internal quotation marks omitted).  Such "conclusory allegations of law

2    and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Id.*

3            b.        **Plaintiffs Do Not Allege PayPal's Advertisements Were False or**
                       **Misleading.**

4

5            If Plaintiffs could establish standing, they would still fail to state a UCL claim because

6    they cannot allege PayPal made false or misleading statements.  To state a claim for fraudulent

7    business acts or practices under the UCL, Plaintiffs must allege with particularity that PayPal

8    made a misrepresentation upon which Plaintiffs detrimentally relied.  *In re Tobacco II Cases*, 46

9    Cal. 4th 298, 326 (2009).  Because Plaintiffs' UCL claim is based on allegations of a unified

10   course of fraudulent conduct, they are required to meet Rule 9(b)'s heightened pleading standard.

11   *See Kearns*, 567 F.3d at 1125 (noting that where a plaintiff alleges a "unified course of fraudulent

12   conduct and rel[ies] on that course of conduct as the basis of that claim," the claim is "said to be

13   grounded in fraud" such that the claim "as a whole must satisfy the particularity requirement of

14   Rule 9(b).").  Accordingly, Plaintiffs' allegations "must identify 'the who, what, when, where,

15   and how of the misconduct charged.'"  *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 978 (N.D. Cal.

16   2016) (citing *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

17   While Plaintiffs identify various statements they contend were false or misleading, they fail to

18   offer "factual content that allows the court to draw the reasonable inference" that Honey was not

19   in fact attempting to search for the best coupons.  *See Pac. Structures, Inc. v. Greenwich Ins. Co.*,

20   No. 21-CV-04438-HSG, 2022 WL 875639, at *1 (N.D. Cal. Mar. 24, 2022).  Because Plaintiffs

21   have not pled facts with any degree of particularity to support their conclusory allegation that

22   PayPal's advertisements are false or likely to deceive a reasonable consumer, they cannot state a

23   claim under the UCL.

24           Plaintiffs' allegations include quotes from various Honey advertisements regarding its

25   practices in searching for and applying coupons.  *See* FAC ¶¶ 26-27; FAC Exs. D-E.  While

26   Plaintiffs quote a number of statements ("Stop wasting time and money – Honey helps you find

27   coupon codes on 30,000+ sites;" "It just takes a few clicks to add to your computer and it's 100%

28   free;" "This lazy online trick actually saves you a ton of money"), Plaintiffs only appear to take

                                            17

1  issue with the advertisements stating Honey will "search for the internet's **best** coupons," "if we

2  find working codes, we'll apply the one with the **biggest** savings to your cart," and "if there's a

3  better price, we'll find it." *Id*. ¶ 27. (emphasis added).  Plaintiffs complain that "[o]n at least

4  some occasions," they "did not receive the 'best' coupons or discount codes because Defendants

5  had agreements with many vendors pursuant to which Defendants would not find and apply the

6  'best' coupons or discount codes." *Id*. ¶ 37.

7      First, the above statements are either literally true or "[g]eneralized, vague, and

8  unspecified assertions" that "constitute mere puffery upon which a reasonable consumer could

9  not rely, and hence are not actionable." *See Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133,

10  1139 (C.D. Cal. 2005).  For example, the statement that "Honey helps you find coupon codes on

11  30,000+ sites" is literally true and the Plaintiffs do not allege any facts suggesting otherwise—

12  much less explain how a reasonable user would interpret this advertisement to mean that Honey

13  will ***always*** provide the very best coupon in existence. Where statements "are so exaggerated as

14  to preclude reliance by consumers," they cannot form the basis for a claim under the UCL. *Id*.

15  For instance, statements like "if there is a better price, we'll find it," are inherently puffery

16  because a reasonable consumer would not believe that PayPal would make guarantees as to its

17  ability to reliably find everything that might exist on the internet.[3]  Instead, that statement is a

18  "product superiority claim" that constitutes "exaggerated advertising, blustering, and boasting

19  upon which no reasonable buyer would rely." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d

20  1134, 1145 (9th Cir. 1997).

21      Plaintiffs also failed to allege with particularity any facts supporting their conclusion that

22  the statements were false or misleading.  The sole factual basis Plaintiffs allege for the

23  availability of better coupons Honey did not offer them is a FAQ explaining the steps for a

24  partner merchant to have a coupon added or removed.  *See* FAC ¶ 38.  The FAQ states that

25  Partners "have control over the content hosted on the Honey platform" and can reach out to the

26  Honey team "to update the codes and promotions currently being hosted." *Id*. Ex. G.  Plaintiffs

27

28  _____
[3] Though Plaintiffs also highlight statements that Honey will "search for the internet's best coupons," there is no contention that Honey does not in fact do so.

1    do not identify any individual code that a merchant directed Honey not to offer but that the

2    merchant would have honored had Plaintiffs come across it separately.  This shortcoming is no

3    surprise.  The coupon codes merchants provide are codes they own and can decide to offer to the

4    public (or not).  And if Honey declined to remove a code from its database the merchant could

5    always deactivate the code on its own website.

6        Put differently, Plaintiff's whole theory is predicated on the idea that a merchant wants a

7    particular code to be available to the public but (despite having a partnership with Honey) does

8    not want Honey to distribute that code for some unidentified reason.  Plaintiffs provide no

9    plausible explanation for why a merchant would want to do that.  Nor do they offer a single

10   instance where a more advantageous coupon was available that they did not receive.  These

11   conclusory allegations do not suffice to show that PayPal was misrepresenting its intent and

12   ability to search for the best coupons under Rule 9(b)'s heightened pleading standard.  *See*

13   *Haskins v. Symantec Corp*., No. 13-CV-01834-JST, 2013 WL 6234610, at *6 (N.D. Cal. Dec. 2,

14   2013) (noting that while the Plaintiffs identified the statements they alleged to be misleading, they

15   failed to put forth a prima facie explanation of how each of the complained-of statements

16   constitute fraud).

17        **c.    Plaintiffs Do Not Allege Actions That Are Substantially Injurious to Consumers**

18        Plaintiffs' "unfair" theory of liability fails for similar reasons.  While the UCL does not

19   define the term "unfair," in *Cel–Tech*, the California Supreme Court held that, in the context of an

20   unfair competition claim by a competitor, the term "unfair" "means conduct that threatens an

21   incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because

22   its effects are comparable to or the same as a violation of the law, or otherwise significantly

23   threatens or harms competition."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20

24   Cal. 4th 163, 187 (1999).  However, *Cel-Tech* left open the question whether its definition of

25   "unfair" should also apply to *consumer* actions, and appellate court opinions have been divided

26   over whether the *Cel-Tech* definition of "unfair" should apply in that context.

27        Three lines of authority have developed among the California Courts of Appeal regarding

28   the proper interpretation of the term "unfair" in a consumer action.  *Svenson v. Google Inc*., No.

DEFENDANTS' MOTION TO DISMISS
5:25-CV-02850-PCP

13–CV–04080–BLF, 2015 WL 1503429, at *9 (N.D. Cal. Apr. 1, 2015).  In the first line, the test requires "that the public policy which is a predicate to a consumer unfair competition action under the unfair prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010).  A second line of cases applies a test to determine whether the identified business practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Id.*  The third test draws on the definition of "unfair" from antitrust law and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."  *Id.*  Plaintiffs' claim fails under any of the three tests, because, for the reasons stated above, they failed to allege with any particularity that PayPal's advertisements were false or misleading and their theory of damages is both not cognizable under the UCL and not plausibly alleged.

Plaintiffs rely on the same nucleus of facts in asserting their theory of liability under the unfair prong: PayPal's advertisements stating that it would search for and apply the "best" coupons were false, and therefore "offend[] established public policy" and are "immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers."  FAC ¶ 58.  For the reasons noted above, Plaintiffs fail to provide any plausible facts supporting their assertion that Honey's advertisements were false or misleading, and certainly not with the particularity required under Rule 9(b).  Further, Plaintiffs fail to allege an injury that could have been avoided or did not outweigh countervailing benefits because Plaintiffs did not suffer any monetary loss.  Therefore, because there are both no false or misleading statements and no plausible allegations of injury to consumers, Plaintiffs have failed to show that any conduct by PayPal constituted an unfair business act or practice under the UCL.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, PayPal respectfully requests that the Court dismiss the FAC in its entirety with prejudice.

1

2
Dated: April 16, 2025                                    ORRICK, HERRINGTON & SUTCLIFFE LLP

3

4
                                                        By: */s/ Paul F. Rugani*
                                                              PAUL F. RUGANI

5
                                                           Attorney for Defendants
                                                        HONEY SCIENCE, LLC and PAYPAL,

6
                                                                    INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28