1  DAVID J. GALLO *(California Bar No. 127722)*
   **LAW OFFICES OF DAVID J. GALLO**
2  12702 VIA CORTINA, SUITE 500
   DEL MAR, CALIFORNIA  92014
3  Telephone: (858) 509-3652

4  Attorneys for all Plaintiffs

5

6              **UNITED STATES DISTRICT COURT**

7           **NORTHERN DISTRICT OF CALIFORNIA**

8

| | |
|---|---|
| 9  TOM CAMPBELL,<br>DANIEL JENKS-BERRYMAN,<br>10  DECLAN LYNN,<br>ADITHYA NARAYANAN,<br>11  JAMES POAD,<br>DAN SORAHAN,<br>12  ALAN SUTCH,<br>  individually and on behalf of<br>13  all others similarly situated,<br>14      Plaintiff,<br>15  v.<br>16  HONEY SCIENCE, LLC,<br>  a Delaware limited liability<br>17  company,<br>PAYPAL, INC.,<br>18  a Delaware corporation, and<br>DOES 1 through 50,<br>19  Defendants. | Case Number:<br>**5:25-cv-02850**<br><br>**CLASS ACTION**<br>———————————<br><br>**OPPOSITION TO MOTION TO DISMISS**<br>———————————<br><br>Hearing:<br>  Date:  26 June 2025<br>  Time: 10:00 a.m.<br>  Dept.: Courtroom 8, 4th Floor<br>  Judge: Hon. P. Casey Pitts |

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION TO DISMISS – PAGE 1**

1

## <u>TABLE OF CONTENTS</u>

2
<u>PAGE</u>

3

4
I.      SUBJECT-MATTER JURISDICTION.............................................................8

5
II.     DUE PROCESS CONCERNS........................................................................10

6
III.    PROCEDURAL LIMITATIONS....................................................................10

7
IV.    EVIDENTIARY OBJECTIONS....................................................................11

8
V.      INCORPORATION DOCTRINE...................................................................13

9
VI.    JUDICIAL NOTICE.......................................................................................18

10
VII.   SOURCE OF APPLICABLE LAW..............................................................21

11
VIII.  LEGAL THEORY OF IMPLIED CONTRACT...........................................24

12
IX.    LEGAL THEORY OF UNFAIR COMPETITION.....................................28

13
CONCLUSION........................................................................................................32

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**OPPOSITION TO MOTION TO DISMISS – PAGE 2**

1

## TABLE OF AUTHORITIES

2
 
**PAGE**

3
 
## CASES

4

*In re Adobe Systems, Inc. Privacy Litigation,*
66 F.Supp.3d 1197 (N.D. Cal. 2014).........................................................................21

5

*AGK Sierra De Montserrat, L.P.*
6
*v. Comerica Bank,* 109 F.4th 1132 (9th Cir. 2024)................................................29

7
*American Red Cross v. S.G.,* 505 U.S. 247 (1992)................................................8

8
*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)................................................................26

9
*Asmus v. Pacific Bell* (2000) 23 Cal.4th 1.............................................................25

10
*Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255........................31

11
*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).........................................26

12
*Browner v. Davis* (1860) 15 Cal. 9.........................................................................28

13
*In re Buchman's Estate* (1954) 123 Cal.App.2d 546...........................................10

14
*Burlington Northern Santa Fe R. Co.*
*v. Assiniboine and Sioux Tribes of Fort Peck Reservation,*
15
323 F.3d 767 (9th Cir. 2003)...................................................................................10

16
*Carr v. Cove* (1973) 33 Cal.App.3d 851.................................................................8

17
*Casey v. Lewis,* 4 F.3d 1516 (9th Cir. 1993)........................................................11

18
*Caterpillar Inc. v. Lewis,* 519 U.S. 61 (1996)........................................................8

19
*Christ v. Superior Court,* Etc. (1931) 211 Cal. 593............................................22

20
*Colebrook v. CIT Bank, N.A.* (2021) 64 Cal.App.5th 259......................................8

21
*Concha v. London,* 62 F.3d 1493 (9th Cir. 1995)..................................................31

22
*de Fontbrune v. Wofsy,* 838 F.3d 992 (9th Cir. 2016)..........................................22

23
*Diaz v. Sohnen Enterprises* (2019) 34 Cal.App.5th 126......................................25

24
*Donovan v. RRL Corp.* (2001)  26 Cal.4th 261......................................................24

25
*Dual Diagnosis Treatment Center, Inc. v. Blue Cross of California,*
2018 WL 10072961 (C.D. Cal. 2018).....................................................................30
26

27
*In re ECOtality, Inc. Sec. Litig.,* 2014 WL 4634280 (N.D. Cal. 2014)................14

*Ehret v. Uber Technologies, Inc.,* 68 F.Supp.3d 1121 (N.D. Cal. 2014).............28
28

1

2

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

<u>PAGE</u>

3

4

*Gerritsen v. Warner Bros. Entertainment Inc.,*
112 F.Supp.3d 1011 (C.D. Cal. 2015)...................................................20

5

*Goldberg v. Kelly,* 397 U.S. 254 (1970)................................................10

6

*Haddock v. Board of Dental Examiners of California,*
777 F.2d 462 (9th Cir. 1985).............................................................25

7

8

*Hurtado v. Superior Court* (1974) 11 Cal.3d 574..................................23

*Huynh v. Quora, Inc.,* 2019 WL 11502875 (N.D. Cal. 2019)................27

9

10

*Ice Cream Distributors of Evansville, LLC
v. Dreyer's Grand Ice Cream, Inc.,* 2010 WL 3619884 (N.D. Cal. 2010).............29

11

In re: *Kaypro,* 218 F.3d 1070 (9th Cir. 2000)...................................11-12

12

*Kearns v. Ford Motor Co.,* 567 F.3d 1120 (9th Cir. 2009)....................31

13

*Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988 (9th Cir. 2018),
*cert. denied sub nom. Hagan v. Khoja,* 139 S.Ct. 2615 (2019)................13-15, 18

14

15

*Knievel v. ESPN,* 393 F.3d 1068 (9th Cir. 2005).........................16-17, 21

*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310........................30

16

17

*Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir. 2001)......................13

*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49........30, 32

18

19

*Marder v. Lopez,* 450 F.3d 445 (9th Cir. 2006).........................13-14, 18

*Maree v. Deutsche Lufthansa AG,*
2020 WL 6018806 (C.D. Cal. 2020)................................................19-20

20

21

*In re Marriage of Moore* (1980) 113 Cal.App.3d 22.............................22

22

*Mejia v. DACM Inc.* (2020) 54 Cal.App.5th 691...................................23

23

*Mission Beverage Co. v. Pabst Brewing Co.,* LLC
(2017) 15 Cal.App.5th 686................................................................28

24

25

*Moore v. Kayport Package Express, Inc.,* 885 F.2d 531 (9th Cir. 1989).............31

26

*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888........................8

*Nayab v. Capital One Bank (USA), N.A.,* 942 F.3d 480 (9th Cir. 2019).............31

27

28

1

## TABLE OF AUTHORITIES
### (Continued)

**PAGE**

*Nelson v. International Paint Co.,* 716 F.2d 640 (9th Cir. 1983)..........................21

*Newcal Industries, Inc. v. Ikon Office Solution,*
513 F.3d 1038 (9th Cir. 2008)....................................................................32

*North American Chemical Co. v. Superior Court*
(1997) 59 Cal.App.4th 764...........................................................................30

*Overgaard v. Johnson* (1977) 68 Cal.App.3d 821..........................................27

*People v. Ashford University, LLC* (2024) 100 Cal.App.5th 485.................23, 29

*Produce Pay, Inc. v. Izguerra Produce, Inc.,* 39 F.4th 1158 (9th Cir. 2022)........13

*ProMex, LLC v. Hernandez* (2011) 781 F.Supp.2d 1013 (C.D. Cal. 2011)..........28

*Property Clerk, New York City Police Dept. v. Fyfe,*
197 F.Supp.2d 39 (S.D.N.Y. 2002)................................................................8

*Rincon EV Realty LLC v. CP III Rincon Towers, Inc.*
(2017) 8 Cal.App.5th 1..............................................................................23

*Roley v. Google LLC,* 2019 WL 1779974 (N.D. Cal. 2019)..................................20

*Rose v. City of Hayward* (1981), 126 Cal.App.3d 926.......................................9

*Rubenstein v. Neiman Marcus Group LLC,*
687 Fed.Appx. 564 (9th Cir. 2017)................................................................31

*Sgro v. Danone Waters of North America, Inc.,*
532 F.3d 940 (9th Cir. 2008).......................................................................14

*Shakur v. Schriro,* 514 F.3d 878 (9th Cir. 2008)..........................................11

*Shersher v. Superior Court* (2007) 154 Cal.App.4th 1491...............................29

*Southern Union Co. v. Southwest Gas Corp.,*
180 F.Supp.2d 1021 (D. Az. 2002)...............................................................27

*Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588 (2013)..............................9-10

*Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191...........................................28

*Svenson v. Google Inc.,* 65 F.Supp.3d 717 (N.D. Cal. 2014)............................27

*Sweet v. Johnson* (1959) 169 Cal.App.2d 630................................................28

**OPPOSITION TO MOTION TO DISMISS – PAGE 5**

## TABLE OF AUTHORITIES
### (Continued)

**PAGE**

*T & M Solar and Air Conditioning, Inc.*
*v. Lennox International Inc.,* 83 F.Supp.3d 855 (N.D. Cal. 2015).......................25

*In re Tobacco II Cases* (2009) 46 Cal.4th 298........................................................30

*Travelers Cas. & Sur. Co. of America*
*v. Telstar Const. Co., Inc.,* 252 F.Supp.2d 917 (D.Az. 2003)................................11

*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305..............................29

*Turner v. City and County of San Francisco,* 788 F.3d 1206 (9th Cir. 2015)......26

*United States v. Ritchie,* 342 F.3d 903 (9th Cir. 2003)....................................13-14

*United States ex rel. Vatan v. QTC Medical Services, Inc.,*
721 Fed.Appx. 662 (9th Cir. 2018)...................................................................27, 31

*Van v. Wal-Mart Stores, Inc.,* 583 Fed.Appx. 761 (9th Cir. 2014).......................25

*Walter v. Drayson,* 538 F.3d 1244 (9th Cir. 2008)....................................23, 26, 29

*Washington Mutual Bank, FA*
*v. Superior Court* (2001) 24 Cal.4th 906.............................................................23

*Wesch v. Yodlee, Inc.,* 2021 WL 1399291 (N.D. Cal. 2021)..................................29

*Whiteside v. Kimberly Clark Corp.,* 108 F.4th 771 (9th Cir. 2024).....................32

*Winzig v. Stockpile Investments, Inc.,* 2021 WL 4812956 (C.D. Cal. 2021)........29

### STATUTES

Bus. & Prof. Code, §§ 17200, *et seq.,*
**(a/k/a "UCL")**...........................................................................................28-31

Bus. & Prof. Code, § 17200.....................................................................................30

Civ. Code, § 3300....................................................................................................27

Civ. Code, § 3360....................................................................................................28

Class Action Fairness Act of 2005
**(a/k/a "CAFA"),** Pub.L. No. 109-2, 119 Stat. 4.....................................................8

Title 28, U.S.C., Section 1332(d)(1)(D)....................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES
### (Continued)

**PAGE**

## CONSTITUTIONAL PROVISIONS

U.S. Const., 5th Amend..................................................................10

## FEDERAL RULES OF CIVIL PROCEDURE

Fed.R.Civ.P. 8.......................................................................26

Fed.R.Civ.P. 9(b)...................................................................31

Fed.R.Civ.P. 12(b)(6)......................................................10, 13

Fed.R.Civ.P. 12(d)................................................................10

Fed.R.Civ.P. 26(d)(1)...........................................................10

Fed.R.Civ.P. 56....................................................................10

## FEDERAL RULES OF EVIDENCE

Fed.R.Evid. 201(b)(2).......................................................19-20

Fed.R.Evid. 602..............................................................11-12

Fed.R.Evid. 801(c)...........................................................11-12

Fed.R.Evid. 802....................................................................12

Fed.R.Evid. 803(6)...............................................................11

Fed.R.Evid. 1006..................................................................11

1    **I.    SUBJECT-MATTER JURISDICTION**

2        This action was removed to this Court under CAFA, and federal subject-

3    matter jurisdiction is questionable, at best.  Because there is no deadline for

4    filing a motion to remand for lack of subject-matter jurisdiction,[1] Plaintiffs have

5    determined that they will defer filing a motion to remand until they have been

6    afforded an opportunity to conduct discovery (including jurisdictional discovery).

7        As courts of limited jurisdiction, "... federal courts have [an] independent

8    obligation to examine their own jurisdiction ..." *American Red Cross v. S.G.,* 505

9    U.S. 247, 255 n.5 (1992).  Because Defendants have now filed a potentially-

10   dispositive motion, this Court may deem it appropriate to direct Defendants to

11   proffer the evidence upon which they will rely to establish subject-matter

12   jurisdiction, so the Court may examine same.

13       Plaintiffs' FAC alleges that Defendants operate a browser extension that

14   promises to provide, but does not actually provide, the lowest available price for

15   on-line purchases.  The FAC asserts ***two legal theories,*** which constitute, "...

16   only ***one claim for relief.***"  *Cf.: Colebrook v. CIT Bank, N.A.* (2021) 64

17   Cal.App.5th 259, 263, *quoting, Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th

18   888, 904.  (Emph. by Plaintiffs.)  *Cf.: Carr v. Cove* (1973) 33 Cal.App.3d 851, 854.

19   (No double recovery.)  Plaintiffs' two legal theories are expressly stated in the

20   alternative.  (*See,* FAC, ¶ 54, and at page 14, lines 12½ to 14½.)  The ***single***

21   ***claim for relief,*** stated under alternative theories, seeks recovery of:

22       "... the difference between: (a) the price actually paid by the Plaintiff

23       or Class Member (on the one hand), and (b) the lower price which

24       would have been paid if the *Honey* browser extension had actually

25

26        [1]    *See, Caterpillar Inc. v. Lewis,* 519 U.S. 61, 69 (1996); *see also,*
27   *Property Clerk, New York City Police Dept. v. Fyfe,* 197 F.Supp.2d 39, 41-42
     (S.D.N.Y. 2002).  ("[A] motion to remand for lack of subject matter jurisdiction
28   may be made at any time before the entry of final judgment.")

**OPPOSITION TO MOTION TO DISMISS – PAGE 8**

1      sought out and applied the most favorable publicly-available coupons

2      or discount codes (on the other hand)."

3  (*See,* FAC, at page 14, lines 6½ to 23½.)

4      Plaintiffs have no information about the number of class members, or the

5  amount in controversy in this action.  (*See,* FAC, at ¶¶ 37, 43, 51, 61.)  It is noted

6  that California courts certify classes where class members number as few as 10,

7  28, 35 or 42.  *See, Rose v. City of Hayward* (1981), 126 Cal.App.3d 926, 934.

8      In considering federal subject-matter jurisdiction in a case in which a class

9  has yet to be certified, a court must accept and apply the class definition

10  "*proposed*" by the plaintiffs in their complaint.  *See, Standard Fire Ins. Co. v.*

11  *Knowles,* 568 U.S. 588, 592 (2013), *quoting,* Title 28, U.S.C., Section

12  1332(d)(1)(D).  The only persons within Plaintiffs' proposed class definition are

13  people who meet **_all six_** (6) of the following criteria: (a) UK citizens; (b) UK

14  residents; (c) who downloaded the *Honey* browser extension within the UK; (d)

15  who, after 1 January 2020, used it to seek the "best" discount codes and coupons;

16  (e) purchased an item **but did not receive the lowest available price** when

17  they purchased it; (f) **_because of_ an agreement between Defendants and**

18  **one or more of their "Partner" vendors** which allowed the "Partner" vendors

19  to have control over which otherwise-available coupons and discount codes would

20  be located and applied through the *Honey* browser extension.

21      Defendants' Notice of Removal misstates Plaintiffs' proposed class

22  definition, and assumes without explanation that each and every UK *Honey* user

23  is a class member. (*See,* Notice of Removal, ECF No. 1, at ¶ 19.) Given Plaintiff's

24  proposed class definition, Defendants' assumption is highly implausible.

25  Defendants then assume, again without explanation, an average loss per class

26  member of at least $1.73.  (*See,* Notice of Removal, ECF No. 1, at ¶ 26.)

27      Defendants' Notice of Removal asserts that the amount in controversy in

28  this action may be aggregated with a separate proposed class action on behalf of

**OPPOSITION TO MOTION TO DISMISS – PAGE 9**

1   **U.S.** consumers.  (*See,* Notice of Removal, ECF No. 1, at ¶ 27.)  Any such

2   aggregation would violate the Supreme Circuit's holding that a court must accept

3   and apply the class definition "*proposed*" by the plaintiffs in their complaint.

4   *Standard Fire, supra,* 568 U.S., at 592.  Further, Defendants' assertion that

5   English law applies to the instant action establishes that the proposed classes in

6   the two different cases are not "like individuals".  And as Defendants are aware,

7   the claims in the *White* Action may be subject to an agreement to arbitrate, while

8   the claims in the instant action cannot be.

9   ## II.   <u>DUE PROCESS CONCERNS</u>

10      Defendants' instant potentially-dispositive motion is supported by two

11  declarations.  Because Plaintiffs have not been afforded any opportunity to cross-

12  examine the declarants, the Due Process Clause of the Fifth Amendment requires

13  that the declarations be excluded in their entirety.  *Cf. Goldberg v. Kelly,* 397

14  U.S. 254, 269-270 (1970).  *Cf.: In re Buchman's Estate* (1954) 123 Cal.App.2d 546,

15  560.  ("Due process of law ... [incorporates] established principles of justice, one

16  of them being the right and opportunity for a hearing: to cross-examine, to meet

17  opposing evidence, and to oppose with evidence.")

18  ## III.   <u>PROCEDURAL LIMITATIONS</u>

19      Rule 12(b)(6) motions are pre-answer motions which are brought before any

20  discovery has been permitted.  (*Cf.:* Fed.R.Civ.P., 26(d)(1).)  If the Court considers

21  either or both declarations, the motion to dismiss must be converted to a motion

22  for summary judgment, and Plaintiffs, "... must be given a reasonable opportunity

23  to present all the material that is pertinent to the motion."  (*Cf.:* Fed.R.Civ.P.,

24  12(d).)  Rule 56 requires that a litigant have been afforded, "... a realistic

25  opportunity to pursue discovery ...", which Plaintiffs have not had.  *Burlington*

26  *Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck*

27  *Reservation,* 323 F.3d 767, 773-774 (9th Cir. 2003).

28  ///

**OPPOSITION TO MOTION TO DISMISS – PAGE 10**

1    **IV.    EVIDENTIARY OBJECTIONS**

2    Even if evidence could be considered, the Chan Declaration is incompetent,

3    and Plaintiffs object thereto.  The testimony is hearsay (*see,* Fed.R.Evid., 801(c),

4    802), because it is expressly based upon the declarant's, "... review of [unspecified]

5    company records." (*See,* Chan Decl., at ¶ 1.)  The unspecified "company records"

6    have not been placed before the Court, or even made available to Plaintiffs. (*Cf.:*

7    Fed.R.Evid., 1006.)  Even if they had, the elements of the regularly-conducted

8    activity exception have not been established by personal knowledge.    (*Cf.:*

9    Fed.R.Evid., 602, 803(6).)  "Conclusory affidavits that do not affirmatively show

10   personal knowledge of ***specific facts*** are insufficient."  *Shakur v. Schriro,* 514

11   F.3d 878, 889-890 (9th Cir. 2008), *quoting, Casey v. Lewis,* 4 F.3d 1516, 1527 (9th

12   Cir. 1993). (Emph. by Plaintiffs.)  *See also, Travelers Cas. & Sur. Co. of America*

13   *v. Telstar Const. Co., Inc.,* 252 F.Supp.2d 917, 924 (D.Az. 2003).  (Unsupported

14   averment that declaration was based upon declarant's "... own personal

15   knowledge ..." held insufficient where declaration "... provide[d] no ***facts***

16   establishing [that declarant] possessed the legal requisite of personal knowledge

17   ..." [Emph. added.]) While personal knowledge may be inferred from a declarant's

18   position of employment in appropriate circumstances (*see,* In re: *Kaypro,* 218 F.3d

19   1070, 1075 (9th Cir. 2000)), there is no blanket exemption from Rule 602 for

20   corporations.  The Chan Declaration avers that Mr. Chan has been an employee

21   of PayPal since June of 2021, and that he is "currently" a, "Senior Product

22   Manager – Technical".  (*See,* Chan Decl., at ¶ 2.)  The Chan Declaration does not

23   disclose how long Mr. Chan has held this position.  More importantly, the Chan

24   Declaration provides no information about what the duties and responsibilities

25   of, "Senior Product Manager – Technical", might be, or how personal knowledge

26   of claimed facts would necessarily flow from the performance of those duties and

27   responsibilities.  In other cases cited in *Kaypro,* a corporate officer was inferred

28   to have personal knowledge of the identity of the corporation's employees and

1  their tasks, and a chief executive officer was presumed to have personal

2  knowledge of various corporate activities. *See, ex rel., Kaypro,* 218 F.3d, at 1075.

3  In *Kaypro,* a company's *credit manager* was inferred to have personal knowledge

4  of, "common ... and ... routine[]", credit arrangements in his industry. *See, ibid.*

5  By contrast, Mr. Chan's title, "Senior Product Manager – Technical", is devoid of

6  any inherent meaning.

7      The Chan Declaration lacks foundation establishing relevance, because it

8  makes claims only about the present time, *e.g.,* "... a new user encounters ...", "...

9  the user is prompted to ...", "... a screen appears ...", "... new user cannot register

10  ..." (*See,* Chan Decl., at ¶¶ 4, 6, 7, 11.)  The Chan Declaration makes no claim

11  regarding the earlier years when Plaintiffs downloaded the *Honey* browser

12  extension – obviously prior to 20 February 2025 (and in most cases, long prior).

13      The Willis Declaration is also incompetent, insofar as it purports to address

14  any matter other than English and UK law.  Mr. Willis purports to testify:

15  "PayPal requires that users who register for an account with Honey in the U.K.

16  agree to the Honey Terms of Use ..." (*See,* Willis Decl., at ¶ 2.) Nowhere in the

17  Willis Declaration is there any evidence establishing personal knowledge, and the

18  claim appears to derive from hearsay. (*Cf.:* Fed.R.Evid. 602, 801(c), 802.)  Nor

19  would the claim be relevant, as it appears directed to the present time, as

20  opposed to the earlier years during which Plaintiffs downloaded the *Honey*

21  browser extension.  Nor is the declarant competent to characterize the averments

22  of Plaintiffs' FAC, which is before the Court. (*See,* Willis Decl., at ¶ 1. ["Plaintiffs

23  base their claims on ..."]) Same objections for where the declarant claims that the

24  Chan Declaration sets forth true facts. (*See,* Willis Decl., at ¶¶ 5-6.)

25      The Willis Declaration is irrelevant insofar as it addresses English and UK

26  law regarding assent.  Defendants' argument in favor of application of foreign law

27  depends upon prior assent to a choice-of-law provision.  But that assent would

28  have to have been established under California law.

**OPPOSITION TO MOTION TO DISMISS – PAGE 12**

1    **V.  <u>INCORPORATION DOCTRINE</u>**

2    "As a general rule, a district court may not consider any material beyond

3    the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles,* 250

4    F.3d 668, 688 (9th Cir. 2001). (Citation, internal quot. mks., attribution omitted.)

5    "There are, however, two exceptions ..." *Ibid.*  One of the two exceptions to the

6    rule that a court may only look to the averments of a complaint is the doctrine of

7    incorporation by reference:

8          "  A  court  **<u>may</u>**  consider  evidence  on  which  the  complaint

9          '**necessarily relies**' if: (1) the complaint **refers** to the document; (2)

10         the document is **<u>central</u> to the plaintiff's claim**; **<u>and</u>** (3) **no party**

11         **questions the authenticity** of the copy attached to the ... motion."

12   *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006).  (Emph. added; citations

13   omitted.)  A document may also be incorporated into a complaint if, although it

14   is not central to the plaintiff's claim, the complaint, "... refers *extensively* to the

15   document ..." *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003). (Emph.

16   added.) More recent Ninth Circuit authority clarifies that a court may not accept

17   the truth of an incorporated document to the extent its content is contrary to

18   plaintiff's well-pled allegations in the complaint:

19         "Although  incorporation  by  reference  generally  permits  courts  to

20         accept the truth of matters asserted in incorporated documents, we

21         reiterate that it is improper to do so only to resolve factual disputes

22         against the plaintiff's well-pled allegations in the complaint."

23   *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 1014 (9th Cir. 2018),  *cert.*

24   *denied sub nom. Hagan v. Khoja,* 139 S.Ct. 2615 (2019).  (Citation omitted.) *See*

25   *also, Produce Pay, Inc. v. Izguerra Produce, Inc.,* 39 F.4th 1158, 1166 (9th Cir.

26   2022), *quoting, Khoja, supra,* 899 F.3d, at 1014.

27         *Marder* provides an example of a document upon which a complaint

28   "necessarily relied", and that was both referred to in a complaint, and central to

the plaintiff's claim.  In *Marder,* the plaintiff's complaint averred: "Ms. Marder provided only a release of claims ... for conduct occurring prior to December 6, 1982." *See, Marder, supra,* 450 F.3d, at 448.  Because the *Marder* plaintiff's complaint affirmatively relied upon the plaintiff's proffered construction of that legally-operative document, the *Marder* panel considered its contents, noting, "[t]he Release is central to her claim and ***all parties agree that it is appropriate for consideration.***" *See, Marder, supra,* 450 F.3d, at 448. (Emph. added.)  *Cf.: U.S. v. Ritchie, supra,* 342 F.3d, at 908.  ("The doctrine of incorporation by reference may apply, for example, when a plaintiff's claim ... is based on ... [an insurance policy] ..., or ... SEC filings ...")

*Khoja, supra,* provides examples of when incorporation is **<u>im</u>**proper, noting the "danger" presented by expansive incorporation:

> "The district court's reasoning here again demonstrates the danger in incorporating documents en masse into complaints. Once documents are incorporated into a complaint, a district court faces competing, often inconsistent versions of the facts. Although plaintiffs are ordinarily afforded the benefit of every favorable inference, the incorporation-by-reference doctrine can allow defendants to exploit that benefit for themselves. ... **The incorporation-by-reference doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage.** *See Sgro* [*v. Danone Waters of North America, Inc.,* 532 F.3d 940, 942 n.1 (9th Cir. 2008)] (finding it proper to consider a disability benefits plan referenced in complaint, **but declining to accept the truth** of the plan's contents where the parties disputed whether defendant actually implemented the plan according to its terms); *see also In re ECOtality, Inc. Sec. Litig.,* ... 2014 WL 4634280, at *3 (N.D.

1     Cal. Sept. 16, 2014) (declining to assume the truth of incorporated

2     documents where it 'would mean assuming the truth of all of

3     Defendants' allegedly false or misleading statements,' which would

4     make it 'impossible ever to successfully plead a fraud claim')."

5   *Khoja, supra,* 899 F.3d, at 1014-1015.  (Emph. added.)  Plaintiffs' undersigned

6   counsel proffers the following simple example: In a wrongful death civil case

7   following a shooting, the defendant posts on social media: "I shot him, but it was

8   self-defense."  If the entirety of a statement were required to be accepted as true,

9   the shooter would be entitled to dismissal without leave to amend if the plaintiff

10  were to refer to the incriminating post in his/her complaint.

11      Here, Plaintiffs dispute the authenticity of Exhibits 1 and 2 to the Chan

12  Declaration.  Exhibit "1" to the Chan Declaration uses the "$" sign, indicating

13  that it was accessed from the U.S. ***without*** using a VPN set to the UK.  (*See,*

14  FAC, at ¶ 25.)  However, Exhibit "2" to the Chan Declaration purports to be a UK

15  version of a purported "Terms of Use" document, which could only be accessed

16  from the UK or from the U.S. ***with*** a VPN set to the UK.  Further, the purported

17  "sign up flow" cannot be verified.  The Internet Archive shows the main page, but

18  the "Add Honey – It's Free" button is inactive in the archived versions.  *See, e.g.:*

19      https://web.archive.org/web/20210630121200/https://www.joinhoney.com/

20  Accordingly, there is no way to verify whatever any "sign up flow" might have

21  been at the relevant times.  Even the claimed "sign up flow" in effect ***today***

22  cannot be verified without downloading the browser extension in the face of the

23  warning: "**It can: Read and change <u>all</u> your data on <u>all</u> websites.**"  (*See,*

24  ECF 27-1, and p.3.  [Emph. added.])  Plaintiff's undersigned counsel is thus

25  unable to verify even ***today's*** claimed "sign up flow".  Further, the alleged

26  current "sign up flow" recites that, ***after*** a person has installed the browser

27  extension, they would have the option to click on something that, as of today,

28  might purportedly accept something entitled, "Terms of Service":

**OPPOSITION TO MOTION TO DISMISS – PAGE 15**

1
2

> "Congrats! **PayPal Honey is installed.** Unlock **more** features and
> get access to exclusive rewards by creating a free account."

3  (*See,* ECF 27-1, and p.5. [Emph. added.]) Additionally, while Defendants' ***first***-
4  proffered document refers to something entitled, "Terms of ***Service***" (emph.
5  added) – "I have read and agree to the Honey <u>Terms of Service</u> ..." (*see,* ECF 27-1,
6  at p.5) – Defendants' ***second***-proffered document is entitled, "Terms of ***Use***" (*see,*
7  ECF 27-2, at p.2 [emph. added].) The different titles ("Terms of Service" v. "Terms
8  of Use") preclude any reliance upon the purported, "Terms of Use", now proffered
9  by Defendants at ECF No. 27-2.

10      The purported, "Terms of Use", now proffered by Defendants at ECF No.
11  27-2 states that it was, "***Last updated February 16, 2024***".  Plaintiffs dispute
12  this date precisely because it cannot be verified (although a proper subject of
13  discovery).   Even if true, Plaintiffs' FAC does not aver that any Plaintiff's
14  involvement with the *Honey* browser extension commenced ***subsequent to*** 15
15  February 2024.  Thus, even if the purported "Terms of Use" document now
16  proffered by Defendants at ECF No. 27-2 could be considered (it cannot), this
17  would not support dismissal of any Plaintiff's claim.

18      Defendants cite *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005), for
19  the proffered view that, "... the entirety of [Plaintiffs'] experience ...", on
20  Defendants' website is properly incorporated into Plaintiffs' FAC.  *Knievel* is
21  inapposite.  The *Knievel* panel reasoned that, "... a computer user ***necessarily***
22  views web pages in the context of the links through which the user accessed those
23  pages." *Knievel,* at 1076.  (Emph. added.)  In practice, this means the computer
24  user is presumed to have seen the home page, if the later pages on which the
25  computer user relies may only be accessed through that home page.  In *Knievel,*
26  there was no dispute as to authenticity:

27
28

> "The Knievels do not dispute ESPN's contention that a viewer
> accessing the [allegedly defamatory] Knievels photograph **must** also

**OPPOSITION TO MOTION TO DISMISS – PAGE 16**

access the surrounding pages on the EXPN.com website, **nor do they dispute the authenticity** of the materials and CD–ROM attached to ESPN's motion to dismiss."

*Knievel,* at 1076.  (Emph. added.)  In viewing the CD–ROM, the *Knievel* panel:

"... found that in order to access the photograph, one **must** first view, at minimum, the nine photographs that precede it and the EXPN.com home page ..."

*Knievel,* at 1076.  (Emph. added.)

In the case at bar, Plaintiffs' FAC only shows the ***home*** page of the "joinhoney" website as it existed on 20 December 2018 (*see,* Exhibit "A"), 24 February 2021 (*see,* Exhibit "D"), and 23 January 2025 (*see,* Exhibit "E"), as well as the 23 January 2025 version of "FAQ" for "Partners" (*see,* Exhibit "G") (the last two of which are from long after Plaintiffs downloaded the browser extension). As noted above, the Internet Archive shows the main page as it existed historically, but the "Add Honey – It's Free" button is inactive in the archived versions. *See:*

https://web.archive.org/web/20210630121200/https://www.joinhoney.com/

Accordingly, there is no way to verify whatever pages Plaintiffs might necessarily have seen at the time they downloaded the *Honey* browser extension.  As noted above, even the claimed "sign up flow" in effect ***today*** cannot be verified without downloading the browser extension in the face of the warning: "**It can: Read and change _all_ your data on _all_ websites.**"  (*See,* ECF 27-1, and p.3.  [Emph. added.])  Plaintiff's undersigned counsel is thus unable to verify even ***today's*** claimed "sign up flow".  Because Plaintiffs have no means to verify Defendants' claims, **Plaintiffs dispute the authenticity** of the documents Defendants now seek to have incorporated into Plaintiffs' FAC.  Even if the Chan Declaration were proper on a motion to dismiss (it is not), and even if it satisfied the requirements of the Federal Rules of Evidence (it does not), Plaintiffs cannot be

1  required to accept factual claims until they have been afforded their due process
2  right of cross-examination.

3      Plaintiffs also dispute whether their FAC, "... necessarily relies ..." (*see,*
4  *Marder, supra,* 450 F.3d, at 448), upon the documents appended to the Chan
5  Declaration at ECF No. 27-1, pp. 3-5.  As the *Khoja* panel wrote:

6      "[I]f ... [a] document [**not** mentioned in the complaint] merely creates
7      a defense to the well-pled allegations in the complaint, then that
8      document did not necessarily form the basis of the complaint.
9      Otherwise, defendants could use the [incorporation-by-reference]
10     doctrine to insert their own version of events into the complaint to
11     defeat otherwise cognizable claims."

12 *Khoja, supra,* 899 F.3d, at 1002.  (Citation omitted.)   There are only "rare
13 instances" in which documents not mentioned in the complaint may be
14 incorporated.  *Khoja, supra,* 899 F.3d, at 1002.

15     In the case at bar, the documents appended to the Chan Declaration at
16 ECF No. 27-1, pp. 3-5, are not mentioned in Plaintiffs' FAC; they are separate
17 documents from the page to which Plaintiffs made reference, *viz.:* the home page.
18 Defendants cannot establish on a motion to dismiss: (a) what pages Plaintiffs
19 may **necessarily** have seen in past years (when they downloaded the *Honey*
20 browser extension); or (b) whether any particular page Defendants now proffer
21 **was even in existence** at the relevant times (*i.e.,* when Plaintiffs downloaded
22 the *Honey* browser extension).  What "sign-up flow" any particular Plaintiff may
23 have encountered is a proper subject of discovery, which is part of due process.

24 **VI.   <u>JUDICIAL NOTICE</u>**

25     Defendants have filed a document **(the "RJN")** styled, "Request for
26 Judicial Notice" (*see,* ECF No. 26), which seems to conflate the incorporation-by-
27 reference doctrine with the concept of judicial notice.  (*See, ex rel.,* RJN, at 2:17.)
28 The incorporation-by-reference doctrine has been addressed above.

Because Defendants' RJN does not claim that any facts are, "... generally known ...", judicial notice of any claimed fact in the case at bar would require that the claimed fact:

> "... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

(*See,* Fed. R. Evid. 201(b)(2).)  The home page of Defendants' website – **as it exists <u>today</u>** – can be accurately and readily determined by looking at www.joinhoney.com.  As shown above, however, the web pages Defendants have proffered at ECF No. 27-1 pp. 3-5 – **as they exist <u>today</u>** – cannot be *readily* determined because they can only be accessed in the face of the warning: "**It can: Read and change <u>all</u> your data on <u>all</u> websites.**"  (*See,* ECF 27-1, and p.3. [Emph. added.]) Even if they could, the "sign up flow" that exists in 2025 proves nothing about whatever "sign up flow" may have existed when Plaintiffs downloaded the *Honey* browser extension in prior years.

Defendants cite *Maree v. Deutsche Lufthansa AG,* 2020 WL 6018806, *2-3 (C.D. Cal. 2020), for the view that "sign up flow" can be accurately and readily determined.  (*See,* ECF No. 26, at 3:18.)  Defendants' reliance upon *Maree* is misplaced.  The *Maree* decision adjudicated both an evidentiary motion to compel arbitration, and a motion to dismiss.  Accordingly, declarations were at issue:

> "Exhibit E is a screenshot of the checkout flow ... As Plaintiff correctly points out, the RJN does not state what date the screenshot was taken or whether it is an accurate representation of what Plaintiff saw ... in January 2020.  Lufthansa represented that the screenshot was captured in August 2020, but that it was in the process of obtaining a declaration from Expedia.com which would confirm that the checkout flow in August 2020 was the same as in January 2020."

*Maree,* 2020 WL 6018806, at *2.  The *Maree* court held that this was judicially

noticeable, but only because, "Exhibits A-F are documents made publicly available *by government entities,* and are *matters of public record* not subject to reasonable dispute ..." *Maree,* 2020 WL 6018806, at *2. (Emph. added.)  The instant action does not involve any government websites, but instead the website *of a party.*  *Cf.: Gerritsen v. Warner Bros. Entertainment Inc.,* 112 F.Supp.3d 1011, 1030 (C.D. Cal. 2015). ("Federal courts considering the issue have expressed skepticism as to whether it is appropriate to take judicial notice of information or documents appearing on websites that are created and maintained by a party to the litigation.")

Defendants' RJN cites *Roley v. Google LLC,* 2019 WL 1779974, *1 n.2 (N.D. Cal. 2019).  (*See,* ECF No. 26, at 4:20.)  In *Roley,* the court merely took judicial notice of, "...  the appearance of the sign-up page ..."  *See, Roley,* at *1 n.2. Nothing in the *Roley* decision indicates that there was any dispute as to whether the sign-up page was unchanged from the relevant time.  In the case at bar, Plaintiffs dispute the contents of the documents at ECF 27-1, pp. 3-5, precisely because their purported contents and placement on a site map, *cannot* be "... readily determined from sources whose accuracy cannot reasonably be questioned ..." (*cf.:* Fed. R. Evid., 201(b)(2)), and because there is absolutely no reason to assume that even if they are genuine they were the same in earlier years when Plaintiffs downloaded the *Honey* browser extension.  With regard to the purported "Terms of Use" at ECF 27-2, pp. 2-14, the Court may take judicial notice that the document *presently exists* on Defendants' website.  The Court may not take judicial notice of the truth of any facts claimed therein, *e.g.,* that the purported "Terms of Use" were, "*Last updated February 16, 2024*".  (*See,* ECF 27-2, p. 2.)  Even if the purported "Terms of Use" were, "*Last updated February 16, 2024*", that would suggest that *some other version* of a purported "Terms of Use" may have been somewhere on Defendants' website in earlier years when Plaintiffs downloaded the *Honey* browser extension.

1    Defendants' RJN cites *In re Adobe Systems, Inc. Privacy Litigation,* 66

2   F.Supp.3d 1197 (N.D. Cal. 2014).  (*See,* ECF No. 26, at 3:10.)  In *Adobe Systems,*

3   the court merely incorporated documents which were actually referenced and

4   quoted in the complaint.  *See, Adobe Systems,* 66 F.Supp.3d, at 1207 n.2.

5   **VII.   SOURCE OF APPLICABLE LAW**

6        "In diversity cases, the district court normally applies the substantive law

7   of the forum state, including its choice of law rules."  *Nelson v. International*

8   *Paint Co.,* 716 F.2d 640, 643 (9th Cir. 1983).  (Citation omitted.)  In the case at

9   bar, Defendants assert that Plaintiffs entered into a written agreement that

10  includes a choice of law clause.  This assertion lacks merit, because neither

11  Plaintiffs' FAC, nor any documents which may be incorporated by reference, nor

12  any documents subject to judicial notice, establish that Plaintiffs ever assented

13  to any written agreement.  As previously discussed, ECF No. 27-1, pp. 3-5, may

14  not be considered because, *inter alia:* (a) Plaintiff's FAC does not "'necessarily

15  rely" upon those documents; (b) those documents are not "central to" Plaintiffs'

16  claim; and (c) Plaintiffs question their authenticity because they may only be

17  accessed in the face of the warning: "**It can: Read and change <u>all</u> your data

18  on <u>all</u> websites.**"  (*See,* ECF 27-1, at p.3.  [Emph. added.]) These documents

19  cannot be considered because it is not established that Plaintiffs "must" have

20  seen these pages.  (*See, Knievel, supra,* at 1076.)  Finally, even if ECF No. 27-1,

21  pp. 3-5, are genuine, there is nothing to indicate that the so-called, "sign-up flow",

22  in effect at the present time was also in effect in earlier years when Plaintiffs

23  downloaded the *Honey* browser extension.

24       The Court may take judicial notice of the ***existence – as of the present***

25  ***time*** – of the proffered document styled, "Terms of Use", at ECF No. 27-2, pp. 2-

26  14.  But the Court may not take judicial notice of the ***truth*** of any matter stated

27  therein, *e.g.,* the recital that it was, "***Last updated February 16, 2024***".  If the

28  document ***were*** last updated in February of 2024, nothing in Plaintiffs' FAC

1   would suggest that any of the Plaintiffs downloaded the *Honey* browser extension
2   at any time subsequent to 15 February 2024.  (They did not.)  Finally, even if
3   ECF No. 27-1, p. 5, were both genuine and in effect in the prior years when
4   Plaintiffs downloaded the *Honey* browser extension, ECF No. 27-1, p. 5, refers to
5   something entitled, "Terms of ***Service***" (emph. added), while ECF No. 27-2, p. 2,
6   bears the title, "Terms of ***Use***" (emph. added). The different titles ("Terms of
7   Service" v. "Terms of Use") preclude any reliance upon the purported, "Terms of
8   Use", now proffered by Defendants at ECF No. 27-2.

9        Defendants seek to establish foreign law through an evidentiary
10  declaration.  This Court may not consider that declaration because Plaintiffs have
11  had no opportunity to cross-examine the declarant (a requirement of due process).
12  The decision cited by Defendants to the effect that declarations opining on foreign
13  law may be considered on a motion to dismiss does not address due process
14  concerns (presumably because the litigants failed to raise that issue).  *Cf.: de*
15  *Fontbrune v. Wofsy,* 838 F.3d 992, 994 (9th Cir. 2016).  "In the absence of proof,
16  the laws of a foreign jurisdiction are presumed to be the same as California."  *In*
17  *re Marriage of Moore* (1980) 113 Cal.App.3d 22, 26 n.1, *citing, Christ v. Superior*
18  *Court,* Etc. (1931) 211 Cal. 593, 598.

19        Even if it were established that Plaintiffs had assented to the proffered,
20  "Terms of Use" (it is not), that would not require enforcement of any purported
21  choice-of-law clause.  California jurisprudence:

22        "... contains safeguards to protect contracting parties, including
23        consumers, against choice-of-law agreements that are unreasonable
24        or in contravention of a **fundamental California policy.** ... [T]he
25        weaker party to an adhesion contract may seek to avoid enforcement
26        of a choice-of-law provision therein by establishing that 'substantial
27        injustice' would result from its enforcement ... or that superior power
28        was unfairly used in imposing the contract."

**OPPOSITION TO MOTION TO DISMISS – PAGE 22**

1  *Washington Mutual Bank, FA v. Superior Court* (2001) 24 Cal.4th 906, 917-918.

2  (Emph. added.)

> "If ... there is a fundamental conflict with California law, ... [and] [i]f
> California has a materially greater interest than the chosen state,
> the choice of law shall not be enforced ..."

6  *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (2017) 8 Cal.App.5th 1, 10.

7  Choice-of-law provisions found in adhesion contracts are to be, "... scrutinize[] ...

8  with care ...", for "substantial injustice" to the adherent.  *See, Washington*

9  *Mutual,* 24 Cal.4th, at 918 n.6.

10    On the instant Motion, Plaintiffs' FAC must be construed to aver that **all**

11  unlawful conduct that forms the basis of Plaintiffs' claims ***occurred within***

12  ***California.*** (*See,* FAC, at ¶¶ 10-11; *Walter v. Drayson,* 538 F.3d 1244, 1247 (9th

13  Cir. 2008) ["...  the light most favorable ... and reasonable inferences ..."])  *Cf.:*

14  *People v. Ashford University, LLC* (2024) 100 Cal.App.5th 485, 524.  (Where, "...

15  the actual law violations occurred in this state, ... defendants fail to persuade us

16  that the trial court violated principles of extraterritoriality by awarding penalties

17  based on their deceptive statements to non-residents of California.") Accordingly,

18  California has a "materially greater interest" than England in having its laws

19  applied to Defendants' conduct within this State, and California has a

20  fundamental policy of prevention of unlawful conduct within its borders. *Cf., e.g.,*

21  *Mejia v. DACM Inc.* (2020) 54 Cal.App.5th 691, 700-701.  (Refusing to enforce

22  written agreement to apply Utah law because, "... Utah does not permit courts to

23  invalidate arbitration clauses that waive public injunctive relief in any forum ...")

24  California has a ***fundamental policy*** of applying its own law to wrongful

25  conduct committed by California residents within this State.  *See, Hurtado v.*

26  *Superior Court* (1974) 11 Cal.3d 574, 584.  ("[W]hen the defendant is a resident

27  of California and the tortious conduct ... occurs here, California's deterrent policy

28  of full compensation is clearly advanced by application of its own law.")

**OPPOSITION TO MOTION TO DISMISS – PAGE 23**

1  **VIII.  LEGAL THEORY OF IMPLIED CONTRACT**

2   Defendants assert that Plaintiffs can have no implied contract claim due

3  to the claimed existence of an express contract.  This argument fails precisely

4  because, on the instant Motion, Defendants have not, and cannot, establish

5  formation of any express contract.

6   Defendants incorrectly assert that Plaintiffs have failed to allege the

7  existence of an implied contract.  (*See,* Δs' Mem., at pdf page 15, lines 11, *et. seq.*

8  [All cites to pdf page #s.])  Defendants' reliance upon English law is misplaced,

9  because, as shown above, California law controls.  Defendants argue in the

10  alternative that Plaintiffs' FAC would be insufficient under California law, *citing,*

11  *Donovan v. RRL Corp.* (2001)  26 Cal.4th 261.  Defendants offer a truncated

12  quotation from *Donovan,* omitting the important words: "Some courts have stated

13  that an ..."  *See, Donovan,* 26 Cal.4th, at 271.  *Donovan* went on to state:

14   "... certain advertisements have been held to constitute offers where

15   they invite the performance of a specific act without further

16   communication and leave nothing for negotiation. ... Various

17   advertisements involving transactions in goods also have been held

18   to constitute offers where they invite particular action. ... [C]ourts

19   have considered whether the advertiser, in clear and positive terms,

20   promised to render performance in exchange for something requested

21   by the advertiser, and whether the recipient of the advertisement

22   reasonably might have concluded that by acting in accordance with

23   the request a contract would be formed."

24  *Donovan,* 26 Cal.4th, at 272.  A review of Exhibit "A" to Plaintiffs' FAC

25  establishes that the communication in question invited the performance of a

26  specific act (*i.e.,* "Add Honey", *viz.:* download the software), without further

27  communication or any opportunity for negotiation.  (Defendants' assertion that

28  there is no invitation for performance lacks merit.)  The communication in

question states in clear and positive terms that, "Honey finds you the Internet's best discount codes", in exchange for the act of downloading the *Honey* browser extension (*i.e.,* "Add Honey").  A reasonable person not only might have, but would have (and Plaintiffs did), conclude that by acting in accordance with the request a contract would be formed.

Defendants assert that there can be no implied contract without some conduct.  Whether the parties' conduct created an implied agreement is generally a question of fact.  *Cf.: Diaz v. Sohnen Enterprises* (2019) 34 Cal.App.5th 126, 133.  Plaintiffs' conduct included downloading, and then using, the browser extension.  Defendants' conduct included: (a) creating the website; (b) posting the communications on the website; (c) creating a browser extension; (d) inserting the browser extension into Plaintiffs' electronic devices when Plaintiffs performed the invited act (*i.e.,* "Add[ed] Honey"); and (e) thereafter, causing the *Honey* browser extension to create the ongoing appearance that Defendants were, "... find[ing] ... [Plaintiffs] the Internet's best discount codes," when they purchased items.

Even if implied contract were not a viable theory (although it is), the facts alleged would constitute an express offer of a unilateral contract: If you "Add Honey", we will, "... find[] you the Internet's best discount codes."  *Cf.: Asmus v. Pacific Bell* (2000) 23 Cal.4th 1, 10.  ("**[A]ny** act or forbearance ... may constitute consideration for the promise." [Emph. added.])  "[A] plaintiff may plead the two theories [i.e., implied contract and express contract] in the alternative ..."  *See, T & M Solar and Air Conditioning, Inc. v. Lennox International Inc.,* 83 F.Supp.3d 855, 873 (N.D. Cal. 2015).  However, no amendment would be required in the instant Action, because a, "... complaint should not be dismissed if it states a claim under **any** legal theory, even if the plaintiff erroneously relies on a **different** legal theory." *Van v. Wal-Mart Stores, Inc.,* 583 Fed.Appx. 761, 763 (9th Cir. 2014), *quoting, Haddock v. Board of Dental Examiners of California,* 777 F.2d 462, 464 (9th Cir. 1985).  (Emph. by Plaintiffs.)

**OPPOSITION TO MOTION TO DISMISS – PAGE 25**

Defendants incorrectly assert that Plaintiffs have failed to allege damages. (*See,* Δs' Mem., at 17:10-11.) Defendants incorrectly assert that Plaintiffs have failed to allege that they would have found the "better" coupon codes. (*See,* Δs' Mem., at 17:19-20.) Plaintiffs' FAC avers that Defendants actively encourage *Honey* users to forgo searching for coupons and discounts on their own, but instead to trust the *Honey* browser extension to find and apply the "best" codes. (*See,* FAC, at ¶ 26.) Plaintiffs' FAC uses the word, "because", to allege causation. (*See,* FAC, at ¶ 37.) The only way Plaintiffs would not have received the "better" discount codes ***because*** of Defendants' conduct would be if Plaintiffs would have searched them out and found them. Plaintiffs have alleged that they paid more for items than they would have paid if they had known that the *Honey* browser extension did not actually search for the "best" coupons or discount codes. (*See,* FAC, at ¶ 40.) These averments necessarily imply that Plaintiffs would have searched out, found, and used, the "better" discount codes. *Cf.: Walter, supra,* 538 F.3d, at 1247 ("... the light most favorable ... and reasonable inferences ...").

Defendants incorrectly assert that Plaintiffs are required to allege details of specific transactions in order to state a claim. *See,* Δs' Mem., at 17:23-28, *citing, Turner v. City and County of San Francisco,* 788 F.3d 1206, 1210 (9th Cir. 2015). *Turner* refers to, "... allegations of law and unwarranted inferences ...", and provides no support for Defendants' proffered view. "[T]he pleading standard Rule 8 announces does **<u>not</u>** require 'detailed factual allegations,'.." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), *quoting, Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). (Emph. by Plaintiffs.) Defendants, of course, have records of the exact details of each purchase Plaintiffs made, and of each instruction they received from each "Partner" vendor to withhold an otherwise-available discount code. Plaintiffs are consumers who cannot be expected to have retained records of each purchase, and have never had access to the agreements and communications between Defendants on the one hand, and their "Partner"

vendors on the other hand.  Plaintiffs cannot be required to plead facts within the exclusive knowledge of Defendants in order to state a claim.  *See, United States ex rel. Vatan v. QTC Medical Services, Inc.,* 721 Fed.Appx. 662, 663 (9th Cir. 2018), *and the cases cited therein.*

Defendants cite *Svenson v. Google Inc.,* 65 F.Supp.3d 717, 724 (N.D. Cal. 2014), and *Huynh v. Quora, Inc.,* 2019 WL 11502875, *10 (N.D. Cal. 2019), for the view that there can be no benefit-of-the-bargain damages where the contract involves a "free" service.  (*See,* Δs' Mem., at 18:4-11.)  While this is clearly a question of state law, neither decision cites any California authority, or even any supporting judicial decision.  Federal courts have noted that California's damage rules are "confusing", and Plaintiffs' undersigned counsel speculates that the *Svenson* and *Huynh* courts may have confused benefit-of-the-bargain damages with out-of-pocket damages.  *See, Southern Union Co. v. Southwest Gas Corp.,* 180 F.Supp.2d 1021, 1038 (D. Az. 2002), *citing, Overgaard v. Johnson* (1977) 68 Cal.App.3d 821, 825.

The governing statute is Civil Code section 3300, which provides:

> "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

(*See,* Civ. Code, § 3300.)  Detriment is caused by breach whether or not a party has made payment in exchange for a contractual covenant.  Damages recoverable for breach of contract:

> "... include: (1) 'general damages,' which are damages that flow directly and necessarily from a breach of contract ... (2) 'special' or consequential damages, which are damages that do not arise directly and inevitably but which are recoverable to the extent they were

1    either actually foreseen ... or were reasonably foreseeable when the

2    contract was formed" ... [and even] (3) nominal damages (Civ. Code,

3    § 3360; *Sweet v. Johnson* (1959) 169 Cal.App.2d 630, 632-633) ..."

4    *Mission Beverage Co. v. Pabst Brewing Co.,* LLC (2017) 15 Cal.App.5th 686, 710-

5    711. (Citations, internal quot. mks., attribution omitted.) Nominal damages are

6    recoverable even in the absence of "appreciable detriment". (*See,* Civ. Code, §

7    3360.) A plaintiff need not even allege damage, as, "[e]ven where no actual

8    damages can be established, a plaintiff who has established that a contract was

9    breached is entitled to an award of nominal damages ..." *ProMex, LLC v.*

10   *Hernandez* (2011) 781 F.Supp.2d 1013, 1019 (C.D. Cal. 2011), *citing, Sweet,*

11   *supra,* 169 Cal.App.2d, at 632. "[N]ominal damages ... are presumed as a matter

12   of law ..." *Sweet,* 169 Cal.App.2d, at 632. *See also, Browner v. Davis* (1860) 15

13   Cal. 9, 11. ("In actions for the breach of a contract, nominal damages are

14   presumed to follow as a conclusion of law, from proof of the breach ...")

15       Finally, the *Honey* browser is not "free", simply because the user does not

16   pay *Honey* **directly.** The price paid for items purchased from Defendants'

17   "Partner" vendors necessarily includes the commissions that the "Partner"

18   vendors pay to *Honey.* Thus, Plaintiffs have paid money indirectly to Defendants,

19   and this fact is necessarily implied from the averments of Plaintiffs' FAC.

20   **IX.   LEGAL THEORY OF UNFAIR COMPETITION**

21       Plaintiffs are not seeking to apply the UCL extraterritorially. "[T]he UCL

22   reaches **any** unlawful business act or practice ***committed in California.***"

23   *Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191, 1208. (UCL did not apply where

24   the only conduct committed in California was the decision to adopt a policy that

25   was, "... not unlawful in the abstract.") (Emph. added.) "[T]he UCL does not

26   apply to ***actions occurring outside of California*** that injure non-residents ..."

27   *Ehret v. Uber Technologies, Inc.,* 68 F.Supp.3d 1121, 1130 (N.D. Cal. 2014). In

28   the case at bar, **all** conduct which forms the basis of Plaintiffs' claims ***occurred***

---

**OPPOSITION TO MOTION TO DISMISS – PAGE 28**

1 *within California.*  (*Cf.*: FAC, at ¶¶ 10-11; *Walter, supra,* 538 F.3d, at 1247.)

2 *Cf.: People v. Ashford, supra,* 100 Cal.App.5th, at 524 ("... actual law violations

3 occurred in this state ...").  In *Ice Cream Distributors of Evansville, LLC v.*

4 *Dreyer's Grand Ice Cream, Inc.,* 2010 WL 3619884, \*8 (N.D. Cal. 2010) (cited at

5 Δs' Mem., at 20:13-18), the wrongdoers were out-of-state employees acting at the

6 direction of in-state employees.  In the case at bar, **all** wrongful conduct was

7 performed *within California, i.e.,* Defendants' principal place of business.

8 Defendants incorrectly assert that UCL standing requires that a plaintiff

9 must have paid money directly to the defendant. (*See,* Δs' Mem., at 20:21 through

10 21:6.)  The decisions of California's courts control.  *See, AGK Sierra De*

11 *Montserrat, L.P. v. Comerica Bank,* 109 F.4th 1132, 1136 (9th Cir. 2024).  "UCL

12 restitution does **not** require money be paid directly to defendant."  *Troyk v.*

13 *Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1340, *citing, Shersher v.*

14 *Superior Court* (2007) 154 Cal.App.4th 1491, 1500.  (Emph. added.)  Footnote 30

15 in *Troyk* appears to preclude the argument Defendants now advance.  *See, Troyk,*

16 171 Cal.App.4th, at 1348 n.30.  The only requirement is that a plaintiff's money

17 or property was lost, "as a result of", the proscribed conduct.  *See, ibid.,* at 1349.

18 As explained above, Plaintiffs have paid money *indirectly* to Defendants,

19 through their "Partner" vendors.  The two decisions cited by Defendants are

20 inapposite.  In *Wesch v. Yodlee, Inc.,* 2021 WL 1399291 (N.D. Cal. 2021), the, "...

21 Plaintiffs ha[d] not alleged a transaction or contract *with Yodlee* [*i.e.,* the

22 defendant]."  *See, ibid.,* at \*6.  (The Yodlee product was spyware that Yodlee had

23 installed into the computers of *non-party financial institutions; see, ibid.,* at

24 \*1.)  In the case at bar, Plaintiffs are in privity with Defendants, and their

25 software has been installed in *Plaintiffs'* computers.)  Neither *Winzig v.*

26 *Stockpile Investments, Inc.,* 2021 WL 4812956, \*4 (C.D. Cal. 2021), nor any of the

27 three cases cited therein, holds that a plaintiff must have paid money directly to

28 the defendant.  A UCL plaintiff has standing even if the defendant has received

**OPPOSITION TO MOTION TO DISMISS – PAGE 29**

1   nothing, so long as the defendant's conduct has caused economic loss to the

2   plaintiff.  *See, Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 336-337.

3   In the case at bar, Plaintiffs have both standing, and eligibility for restitution,

4   because Plaintiffs' funds flowed to Defendants through their "Partner" vendors.

5       Lost profits is also a species of economic loss.  *See, North American*

6   *Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 777 n.8.  ("Although

7   purely economic loss usually occurs in the form of lost profits, it may also include

8   consequential damages, loss of expected proceeds, [or] lost opportunities ...")

9   Defendants misread *Dual Diagnosis Treatment Center, Inc. v. Blue Cross of*

10  *California,* 2018 WL 10072961 (C.D. Cal. 2018), wherein it was not discernable

11  from the complaint how the conduct of the, "... Defendants resulted in Plaintiffs

12  losing any opportunities in the first place." (*See, ibid.,* at *11.)  In the case at bar,

13  Plaintiffs' FAC, read as it must be (light most favorable plus reasonable

14  inferences), alleges that Plaintiffs lost the opportunity to obtain the lowest prices

15  precisely because of Defendants' wrongful conduct.

16      "[U]nfair competition shall mean and include any unlawful, unfair or

17  fraudulent business act or practice ..." (*See,* Bus. & Prof. Code, § 17200.)  In the

18  case at bar, Plaintiffs have asserted the "fraudulent" prong, and the "unfair"

19  prong. (*See,* FAC, at ¶¶ 57-58.)

20      The "fraudulent" prong does not require actual fraud.  Because, "... the

21  UCL's focus [is] on the defendant's conduct, rather than the plaintiff's damages

22  ...", it is only necessary to prove that, "... members of the public are likely to be

23  deceived ...", and there is no requirement of either falsehood, or reliance.  *In re*

24  *Tobacco II Cases* (2009) 46 Cal.4th 298, 312.  (Citations, internal quot. mks.

25  omitted.)  "A fraudulent practice under the UCL ... can be shown even without

26  allegations of actual deception, reasonable reliance and damage." *Lueras v. BAC*

27  *Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 81.  (Citation, attribution,

28  internal quot. mks. omitted.)  "A violation can be shown even if **no one** was

actually deceived, relied upon the fraudulent practice, **or sustained any damage.**" *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1274. (Emph. added; citations, internal quot. mks. omitted.)

Even though the "fraudulent" prong of the UCL has nothing to do with actual "fraud", the Ninth Circuit holds that a plaintiff must comply with Fed.R.Civ.P. 9(b)'s particularity requirement – at least as to any allegations of (actual) fraudulent conduct. *See, Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1126-1127 (9th Cir. 2009). However, that requirement is "relaxed" where, as here, the relevant information is within the defendant's exclusive possession and control:

> "... Rule 9(b) may be relaxed as to matters within the opposing party's knowledge.' *Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989). Rule 9(b) only 'requires that plaintiffs specifically plead those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access.' *Concha v. London,* 62 F.3d 1493, 1503 (9th Cir. 1995). As such, 'in cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendant.' *Id.* In those cases, a 'pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations.' *Moore,* 885 F.2d at 540."

*Rubenstein v. Neiman Marcus Group LLC,* 687 Fed.Appx. 564, 567-568 (9th Cir. 2017). *See also, Nayab v. Capital One Bank (USA), N.A.,* 942 F.3d 480, 483-494 (9th Cir. 2019). ("... allegations based on information and belief may suffice, so long as the allegations are accompanied by a statement of facts upon which the belief is founded ..." [Citations, internal quot. mks., attribution omitted.]) *See also, United States ex rel. Vatan, supra,* 721 Fed.Appx., at 663, ***and cases cited therein.*** In the case at bar, Plaintiffs' FAC explains the basis for Plaintiffs' allegations. Defendants have far more information than they could possibly need

to answer Plaintiffs' FAC.  The exhibits to Plaintiffs' FAC provide additional detail.  *See, Whiteside v. Kimberly Clark Corp.,* 108 F.4th 771, 786 (9th Cir. 2024).

Defendants next incorrectly assert that their statements are mere puffery.  "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision [at the pleadings stage] ..."  *Whiteside, supra,* 108 F.4th, at 778.  (Citation, internal quot. mks. omitted.)  The statement that, "If there's a better price, we'll find it" (*see,* FAC, at ¶¶ 19, 34), is both specific and absolute, and is not puffery.  *See, Newcal Industries, Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1053 (9th Cir. 2008).  ("A statement is considered puffery if the claim is ***extremely unlikely*** to induce consumer reliance. ...  the difference ... rests in the specificity or generality ..." [Emph. added.])  There would be no reason for anyone to download the browser extension except to obtain performance of that very specific promise.  (*Cf.:* FAC, at ¶ 59.)  It is also not true that Defendants search for the internet's best coupons.  (*See,* Δs' Mem., at 1, n.3; *cf.:* FAC, at ¶¶ 37-39.)

Defendants also challenge the "unfair" prong.  The elements are stated in the disjunctive:

> "[A]n 'unfair' business practice occurs when that practice offends an established public policy **or** when the practice is immoral, unethical, oppressive, unscrupulous **or** substantially injurious to consumers. ... [Citation.] ..."

*Lueras, supra,* 221 Cal.App.4th, at 81.  (Emph. added; citation, attribution, internal quot. mks. omitted.)  The practices alleged are immoral, unethical, oppressive, and, unscrupulous, and impose financial injury upon consumers.

## CONCLUSION

The Motion to Dismiss should be denied in its entirety.  If it is granted in part, the Court should permit Plaintiffs to conduct discovery prior to amending, to avoid the waste of time and resources which would flow from round after round of unnecessary pleading challenges.

1   Dated: 14 May 2025                    Respectfully submitted,

2                                         DAVID J. GALLO
                                          **LAW OFFICES OF DAVID J. GALLO**
3                                         12702 VIA CORTINA, SUITE 500
                                          DEL MAR, CALIFORNIA  92014-3769
4                                         Telephone: (858) 509-3652

5
                                                  /s/ David J. Gallo
6                                         By:    David J. Gallo,
                                                 California Bar No. 127722
7                                                Attorneys for all Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  [OPPO to MOT to DISMISS.wpd]

**OPPOSITION TO MOTION TO DISMISS – PAGE 33**