PAUL F. RUGANI (SBN 342647)
prugani@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
Telephone:   +1 949 567 6700
Facsimile:   +1 949 567 6710

CLEMENT S. ROBERTS (SBN 209203)
croberts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759

GEOFFREY MOSS (SBN 258827)
gmoss@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue, Suite 2700
Los Angeles, California 90071
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

Attorneys for Defendants
Honey Science, LLC and PayPal, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM CAMPBELL, DANIEL JENKS-BERRYMAN, DECLAN LYNN, ADITHYA NARAYANAN, JAMES POAD, DAN SORAHAN, ALAN SUTCH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HONEY SCIENCE, LLC, a Delaware limited liability company, PAYPAL, INC., a Delaware corporation, and DOES 1 through 50,<br><br>Defendants. | Case No. 5:25-cv-02850-PCP<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**<br><br>Date:       June 26, 2025<br>Time:      10:00 AM<br>Dept:      Courtroom 8, 4th Floor<br>Judge:    Hon. P. Casey Pitts |

TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 2

    A. Plaintiffs Do Not Rebut the Applicability of English Law and Do Not Contest Their Claims Are Foreclosed Under English Law ..................................... 2

        1) Plaintiffs Do Not Rebut Their Acceptance of the TOU .............................. 2

        2) Plaintiffs Do Not Dispute Their Claims Fail Under English Law ............. 5

        3) Plaintiffs' Choice of Law Analysis Ignores the U.K.'s Extensive Interest in This Dispute ............................................................................. 6

    B. Plaintiffs' Opposition Confirms Their Claims Fail Under California Law ............ 8

        1) Plaintiffs Have No Implied Contract Claim Under California Law ........... 8

        2) Plaintiffs' Opposition Does Not Resuscitate the UCL Claim ................... 11

            a. Plaintiffs' Opposition Does Not Show They Have Standing ........ 11

            b. Plaintiffs' Opposition Does Not Establish Any Fraudulent or Unfair Act or Practice ................................................................... 13

    C. Plaintiffs' Comments On Jurisdiction Confirm Their Claim Is Pure Speculation ........................................................................................................... 14

III. CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*1-800-Got Junk? LLC v. Superior Ct.*,
  189 Cal. App. 4th 500 (2010), *as modified* (Nov. 19, 2010) .................................................... 7

*Asmus v. Pac. Bell*,
  23 Cal. 4th 1 (2000) ................................................................................................................... 9

*In re California Title Ins. Antitrust Litig.*,
  No. C 08-01341 JSW, 2009 WL 3756686 (N.D. Cal. Nov. 6, 2009) ...................................... 12

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
  338 F. Supp. 3d 995 (N.D. Cal. 2018), *aff'd*, 953 F.3d 655 (9th Cir. 2020) ............................. 5

*Datel Holdings Ltd. v. Microsoft Corp.*,
  712 F. Supp. 2d 974 (N.D. Cal. 2010) ...................................................................................... 3

*de Fontbrune v. Wofsy*,
  838 F.3d 992 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc*
  (Nov. 14, 2016) .......................................................................................................................... 6

*Diaz v. Sohnen Enters.*,
  34 Cal. App. 5th 126 (2019) ...................................................................................................... 8

*Donovan v. RRL Corp.*,
  26 Cal. 4th 261 (2001) ............................................................................................................... 8

*Dual Diagnosis Treatment Center, Inc. v. Blue Cross of California*,
  2018 WL 10072961 (C.D. Cal. 2018) ..................................................................................... 12

*Fontenberry v. MV Transp., Inc.*,
  984 F. Supp. 2d 1062 (E.D. Cal. 2013) ................................................................................... 11

*Hirlinger v. WP Co. LLC*,
  No. 23-CV-05963-AMO, 2024 WL 2941630 (N.D. Cal. June 10, 2024) ................................ 3

*Hurtado v. Superior Court*,
  11 Cal.3d 574 (1974) ................................................................................................................. 7

*Huynh v. Quora, Inc.*,
  No. 18-cv-07597-BLF, 2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ................................ 10

*In re Kaypro*,
  218 F.3d 1070 (9th Cir. 2000) ............................................................................................. 4, 5

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) .................................................................................................. 3

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (2011) ............................................................................................................ 12

*Maree v. Deutsche Lufthansa AG*,
　2020 WL 6018806 (C.D. Cal. Oct. 7, 2020) ................................................................................ 4

*Mattel, Inc. v. MGA Entertainment, Inc.*,
　782 F. Supp. 2d 911 (C.D. Cal. 2011) .................................................................................... 13

*Matthews v. Apple, Inc.*,
　No. 24-CV-00272-JST, 2024 WL 5517089 (N.D. Cal. Dec. 20, 2024) .................................. 9

*Maxim Crane Works, L.P. v. Tilbury Constructors*,
　208 Cal. App. 4th 286 (2012) .................................................................................................. 7

*Mejia v. DACM Inc.*,
　54 Cal. App. 5th 691 (2020) .................................................................................................... 7

*N. Am. Chem. Co. v. Superior Ct.*,
　59 Cal. App. 4th 764 (1997) .................................................................................................. 13

*Newcal Industries, Inc. v. Ikon Office Solution*,
　513 F.3d 1038 (9th Cir. 2008) ............................................................................................... 14

*Retired Employees Assn. of Orange County, Inc. v. County of Orange*,
　52 Cal.4th 1171 (2011) ............................................................................................................ 9

*Svenson v. Google Inc.*,
　65 F. Supp. 3d 717 (N.D. Cal. 2014) ..................................................................................... 10

*Troyk v. Farmers Group, Inc.*,
　171 Cal. App. 4th 1305 (2009) ........................................................................................ 11, 12

*Vestar Dev. II, LLC v. Gen. Dynamics Corp.*,
　249 F.3d 958 (9th Cir. 2001) ................................................................................................... 9

*X Corp. v. Bright Data Ltd.*,
　733 F. Supp. 3d 832 (N.D. Cal. 2024) ................................................................................... 10

**Statutes**

Cal. Civ. Code § 3300 .................................................................................................................. 9, 10

Class Action Fairness Act ................................................................................................................ 14

Fed. R. Civ. P. 9(b) ................................................................................................................... 13, 14

Fed. R. Civ. P. 44.1 ........................................................................................................................... 6

## I.   INTRODUCTION

Plaintiffs' Opposition does not dispute that they registered for Honey accounts when they downloaded the Honey browser extension. Indeed, Plaintiffs' First Amended Complaint ("FAC") relies on and attaches statements made during that process, including the welcome email Plaintiffs received after registering. But, in so pleading, Plaintiffs selectively omit that registering for Honey required them to accept Honey's Terms of Use, including terms that subject their claims to English law. In its motion to dismiss, PayPal presented evidence of applicable English law and explained why Plaintiffs' claims fail under that law. Plaintiffs' Opposition is silent on those points and thus concedes them. The Court should grant PayPal's motion to dismiss for that reason alone.

In lieu of providing any substantive response concerning English law, Plaintiffs raise various evidentiary objections to the material PayPal submitted with its motion. All their objections fail. At bottom, Plaintiffs' argument is that this Court should consider certain portions of their sign-up flow and disregard others they selectively omitted from the Complaint. That is precisely the sort of gamesmanship the incorporation by reference doctrine is designed to prevent. Plaintiffs are not permitted to evade the legal import of their actions by omitting portions of the sign-up process that doom their claims. Plaintiffs also offer no facts disputing that the materials PayPal submitted are what they purport to be, as a visit to the Honey website can confirm. And Plaintiffs' competency challenge is meritless. They do not identify any facts undermining Mr. Chan's personal knowledge of the sign-up process he describes—which is also subject to public verification—nor do they challenge Mr. Willis's competence to present evidence of what English law is. Indeed, courts routinely consider declarations from foreign law experts at the motion to dismiss stage.

Even if the Court were to disregard the agreement or otherwise decline to apply English law, Plaintiffs' claims fare no better under California law. As to the implied contract claim, the advertisements Plaintiffs cite neither elicit the performance of a specific act sufficient to constitute a firm offer and nor evince PayPal's intent to be bound. That is particularly so where

the Honey website explicitly discloses the terms and conditions on which PayPal *does* intend to be bound, which are contrary to those Plaintiffs identify.

Plaintiffs likewise do nothing to substantiate their UCL claim. The Opposition does not cite a single alleged fact pointing to harm or conduct occurring in California and offers no reason why the UCL should apply to advertisements made in the U.K., to U.K. residents, who downloaded Honey in the U.K., shopped in the U.K., and could only have been harmed, if at all, in the U.K. And Plaintiffs do nothing to explain why merchant control over the coupon codes merchants will honor gives rise to UCL liability. Plaintiffs' claim is premised upon the notion they might not have received the "best" deal because Honey publicly discloses merchants have control over the content Honey hosts for them. That is not a UCL violation. Plaintiffs do not identify a single transaction where Honey suppressed an otherwise available code at merchant direction, or a single instance of such merchant direction occurring. Speculative assertions that "I *think* I could have saved more" do not suffice under *Iqbal* and *Twombly*. Plaintiffs' contention is particularly implausible because it defies logic: why would a merchant instruct Honey to suppress a coupon if it planned to turn around and make that coupon available to shoppers through another source anyway? And Plaintiffs do not cite any authority holding that the lost opportunity to save when using a free service can constitute an actionable loss of money or property under the UCL.

Plaintiffs' Opposition does not even attempt to justify their claims under English law and does not show they have pled any viable claim under California law. Plaintiffs' FAC should be dismissed with prejudice.

## II.   ARGUMENT

### A.   Plaintiffs Do Not Rebut the Applicability of English Law and Do Not Contest Their Claims Are Foreclosed Under English Law

#### 1) Plaintiffs Do Not Rebut Their Acceptance of the TOU

Plaintiffs do not dispute that their own allegations confirm they each registered for Honey accounts. The FAC alleges Plaintiffs "downloaded the free Honey software browser extension," "provided his or her e-mail through the Honey website," and "received an e-mail" after signing up through the website. FAC ¶¶ 31, 33-34. Plaintiffs even attach to the FAC an email one of

them received at the culmination of the sign-up process. *Id*. Ex. F.  Nonetheless, Plaintiffs selectively omit details of their sign-up process—specifically, the part where they were presented with and agreed to the TOU.  PayPal followed a well-established path when it presented evidence of how users sign up for the Honey service and agree to the Honey TOU when they do.  Mot. at 3-4; *see also Hirlinger v. WP Co. LLC,* No. 23-CV-05963-AMO, 2024 WL 2941630, at *2 (N.D. Cal. June 10, 2024) (recognizing "[c]ourts routinely take judicial notice of terms of service," while taking notice of the full Checkout Page and the Terms of Sale despite plaintiffs' objections as to relevance and disputed factual issues where plaintiffs included a partial screenshot of the Checkout Page and described the Checkout Page in their complaint) (internal citations omitted); *see also Datel Holdings Ltd. v. Microsoft Corp.*, 712 F. Supp. 2d 974, 984 (N.D. Cal. 2010) (taking judicial notice of Xbox Live Terms of Use even where plaintiffs disputed whether the Terms were those seen by plaintiffs at the time).  That information is judicially noticeable and incorporated by reference.

Plaintiffs, for their part, don't dispute registering for Honey accounts and don't argue they registered for a Honey account *without* agreeing to the TOU.  Instead, they attempt to create factual issues by interposing various evidentiary objections.  Those objections fail.

*First,* Plaintiffs are wrong that the TOU and sign-up flow are not necessarily relied upon in the FAC—and thus incorporated by reference—because they are not referred to "extensively." Opp. at 13.  The FAC is centered on Plaintiffs' use of PayPal's Honey browser extension and selectively describes how Plaintiffs obtained and used the extension.  While Plaintiffs describe part of the sign-up flow, they omit the step where they agreed to the TOU—presumably, PayPal suspects, because the TOU forecloses Plaintiffs' claims.  This is exactly the kind of cherry-picking the incorporation by reference doctrine was created to avoid.  *See Knievel v. ESPN,* 393 F.3d 1068, 1076-1077 (9th Cir. 2005) (where plaintiff included only certain parts of a webpage in their defamation claim, the court deemed incorporated by reference the surrounding pages that a user necessarily would have seen when accessing the webpage because failing to do so would not allow the court to consider the full context of the defamatory statement).  Plaintiffs' argument that a party is not entitled to incorporate documents to dispute a plaintiff's well-pled facts is beside the

point. Opp. at 13. PayPal invokes the entirety of the sign-up flow, and the accompanying TOU, not to dispute any fact Plaintiffs allege but instead to show a necessary step in the sign-up process Plaintiffs chose to omit.

*Second,* Plaintiffs fail to show that the TOU and sign-up flow are not judicially noticeable. Critically, Plaintiffs do not argue there is any difference between the TOU on Honey's website and the TOU PayPal submitted. Nor do they argue there is any difference between the sign-up flow that is publicly accessible and can be confirmed by visiting the website and the sign-up flow submitted as Exhibit B to the Chan Declaration.[1] Plaintiffs' primary objection is that judicial notice is only appropriate for documents made publicly available by government entities (Opp. at 20), but that is not what the case law holds. For example, PayPal cited *Maree v. Deutsche Lufthansa AG*, 2020 WL 6018806, at *3 (C.D. Cal. Oct. 7, 2020), because, in that case, the court took judicial notice of the checkout flow for purchasing airline tickets on Expedia.com (referenced as Exhibit E in that decision). *Id*. The *Maree* court held Exhibit E is judicially noticeable because it is publicly available, not because it was published by a governmental authority, which Expedia is not. *Id*. The same is true of the TOU and sign-up flow here.

*Third*, Plaintiffs have no basis to challenge the competency of the Chan Declaration. Plaintiffs cannot explain why a PayPal Senior Technical Product Manager who states he has personal knowledge of the sign-up flow for creating a Honey account would lack competency to testify as to that process. Chan Decl. ¶¶ 2-3. Plaintiffs do not present any evidence that Mr. Chan lacks knowledge about the matters to which he attests or that the sign-up process works any differently from what Mr. Chan describes. That is particularly so where Plaintiffs do not argue that the sign-up flow is anything other than what is described in that declaration. And the cases Plaintiffs cite to contest competency confirm that personal knowledge can be inferred from a declarant's position. *See In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000). In *Kaypro*, the court stated that an individual who testified he had held his position for five years, was a "credit manager" and had personal knowledge of the facts was permitted to speak to "common … and …

---

[1] Plaintiffs complain the disclosure that Honey can "Read and change all your data on all websites" means they cannot verify the sign-up flow but do not explain why. Opp. at 15.

routine[]" credit arrangements in his industry. *Id*. Mr. Chan's role as a Senior Technical Product Manager for the Honey product similarly qualifies him to testify about the basic function of registering for a Honey account.

*Finally*, Plaintiffs' temporal argument—that there is "no way to verify" the pages Plaintiffs might have seen at the time they downloaded Honey—is a red herring. Opp. at 17. Plaintiffs do not allege they did not agree to the TOU when they signed up for an account or used Honey without creating an account. And Plaintiffs do not allege when they registered for their Honey accounts that the TOU did not include an agreement to use English law. Moreover, the TOU are self-updating—when PayPal updates the TOU and users continue to use Honey and/or their Honey accounts, users are bound by those updated terms. Chan Decl. Ex. 2 at 2 ("Amendments to this Agreement"). Thus, regardless of when Plaintiffs signed up for their accounts, their relationship with PayPal is governed by the current Honey TOU, which provide that Plaintiffs' claims are governed by English law.[2]

### 2) Plaintiffs Do Not Dispute Their Claims Fail Under English Law

Plaintiffs do not attempt to defend their claims under English law. They do not offer their own explication of English law or argue that PayPal got English law wrong in any respect. Nor do Plaintiffs offer any legal argument as to why they have pled a valid implied contract claim under English law. Plaintiffs also do not contest that UCL claims are foreclosed where the parties have chosen not to apply California law to their dispute. Plaintiffs thus concede all these points. *See Citizens for Free Speech, LLC v. Cnty. of Alameda*, 338 F. Supp. 3d 995, 1005 (N.D. Cal. 2018), *aff'd*, 953 F.3d 655 (9th Cir. 2020) (failure to respond to Defendant's argument in its motion to dismiss effectively conceded the point). Accordingly, if English law applies, Plaintiffs have no argument to save their claims.

The only issues Plaintiffs raise with respect to PayPal's proof of English law through the Willis Declaration are that Mr. Willis is not competent to testify to certain facts and that the

---

[2] Plaintiffs observe that the hyperlink uses the phrase "Terms of Service" while the TOU is entitled "Terms of Use" but do not and cannot contend the hyperlink leads a user anywhere *other* than the TOU. Opp. at 16. Upon clicking on the "Terms of Service" hyperlink, the user is taken to the TOU, as any visit to the publicly available website confirms.

declaration should not be considered without affording Plaintiffs an opportunity to cross-examine Mr. Willis. Neither argument has merit.

As to the former, Mr. Willis is not testifying about how the Honey sign-up process works. He is clear that he assumes the matters set forth in the Chan Declaration to be true for purposes of his legal analysis. Willis Decl. ¶ 5. His opinion is limited to describing how "the principles of English contract law" apply to "the Plaintiffs' claims in the Campbell litigation as they are presently formulated." Willis Decl. ¶ 3. Plaintiffs do not dispute Mr. Willis's expertise to opine on English law or the merits of the parties' arguments under English law. Nor do they raise any difference of opinion as to what English law provides. There is no dispute Mr. Willis is competent to testify as to matters of English law.

As to the latter, there is no due process right to live cross-examination of every declarant, particularly declarants offering opinions of foreign law at the pleading stage. Courts frequently consider declarations of foreign law on motions to dismiss without cross-examination pursuant to Federal Rule of Civil Procedure 44.1. *See de Fontbrune v. Wofsy*, 838 F.3d 992, 1000 (9th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (Nov. 14, 2016). Plaintiffs do not cite any case rejecting an opinion of foreign law because there was no opportunity to cross-examine—Plaintiffs' invocation of authority articulating general due process principles (Opp. at 22) does not explain what due process right is violated by PayPal's submission of the Willis Declaration. In any event, if Plaintiffs believed anything in the Willis declaration was incorrect, they could have submitted their own declaration on English law. They did not and thus concede the point.

### 3) Plaintiffs' Choice of Law Analysis Ignores the U.K.'s Extensive Interest in This Dispute

Plaintiffs' suggestion that California courts would not enforce the TOU's choice of law clause misapplies California law and misstates the facts pled in the FAC. As a legal matter, Plaintiffs do not identify any fundamental California public policy that would be contravened by enforcing the choice of law clause. While Plaintiffs invoke California's interest in "prevention of unlawful conduct within its borders" (Opp. at 23), that is not a "fundamental policy" that prevents enforcement of choice of law clauses. California courts frequently uphold parties' agreements to

apply another jurisdiction's laws to their dispute even when the alleged wrongs occur within the state. *See, e.g.*, *Maxim Crane Works, L.P. v. Tilbury Constructors*, 208 Cal. App. 4th 286, 291-295 (2012) (enforcing parties' indemnity agreement providing that contract was governed by Pennsylvania law even though workers were injured in California); *see also 1-800-Got Junk? LLC v. Superior Ct.*, 189 Cal. App. 4th 500, 514, (2010), as modified (Nov. 19, 2010) (applying Washington law even where "no substantial relationship" existed between the transaction and Washington because the Washington choice of law provision was otherwise enforceable); *see also Feld v. Am. Exp. Co.*, No. CV 09-7202-GW RCX, 2010 WL 9593386, at *4 (C.D. Cal. Jan. 25, 2010) (noting that providing a plaintiff the right to pursue a cause of action under the UCL is not a fundamental public policy that requires application of California law).

Plaintiffs' authority does not stand for a general proposition that any wrongdoing occurring in California must be adjudicated under California law. Instead, they confront unique matters of public policy raised by the circumstances of the claims pled. In *Mejia v. DACM Inc.*, 54 Cal. App. 5th 691, 700-01 (2020), the court declined to enforce a Utah choice of law clause because of a specific California public policy holding that waivers of the right to request public injunctive relief in any forum are unenforceable. No such waiver is at issue here. In *Hurtado v. Superior Court*, 11 Cal.3d 574, 584 (1974), the court did not address a choice of law clause at all. Instead, it engaged in a traditional choice of law analysis and held that California had a greater interest in having its law apply to a wrongful death claim where the death occurred in California as a result of vehicles driven on California roads by California residents. *Id*. Plaintiffs offer no similar justification to avoid enforcing the TOU's choice of law provision for users located in the U.K., who used the browser extension in the U.K., and who allegedly suffered harm in the U.K.

As a factual matter, Plaintiffs' argument that the FAC must be construed to aver that all unlawful conduct took place in California (Opp. at 23) conflicts with the FAC's allegations. The only California connection the FAC alleges is that California is PayPal's principal place of business. On the other hand, the FAC alleges extensive activity occurring in the U.K.—it's where Plaintiffs reside, where they downloaded and used Honey, where they shopped, and where (if at all) they were presented with and interacted with the advertisements at issue. FAC ¶ 31.

1  Plaintiffs' allegations thus establish the U.K.'s extensive connection to and interest in this dispute
2  and confirm the parties' choice of English law should be enforced.[3]

### B. Plaintiffs' Opposition Confirms Their Claims Fail Under California Law

#### 1) Plaintiffs Have No Implied Contract Claim Under California Law

Plaintiffs do not contest that California law bars implied contract claims when there is an express contract between the parties. But even if the Court declined to find an express contract or otherwise apply English law, Plaintiffs' Opposition confirms that, even under California law, they cannot transform PayPal's alleged advertisements here into an implied contract.

Plaintiffs misunderstand the standard for establishing a firm offer. An advertisement does not qualify as a firm offer unless it invites the performance of a specific act without further communication. *See Donovan v. RRL Corp.*, 26 Cal. 4th 261, 272-273 (2001). An advertisement stating that Honey "finds you the Internet's best discount codes" does not invite any performance at all. FAC ¶ 19. Plaintiffs argue that the communication in question invited the performance of the act of downloading the browser extension. But the allegedly offending language in the advertisement does not invite the performance of a specific act in exchange for a specific offer. Instead, the advertisements simply describe the attributes of the Honey browser extension, with a button underneath that reads "Add Honey" which a user can click to install the extension (and in connection with which the user is presented with the TOU, the express contract pursuant to which PayPal will provide services). FAC Ex. A; Chan Decl. Plaintiffs cite no case law finding that a comparable advertisement constituted a firm offer. Instead, they argue that a "reasonable" person would have concluded that acting in accordance with the "request" would form a contract. Plaintiffs neither describe the terms of what the "request" is nor offer any authority applying a reasonable person standard to determine whether an advertisement constitutes a firm offer. They also fail to explain how this standard relates to the requirement that the advertisement elicit a specific act to constitute a firm offer.

---

[3] Indeed, although the TOU's choice of law clause obviates the need to perform a traditional choice of law analysis, the outcome of that analysis would result in the application of English law given the weight of relevant activity occurring in the U.K.

Plaintiffs next argue that whether the parties created an implied contract is "generally a question of fact," citing to the concurrence in *Diaz v. Sohnen Enters.*, 34 Cal. App. 5th 126, 133 (2019). Opp. at 25. That general principle does not absolve Plaintiffs of alleging facts sufficient to create a dispute in the first place, which they have not done. Plaintiffs did not allege any conduct on PayPal's part implying an intent to be bound by the advertisements as terms of a contract with Plaintiffs. *See Retired Employees Assn. of Orange County, Inc. v. County of Orange*, 52 Cal.4th 1171, 1176 (2011). Without such conduct, there is no issue of fact as to whether an implied contract exists. Plaintiffs argue that PayPal's intent may be inferred from PayPal creating the Honey website and the browser extension (Opp. at 25), but that conduct is all a precursor to the advertisements and doesn't demonstrate an intent to enter into a contractual relationship to offer Plaintiffs the absolute best coupon available on the internet, every time.

Presumably recognizing the weakness of their implied contract claim, Plaintiffs introduce a new unpled theory that PayPal made an express offer of a unilateral contract. Even if this Court were to entertain this new theory—and it should not, *see Matthews v. Apple, Inc.*, No. 24-CV-00272-JST, 2024 WL 5517089, at *9 (N.D. Cal. Dec. 20, 2024) (it is "axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss") (internal citations omitted)—the contention fails because Plaintiffs provide no support for it and, in any case, have not alleged any promise given in consideration of the promisee's act or forbearance. *See Asmus v. Pac. Bell*, 23 Cal. 4th 1, 10 (2000).

Lastly, Plaintiffs argue they have adequately pled damages through the circular reasoning that they could not have found better coupons "because" Honey claimed it would search for and apply the best coupons, so they never looked. Opp. at 26. This harm is purely speculative. And, even under the theory of damages Plaintiffs propose pursuant to Cal. Civ. Code § 3300, damages must be certain, and "[n]o damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) (quoting Cal. Civ. Code § 3301). Plaintiffs do not allege the existence of any better coupon they were deprived of by virtue of Honey's conduct. That missing allegation is particularly fatal given Plaintiffs' theory of *why* Honey is not finding

the best coupons—according to Plaintiffs, they only suffer harm when a merchant directs PayPal not to offer a certain coupon code via Honey. *See* Opp. at 9. As PayPal established in its motion, that theory is implausible on its face—it requires the assumption that there are coupon codes a merchant wants to honor for a particular consumer if the consumer comes across it elsewhere on the internet but doesn't want to honor if the consumer gets it through Honey. Plaintiffs plead precisely zero facts in support of that theory and do not try to defend it in the Opposition. Indeed, in addressing subject matter jurisdiction, Plaintiffs claim it is "highly implausible" that any material number of U.K. Honey users experienced that harm. *Id*. But Plaintiffs plead no facts to show how ***they***, specifically, were harmed in the manner they contend. In the absence of such allegations, they cannot plead they were damaged.

Plaintiffs also fail to rebut PayPal's argument that no benefit-of-the-bargain damages exist where the contract involves a free service. PayPal cited two different cases finding that plaintiffs failed to sufficiently allege damages where the plaintiffs presented a benefit of the bargain damages theory but did not pay anything for the service. *See Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 724 (N.D. Cal. 2014) (finding benefit of bargain theory of damages defective because defendant's services were free); *Huynh v. Quora, Inc.*, No. 18-cv-07597-BLF, 2019 WL 11502875, at *10 (N.D. Cal. Dec. 19, 2019) (same). Rather than substantively respond to PayPal's arguments, Plaintiffs surmise (without authority) that "California's damage rules are confusing," and "speculates" that the courts in *Svenson* and *Huynh* were simply mistaken. Opp. at 27. Neither argument justifies ignoring those two well-reasoned decisions. Plaintiffs' invocation of California Civil Code § 3300 (Opp. at 27) fares no better because Plaintiffs have not alleged facts showing PayPal proximately caused them any harm—in particular, Plaintiffs do not contend they were deprived of more lost savings opportunities than discounts/rewards they enjoyed using Honey. *See X Corp. v. Bright Data Ltd.*, 733 F. Supp. 3d 832, 847 (N.D. Cal. 2024) ("[u]nder California law, a breach of contract without damage is not actionable") (internal quotations omitted). The speculative possibility they could have saved more money is not harm under California law.

### 2) Plaintiffs' Opposition Does Not Resuscitate the UCL Claim

Plaintiffs do not contest—and thus concede—that enforcing the TOU's choice of English law precludes any California UCL claim. *See generally* Opp. at 28-32; Mot. at 13-14. Even setting the TOU aside, none of their arguments cure the fatal flaws in their UCL claim.

#### a. Plaintiffs' Opposition Does Not Show They Have Standing

Plaintiffs' UCL claim must be dismissed because the Opposition fails to rebut PayPal's standing arguments regarding the prohibition on extraterritorial application of the UCL and Plaintiffs' failure to allege the loss of an identifiable sum of money.

Plaintiffs do not dispute the UCL does not apply extraterritorially but instead argue the UCL applies here because "all wrongful conduct was performed within California." Opp. at 29. That is not what the FAC alleges. The only allegations Plaintiffs cite to substantiate that argument are paragraphs 10 and 11 of the FAC, which allege nothing other than that PayPal and Honey have principal places of business in California. *Id*. (citing FAC ¶¶ 10-11). Defendants' principal place of business is not dispositive of where the relevant conduct allegedly occurred. *Fontenberry v. MV Transp., Inc.*, 984 F. Supp. 2d 1062, 1069 (E.D. Cal. 2013) (where plaintiffs only alleged that Defendant maintained headquarters and administrative offices in California during the relevant time period the Court found plaintiffs "failed to plead facts demonstrating that an unlawful act under the UCL has occurred in California."). That is particularly the case here where the FAC alleges the relevant conduct took place in the U.K., not California. Specifically, the FAC alleges all members of the Plaintiff Class "are citizens and residents of the U.K.," "are based within the U.K.," and "downloaded the free Honey software bowser extension from within the U.K." FAC at ¶ 31. And the FAC alleges the offending advertising was made "to any person who accessed the Honey Website from the U.K." *Id*. at ¶ 29. To the extent any lost savings opportunities did occur, they would have necessarily occurred in the U.K., too. The FAC does not contain a single allegation of conduct occurring within California. PayPal's California principal place of business is not enough to give non-resident Plaintiffs standing under the UCL.

Plaintiffs also fail to meaningfully engage with PayPal's argument that standing cannot be established where, like here, Plaintiffs do not state a cognizable loss of money or property.

Instead, Plaintiffs argue that they were not required to allege that they paid money directly to PayPal. Opp. at 29. Relying on an isolated quote from *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1340 (2009), Plaintiffs assert the "only requirement" is that their money or property was lost "as a result of" the proscribed conduct. Opp. at 29. That argument misses the mark in two respects.

First, *Troyk* involved the unique factual scenario where the plaintiff paid funds to a subsidiary of the defendant, rather than the defendant itself. *Troyk* held under the facts there "a substantial portion of the service charges paid to [the subsidiary] were indirectly received" by the parent corporation, because "the subsidiary used the parent's personnel and equipment to perform its function and paid the parent for those services." 171 Cal. App. 4th at 1340. That holding is inapposite here where Plaintiffs do not allege PayPal and its partner merchants shared any kind of parent-subsidiary relationship. *See In re California Title Ins. Antitrust Litig.*, No. C 08-01341 JSW, 2009 WL 3756686, at *7 (N.D. Cal. Nov. 6, 2009) (finding plaintiffs failed to establish standing where they did not directly purchase title insurance from the defendants and where the parent companies did not exercise control over the subsidiaries).[4] *Troyk* just sets forth another way by which UCL plaintiffs may prove funds were taken from the plaintiff and given to the defendant; it does not hold Plaintiffs may proceed with a UCL claim when they have not lost money to the defendant at all.

Second, Plaintiffs still do not contend there is any tangible money or property they lost. All they allege is the hypothetical loss of an ability to save more. They do not cite any case law identifying such a hypothetical loss as sufficient to establish UCL standing. Plaintiffs' attempt to distinguish *Dual Diagnosis Treatment Center, Inc. v. Blue Cross of California*, 2018 WL 10072961 *11 (C.D. Cal. 2018), focuses on a single sentence that does not disturb the court's fundamental conclusion that a plaintiff cannot bring a UCL claim without identifying any

---

[4] Plaintiffs' assertion they have standing to bring a UCL claim even if they lack standing to request restitution concedes that to obtain to restitution they must show "both that money or property have been lost by a plaintiff, on the one hand, and *that it have been acquired by a defendant*, on the other." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 336 (2011) (emphasis added). Plaintiffs have not established any money they lost that PayPal acquired.

property interest that was diminished, a deprivation of money to which they had a claim, or a forfeiture of any of their own money. *Id*. Plaintiffs fail to respond at all to PayPal's argument that the theoretical existence of a better coupon is insufficient to allege an "identifiable sum [of money] formerly belonging to [them] or subject to [their] control" that they lost by virtue of their use of Honey. *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 1012 (C.D. Cal. 2011) (internal citations omitted). And their argument that lost profits are proper damages under the UCL is irrelevant and unsupported. A hypothetical lost opportunity to save is not a lost profit. And the only case they cite for this point does not discuss damages under the UCL at all. *See* Opp. at 30; *N. Am. Chem. Co. v. Superior Ct.*, 59 Cal. App. 4th 764, 777 (1997).

      **b.  Plaintiffs' Opposition Does Not Establish Any Fraudulent or Unfair Act or Practice**

    Plaintiffs' Opposition cannot establish that the central alleged "wrong"—Honey allows partner merchants to direct it to suppress certain coupons—is either fraudulent or unfair under the UCL. As an initial matter, Plaintiffs' Opposition confirms there are no facts supporting that this actually occurs. They do not point to any circumstances where a better code existed that they did not receive by virtue of PayPal's partnerships with merchants. And they do not offer any explanation for why PayPal's partner merchants would ask Honey to suppress coupons only to turn around and honor those same coupons if shoppers found them from another source. Nor do Plaintiffs explain how PayPal engaged in fraudulent behavior when both the alleged misstatement and the "facts" allegedly making the statement false were publicly disclosed on the Honey website. *See* FAC ¶¶ 27, 35, 38-40, Ex. D-G.

    Instead of contending with these deficiencies, Plaintiffs raise various ancillary arguments that do not give rise to a valid UCL claim. They cite case law noting that actual reliance or deception is not required under the UCL, but this is a strawman. PayPal does not challenge Plaintiffs' claim for lack of reliance, but for Plaintiffs' failure to allege any fraudulent conduct period. Plaintiffs' attempt to avoid complying with Rule 9(b) highlights why claims alleging fraudulent conduct must meet a heightened pleading standard. By arguing the evidence needed to successfully plead their case is in PayPal's possession (Opp. at 31), Plaintiffs admit they have no

factual basis to assert that fraudulent conduct occurred. Plaintiffs' FAC does not contain any facts sufficient to allege that merchants suppress "better" coupon codes and their Opposition does not point to any either, effectively conceding they have no support for their assertion that they were harmed or deceived in any way. This is precisely the kind of baseless and speculative fraudulent conduct claim Rule 9(b) is meant to preclude.

Plaintiffs' Opposition also does not offer any reason to treat PayPal's alleged statements about finding the "best" deals as anything other than puffery. Plaintiffs cite *Newcal Industries, Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008), but that case supports PayPal, not Plaintiffs. There, the court found the statement "provides its customers with low costs and with flexibility" to be puffery because "consumer reliance will be induced by specific rather than general assertions." *Id*. Statements regarding searching for the best coupons or finding a better price are general, not specific, statements regarding Honey's performance. Plaintiffs also offer no support for their argument that the alleged promise to find the "best" price is not puffery because "[t]here would be no reason for anyone to download the browser extension except to obtain performance of that very specific promise." Opp. at 32. There are countless reasons for consumers to download a free product that automatically searches for coupons—saving consumers the time and hassle of doing so themselves—even if it does not return the theoretically "best" deal every time. And Plaintiffs offer no explanation for why a reasonable consumer would interpret Plaintiffs' advertisements as the equivalent of a contractual guarantee to find everything that might exist on the internet, especially in light of the Honey TOU specifying that PayPal made no such guarantee.

As to the "unfair" prong of the UCL, Plaintiffs' entire "opposition" is a recitation of the applicable legal standard. Opp. at 32. They do not rebut any of the grounds PayPal raised in its motion for why Plaintiffs' allegations do not meet this standard (Mot. at 19-20) and therefore concede those arguments.

### C.   Plaintiffs' Comments On Jurisdiction Confirm Their Claim Is Pure Speculation

Plaintiffs begin their Opposition by wondering whether subject matter jurisdiction is

proper under the Class Action Fairness Act, although they do not appear to be requesting any relief from the Court at this point. PayPal's Notice of Removal specifies the basis for this Court's jurisdiction under CAFA: (i) there is minimal diversity among the parties; (ii) PayPal is not a state or government entity; (iii) Plaintiffs' class size would exceed 100 individuals; and (iv) possible liability exceeds $5 million. Plaintiffs now suggest the size of their proposed class and the potential damages might not meet these thresholds.

In particular, Plaintiffs question the extent of affected individuals and potential liability because their proposed class is not all 2.9 million Honey users in the U.K.—only those Honey users who purchased an item but did not receive the lowest available price when they purchased it because of an agreement between PayPal and partner merchants that allowed partner merchants to control coupon availability. Opp. at 9. In contesting jurisdiction, Plaintiffs implicitly argue it is "highly implausible" that more than 100 of the 2.9 million Honey users were so affected. *Id*. As discussed above, the logical conclusion from Plaintiffs' argument is that it is likewise highly implausible any of these Plaintiffs were among the affected population, so their argument is self-defeating. *See supra* at II.B.1. Plaintiffs do not allege any facts about themselves that would make them different from any other Honey user in the U.K. in terms of their vulnerability to the conduct they challenge. Their challenge to jurisdiction thus only further confirms they have not alleged they suffered any harm that could form a basis for either claim they assert.

### III.    CONCLUSION

For the foregoing reasons, PayPal respectfully requests that the Court dismiss the FAC in its entirety with prejudice.

Dated: May 28, 2025

By: */s/ Paul F. Rugani*
    PAUL F. RUGANI