PAUL F. RUGANI (SBN 342647)
prugani@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
Telephone:   +1 949 567 6700
Facsimile:    +1 949 567 6710

RICHARD JACOBSEN (admitted pro hac vice)
rjacobsen@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019-6142
Telephone:   +1 212 506 5000
Facsimile:    +1 212 506 5151

CLEMENT S. ROBERTS (SBN 209203)
croberts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:    +1 415 773 5759

Attorneys for Defendants
Honey Science, LLC and PayPal, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM CAMPBELL, DANIEL JENKS-BERRYMAN, DECLAN LYNN, ADITHYA NARAYANAN, JAMES POAD, DAN SORAHAN, ALAN SUTCH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HONEY SCIENCE, LLC, a Delaware limited liability company, PAYPAL, INC., a Delaware corporation, and DOES 1 through 50<br><br>Defendants. | Case No. 5:25-cv-02850-PCP<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING CAFA SUBJECT-MATTER JURISDICTION**<br><br>Dept:   Courtroom 8, 4th Floor<br>Judge: Hon. P. Casey Pitts |

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | BACKGROUND | 1 |
| III. | LEGAL STANDARD | 2 |
| IV. | ARGUMENT | 3 |
|  | A. This Court Has CAFA Jurisdiction. | 3 |
|  | B. Plaintiffs Cannot Avoid CAFA Jurisdiction Through A "Fail-Safe" Class | 4 |
| V. | CONCLUSION | 5 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cohen v. DIRECTV, Inc.*,
 178 Cal. App. 4th 966 (2009)......................................................................................................... 5

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
 574 U.S. 81 (2014).................................................................................................................. 2, 5

*Fitzgerald v. PayPal, Inc.*,
 No. 5:25-cv-02993 ................................................................................................................. 2, 5

*In re Google Generative AI Copyright Litig.*,
 2025 WL 1159998 (N.D. Cal. Apr. 21, 2025) ....................................................................... 4, 5

*Helm v. Alderwoods Grp., Inc*,
 2008 WL 2002511 (N.D. Cal. May 7, 2008) ............................................................................ 3

*Muniz v. Pilot Travel Centers LLC*,
 2007 WL 1302504 (E.D. Cal. May 1, 2007) ............................................................................. 4

*Perez v. Rose Hills Co.*,
 131 F.4th 804 (9th Cir. 2025)............................................................................................ 2, 3, 4

*Reyes v. Dollar Tree Stores, Inc.*,
 781 F.3d 1185 (9th Cir. 2015) .................................................................................................... 5

*Rombaut v. U.S. Concepts LLC*,
 2025 WL 2044670 (C.D. Cal. July 18, 2025) ............................................................................ 4

*Ruiz Torres v. Mercer Canyons Inc.*,
 835 F.3d 1125 (9th Cir. 2016) .................................................................................................... 5

*White v. PayPal Holdings, Inc.*,
 No. 3:25-cv-00046 .................................................................................................................. 2, 5

**Statutes**

Class Action Fairness Act of 2005 ("CAFA").................................................................... 1, 2, 4, 5

.

## I. INTRODUCTION

As PayPal established in its notice of removal, Plaintiffs' allegations more than plausibly establish that jurisdiction exists under the Class Action Fairness Act of 2005 ("CAFA"). Plaintiffs pursue claims on behalf of a class that may include upwards of 6.8 million U.K. users who downloaded the Honey browser extension in the U.K. Plaintiffs' theory is that, dating back to January 1, 2020, these users did not receive the best discounts available for certain online purchases. If each user was deprived—in aggregate over the course of five years—of just $0.74, the $5 million threshold is satisfied. PayPal, of course, does not need to prove its ultimate liability to establish jurisdiction. All it needs to show is that potential exposure in excess of $5 million is a reasonable assumption. Based on those figures, it is eminently reasonable to assume $5 million in damages. Indeed, Plaintiffs themselves characterize their damages as "substantial." And plaintiffs asserting similar claims on behalf of U.S. Honey users elsewhere assert damages exceeding $5 million.

Plaintiffs' speculative questions about jurisdiction are predicated upon an impermissibly gerrymandered class definition. Plaintiffs contend that the class does not include all U.K. users, but only those who "purchased an item but did not receive the lowest price available … because of an agreement between Defendants and one or more of their 'Partner' vendors." That is the paradigmatic example of an improper fail-safe class because class membership cannot be ascertained unless liability is established. But, even accepting this improper class definition, Plaintiffs' First Amended Complaint ("FAC") does not allege any facts showing any identifiable subset of U.K. Honey users is more or less likely to be affected by the alleged practice, and thus offers no basis for presuming any number less than the 6.8 million U.K. users have been affected. In any event, Plaintiffs cannot use an improper class definition to evade removal under CAFA.

## II. BACKGROUND

Plaintiffs commenced this Action in California state court. In the FAC, Plaintiffs allege they are among the millions of U.K. consumers who use PayPal's free browser extension, Honey. FAC ¶¶ 3-9; *id.*, Ex. G. Plaintiffs and other U.K. consumers allegedly used Honey "to have PayPal search for and apply the 'best' coupons or discount codes." *Id.* ¶ 36. "On at least some occasions," they allegedly "did not receive the 'best' coupons or discount codes because Defendants had agreements

with many vendors pursuant to which Defendants would not find and apply the 'best' coupons or discount codes." *Id.* ¶ 37. Plaintiffs characterize the injuries to consumers as "substantial" (*id.* ¶ 58) and seek to represent a class of:

> All citizens and residents of the UK who downloaded the *Honey* browser extension within the UK, and who, at any time after 1 January 2020, used the *Honey* browser extension to seek the "best" discount codes and coupons, and purchased an item but did not receive the lowest available prices when they purchased an item because of an agreement between Defendants and one or more of their "Partner" vendors which allowed the "Partner" vendors to have control over which otherwise-available coupons and discount codes would be located and applied through the *Honey* browser extension.

*Id.* ¶ 43. PayPal timely removed this Action. Plaintiffs have not moved to remand but have sought jurisdictional discovery. On July 30, 2025, this Court requested a supplemental brief explaining why the Court has CAFA jurisdiction based on the FAC's proposed class definition.

Around the same time this case was filed, separate plaintiffs filed parallel class actions on behalf of U.S. consumers. *See White v. PayPal Holdings, Inc.*, No. 3:25-cv-00046; *Fitzgerald v. PayPal, Inc.*, No. 5:25-cv-02993. But, unlike Plaintiffs here, plaintiffs in those actions filed in federal court (on CAFA grounds), defined their classes as "All U.S. consumers that used the Honey browser extension," and alleged damages exceeding $5 million. *White*, ECF No. 1, at ¶¶ 14, 51; *see Fitzgerald*, ECF No. 1, at ¶¶ 9, 46 (similar).

### III.   LEGAL STANDARD

CAFA's "provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (citation omitted). If a defendant's removal allegations are contested, the defendant must demonstrate by the preponderance of the evidence that CAFA's requirements are met; however, in doing so, it may rely on reasonable assumptions. *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025). "What makes an assumption reasonable" is context dependent. *Id.* at 808. For example, "it makes little sense to require a CAFA defendant to introduce evidence of" the frequency of the violations alleged in the complaint, "because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Id.* Therefore, "a CAFA defendant can most readily ascertain the violation rate by looking at the plaintiff's complaint." *Id.*

## IV. ARGUMENT

### A. This Court Has CAFA Jurisdiction.

***The proposed class likely contains more than 100 members.*** While Plaintiffs' FAC suggests there are 2.9 million U.K. Honey users, FAC, Ex. G, the total number of U.K. Honey users, as informed by IP address, that have engaged with the Honey browser extension to search for savings since January 1, 2020 is 6.8 million. Ex. 1, Decl. of Owen Sperling ("Decl."), at ¶ 6. While PayPal denies Plaintiffs will be able to certify a class, their allegations suggest that all 6.8 million Honey users in the U.K.—or at least a large majority of them—are members of the proposed class.

U.K. Honey users are, by definition, "based" in the U.K, ECF No. 27-1, at 1—suggesting that most, if not all, such users are U.K "citizens and residents." FAC ¶ 43. Honey's advertising is available "to any person" in the U.K, *id.* ¶¶ 29-30, indicating that U.K. Honey users would likely have learned about and downloaded Honey from "within the U.K." *Id.* ¶ 43; *see* Decl. ¶ 5. Honey's 6.8 million U.K. users have all used Honey since "January 2020." FAC ¶ 43; *see* Decl. ¶ 6. And if Plaintiffs are right that the "only rationale any person could ever have" to use Honey "would be to … search for the 'best' coupons or discount codes," *id.* ¶ 59, then it may be inferred that *all* U.K. users use Honey to "seek the 'best'" deals. *Id.* ¶ 43.

The requirement that class members must have missed out on the "lowest available price" "because of an agreement" between PayPal and its partner vendors, *id.* ¶ 43, does not supply a basis for limiting the class size. Merchants' rights to "have control over the content hosted on the Honey platform" (*id.*, Ex. G) is openly communicated and available to all merchants. Decl. ¶ 7. Plaintiffs do not allege this right is limited but allege PayPal "had agreements with many vendors pursuant to which Defendants would not find and apply the 'best' coupons or discount codes." FAC ¶ 37. Without alleging any facts specific to any of their own transactions, Plaintiffs infer from these rights alone that they "did not receive the 'best' coupons or discount codes" "[o]n at least some occasions." *Id.* There is no factual basis for Plaintiffs' speculative claims. But nor is there any reason to distinguish between them and the other 6.8 million U.K. Honey users. Plaintiffs' skepticism about whether all U.K. Honey users missed savings because of an agreement between

Honey and its merchants, ECF No. 29, at 9, thus misses the mark, because PayPal is permitted to assume this "violation rate by looking at the plaintiff's complaint." *Perez*, 131 F.4th at 808; *see Helm v. Alderwoods Grp., Inc*, 2008 WL 2002511, at *5 (N.D. Cal. May 7, 2008) (defendant reasonably assumed all "potentially-affected" individuals were class members where plaintiff provided "no information indicating that the size of the class is not at least relatively congruent with th[at] total number"); *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007); *Rombaut v. U.S. Concepts LLC*, 2025 WL 2044670, at *7 (C.D. Cal. July 18, 2025). Either every U.K. Honey user is equally likely to be harmed, or it is "highly implausible" (ECF No. 29, at 9) that *any* U.K. user (including Named Plaintiffs) suffered harm. Plaintiffs cannot have it both ways.

***The amount in controversy likely exceeds $5 million.*** Plaintiffs allege that "on at least some occasions," each proposed class member "paid more for an item than he or she would have paid" absent Honey's alleged wrongful conduct. FAC ¶ 40. While PayPal disputes any Honey user has been harmed and maintains there is nothing wrong with allowing merchants to exercise their right to control the discounts they offer through Honey, PayPal's possible liability under Plaintiffs' theory likely exceeds $5 million based on these allegations. That requirement would be met if each of the 6.8 million U.K. Honey users experienced just $0.74 in losses. Even if the class were one fourth that size, it would require losses of only $2.94, or annual losses of only 59 cents, per member. It is reasonable to assume, under Plaintiffs' theory, the alleged withholding of better coupons "on at least some occasions" could cause each consumer to lose at least $0.59 per year—just 0.47% of Honey members' alleged average annual savings of $126. *Id.*, Ex. D.; *see Perez*, 131 F.4th at 810 (defendant's assumed violation rate not unreasonable even though allegations that defendant violated the law only "at times" could "as easily" support a lower rate). Indeed, Plaintiffs allege that PayPal's conduct is "substantially injurious," FAC ¶ 58, suggesting an even greater amount.

### B. Plaintiffs Cannot Avoid CAFA Jurisdiction Through A "Fail-Safe" Class.

If there is any doubt that this Court has CAFA jurisdiction, the result should not be a remand but rather to order Plaintiffs to amend their proposed class definition. That is because the proposed class definition is an improper "fail-safe." "[A] fail-safe class 'is defined in a way that precludes

membership unless the liability of the defendant is established.'" *In re Google Generative AI Copyright Litig.*, 2025 WL 1159998, at *2 (N.D. Cal. Apr. 21, 2025) (citation omitted). Fail-safe classes are unfair and "unmanageable" because class membership cannot be determined until there has been a merits determination. *Id.*

The proposed class definition here is a fail-safe because "Plaintiffs have tied class membership to the prima facie elements of their" claims. *Id.* at *3. Plaintiffs define their proposed class as those U.K. consumers who used Honey to seek the "best" deals but did not receive those deals because of arrangements between Honey and vendors. FAC ¶ 43. Yet those are precisely the same allegations supporting Plaintiffs' two claims. *See id.* ¶¶ 48-51, 59-61. This Court, therefore, "cannot determine who is a member of the class without deciding the merits." *Google*, 2025 WL 1159998, at *3; *see Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1138 n.7 (9th Cir. 2016).

Plaintiffs' skepticism of this Court's jurisdiction likewise requires a merits determination about which U.K. consumers were injured "*because of*" PayPal's alleged improper agreements with vendors. ECF No. 29, at 9. That approach, however, would mean that CAFA jurisdiction could never be proven at this stage (and jurisdictional discovery would be a pointless exercise). This Court need only look to cases on its own docket—*White* and *Fitzgerald*—to discern the CAFA effect of a more properly defined class. Plaintiffs themselves filed those cases in federal court. Plaintiffs' attempts here to evade CAFA jurisdiction by gerrymandering a fail-safe class, if successful, would undermine Congress's "strong preference" to provide a federal forum for these types of actions, *Dart Cherokee*, 574 U.S. at 89, and risk significant inefficiency. If this case were remanded, the state court would likely require Plaintiffs to amend their class definition since California also does not authorize class definitions that "depend on the outcome of the litigation on the merits." *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 975 (2009). At that point, PayPal could remove the case again to federal court, *see Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1189 (9th Cir. 2015), making any remand now a pointless and wasteful exercise.

## V.   CONCLUSION

Therefore, PayPal respectfully requests that this Court hold it has CAFA jurisdiction over this Action or order Plaintiffs to amend their proposed class definition.

Dated: August 7, 2025

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Paul F. Rugani*
PAUL F. RUGANI
Attorney for Defendants
HONEY SCIENCE, LLC and PAYPAL, INC.