UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM CAMPBELL, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>HONEY SCIENCE, LLC, et al.,<br><br>Defendants. | Case No. 25-cv-02850-PCP<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 25 |

Defendants Honey Science LLC and PayPal, Inc. move to dismiss this purported class action brought against them by Tom Campbell, Daniel Jenks-Berryman, Declan Lynn, Adithya Narayanan, James Poad, Dan Sorahan, and Alan Sutch.[1] For the reasons discussed herein, the Court grants defendants' motion.

## BACKGROUND

Plaintiffs are citizens of the United Kingdom. They filed this action on February 20, 2025, in Santa Clara County Superior Court. Plaintiffs filed the operative first amended complaint on March 14, 2025. On March 26, 2025, defendants removed the action to this Court, contending that this Court has jurisdiction pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d).

Plaintiffs are users of defendants' free browser extension "Honey", which automatically searches for coupons and discount codes and applies them to the Honey user's cart during online shopping.[2] Plaintiffs allege two claims in the alternative: (1) breach of implied contract; and (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et*

---

[1] PayPal, Inc. acquired Honey in January 2020.

[2] For the purposes of defendants' Rule 12(b)(6) motion, the Court assumes the truth of the facts alleged in plaintiffs' operative complaint.

*seq*. Both claims are based on plaintiffs' allegation that Honey's website advertises itself as a service for finding the "best" coupons, but Honey's partner vendors can in truth select which coupons appear to plaintiffs through Honey. Plaintiffs allege that some partner vendors withheld their best coupons from Honey users and that "[o]n at least some occasions, each Plaintiff, and each member of the Plaintiff Class, did not receive the 'best' coupons or discount codes because Defendants had agreements with many vendors pursuant to which Defendants would not find and apply the 'best' coupons or discount codes." On this basis, plaintiffs allege that they paid more for purchased items than they would have paid if they "knew that the Honey browser extension did not actually search for the 'best' coupons or discount codes."

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." If the complaint does not state a claim, the defendant may move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

2

1    Materials outside the complaint can be considered on a Rule 12(b)(6) motion if they are
2    incorporated by reference therein or otherwise judicially noticeable. *See United States v. Ritchie*,
3    342 F.3d 903, 908 (9th Cir. 2003) ("A [district] court may [ ] consider certain materials—
4    documents attached to the complaint, documents incorporated by reference in the complaint, or
5    matters of judicial notice—without converting the motion to dismiss into a motion for summary
6    judgment."). The Court may consider documents that are "not physically attached to the
7    complaint" "if the [ ] 'authenticity ... is not contested' and 'the plaintiff's complaint necessarily
8    relies' on them." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (quoting *Parrino v.
9    FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998)). Federal Rule of Evidence 201 permits judicial
10   notice of "a fact that is not subject to reasonable dispute" because it is "generally known."

**ANALYSIS**

**I.   Defendants plausibly allege that this Court possesses CAFA jurisdiction.**

CAFA gives federal courts jurisdiction over class actions where there are at least 100 class members, at least one plaintiff is diverse in citizenship from any defendant, and the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2), (d)(5)(B); *see Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1195 (9th Cir. 2015). The removing party bears the burden of establishing that CAFA's jurisdictional requirements have been met. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 683–685 (9th Cir. 2006); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021–22 (9th Cir. 2007). The removing party must file a notice of removal containing a short and plain statement of the grounds for removal, 28 U.S.C. § 1446(a), which must include a "plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1216 (N.D. Cal. 2019) (quoting *Ibarra*, 775 F.3d at 1197).

Plaintiffs challenge the Court's subject matter jurisdiction in their opposition, questioning whether defendants' removal notice plausibly alleges that this case satisfies CAFA's numerosity and amount in controversy requirements. The proposed class, as defined in the operative complaint, is:

> All citizens and residents of the UK who downloaded the Honey browser extension within the UK, and who, at any time after 1 January

> 2020, used the Honey browser extension to seek the "best" discount codes and coupons, and purchased an item but did not receive the lowest available price when they purchased an item because of an agreement between Defendants and one or more of their "Partner" vendors which allowed the "Partner" vendors to have control over which otherwise-available coupons and discount codes would be located and applied through the Honey browser extension.

Plaintiffs argue that defendants' removal notice impermissibly misstates the plaintiffs' proposed class definition (because the defendants included every UK Honey user in the class) and that the defendants improperly assumed "without explanation, an average loss per class member of at least $1.73."

When defendants removed this action, their removal notice focused on an attachment to plaintiffs' complaint: a Honey FAQ page which states that there are 2.9 million current UK users of Honey. Defendants took this incorporated reference as an allegation that all 2.9 million Honey users in the UK were potential class members. From that assumption, defendants reasoned the $5 million threshold would be met if each of the current 2.9 million UK Honey users experienced just $1.73 in total alleged losses.

The Court ordered and received supplemental briefing on this Court's jurisdiction from defendants and plaintiffs. In their supplemental brief, defendants offered evidence that there are 6.8 million total UK Honey users that have engaged with the Honey browser extension to search for savings since January 1, 2020. As defendants note, if the average loss per user among this group is just $0.74, the amount in controversy would exceed CAFA's threshold.

Plaintiffs fault defendants for not basing their calculations on a class that includes only those users who "used the Honey browser extension to seek the 'best' discount codes and coupons" but purchased an item that was not the lowest price available. But "a removing defendant need not present evidence of what its ultimate liability will be." *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025). "[I]t makes little sense to require a CAFA defendant to introduce evidence of the violation rate—really, the alleged violation rate—because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Id.* Instead, the question is merely whether the assumptions underlying the defendants' calculation of the amount in controversy are reasonably based in the allegations of the complaint.

4

1    In the absence of any suggestion in the complaint that the class includes only a very
2    limited subset of UK Honey users or that the loss sustained by each class member was only a cent
3    or two, defendants could reasonably assume, in removing this case, that the number of class
4    members here and the loss suffered by any class member who was harmed are sufficient to bring
5    the amount in controversy above $5,000,000. Even if the class includes only one-third of UK
6    Honey users, an average loss of just $3.00 per class member would bring the amount in
7    controversy well above $5,000,000. If the average loss per class member is greater, than the
8    amount in controversy is satisfied with an even smaller group. Given the number of potential class
9    members here and the minimal amount of individual loss required to bring the amount in
10   controversy above $5,000,000, the Court is satisfied that defendants have met their burden of
11   making a "plausible allegation that the amount in controversy exceeds the jurisdictional
12   threshold."

## II. Defendants' request for judicial notice is granted in part.

In support of their motion to dismiss, defendants seek judicial notice of the terms of use currently available on Honey's website, as well as various documents purporting to establish the "sign-up flow" for new Honey users. Defendants contend that these documents are subject to judicial notice either because they are incorporated by reference in the complaint or because they are publicly available and not subject to reasonable dispute.

While the complaint mentions inputting an email address into the website and also attaches screenshots of certain pages of the website, some of which include a purported link to the terms of service, these brief references are insufficient to warrant incorporation by reference of the defendants' entire purported "sign-up flow" process, including other pages of the website not included in the complaint, or of the terms of service. Under the incorporation-by-reference doctrine, a document may only be treated as part of the complaint where the complaint necessarily relies on it and its authenticity is not in question. *See Kuhn v. Three Bell Cap.*, 698 F. Supp. 3d 1119, 1122–23 (N.D. Cal. 2023); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Here, the complaint does not rely on the "sign-up flow" or the terms of use to establish any claim or theory of liability, so the documents are not incorporated by reference.

5

Nonetheless, the Court will take judicial notice of the existence and content of defendants' current terms of use because they are a publicly available document whose accuracy cannot reasonably be questioned.[3] These terms of use plainly read "last updated January 16, 2024." Because plaintiffs question whether these terms of use are the same as those in effect during the entire class period, the Court cannot conclude from defendants' submission that the version provided to the Court was in effect during the period relevant to plaintiffs' claims, or that plaintiffs ever assented to the terms therein. *See, e.g.*, *Maree v. Deutsche Lufthansa AG*, No. SACV20885MWFMRWX, 2020 WL 6018806, at *3 (C.D. Cal. Oct. 7, 2020) (holding that "it would be improper [on a motion to dismiss] to rule on the existence of an arbitration agreement without first determining, as a factual matter, what the website looked like on the relevant date"); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1001–02 (N.D. Cal. 2024). Judicial notice is limited to the existence of those terms of service on Honey's website as of January 16, 2024.

### III. Defendants' request to apply UK law is denied without prejudice.

Defendants contend that the Court should apply UK law to this dispute based on the choice-of-law provision in the terms of use. But because defendants cannot establish beyond dispute that plaintiffs ever agreed to terms containing such a provision, the Court cannot apply UK law to the pending motion on that basis. Defendants also suggest that even if the choice-of-law provision in the terms of use is not binding for the purposes of this motion, English law should nonetheless apply under a traditional choice of law analysis given the weight of relevant activity occurring in the UK.[4]

---

[3] Plaintiffs object to the declaration by Chan authenticating these terms but Chan is a witness with personal knowledge and the terms at issue can be found on Honey's website even now.

[4] Defendants have provided a foreign law declaration of which they ask the Court to take judicial notice. Plaintiffs argue that it would contravene their "Fifth Amendment due process" rights for the Court to do so without allowing plaintiffs to cross-examine the declarant. Due process, however, does not require that parties be given an opportunity to cross-examine every witness whose written statement may be considered on a pre-trial motion; instead, the means to respond and object to such evidence under the Federal Rules provide more than sufficient protection for a party's due process rights. The Court is thus permitted to and will consider the declaration absent meritorious objections. *See de Fontbrune v. Wofsy*, 838 F.3d 992, 1000 (9th Cir. 2016) ("[C]ourts do not transgress the broad boundaries established by Rule 44.1 when considering foreign legal materials—including expert testimony and declarations.").

6

The complaint alleges that the plaintiffs reside in the UK and downloaded and used Honey there. The only California connection alleged in plaintiffs' complaint is that defendants' principal place of business is located in California.

"To determine the applicable substantive law, a federal court sitting in diversity applies the choice-of-law rules of the forum." *Narayan v. EGL*, 616 F.3d 895, 898 (9th Cir. 2010). Thus, the Court must apply California's choice-of-law rules to determine whether California law might apply to plaintiffs' claims.

Under California's choice-of-law rules, "[w]hether a nonresident plaintiff can assert a claim under California law is," in the first instance, "a constitutional question based on whether California has sufficiently significant contacts with [ ] plaintiff[s'] claims." *Opperman v. Path, Inc.*, 87 F.Supp.3d 1018, 1040 (N.D. Cal. 2014). The claims here undoubtedly meet this "sufficiently significant contacts" test, as California is defendants' principal place of business.

If plaintiffs' claims satisfy this constitutional standard, the burden shifts to the party seeking to apply non-California law to demonstrate that "foreign law, rather than California law, should apply to the ... claims." *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 590 (9th Cir. 2012) (quotation omitted). In resolving this question, California courts apply a three-step governmental interest test that asks: (1) whether the relevant law pertaining to the particular issue in question of each affected jurisdiction is the same or different; (2) if there is a difference, whether there is a true conflict based on the particular circumstances; and (3) if there is a true conflict, whether the other state's interest would be more impaired if its policy were subordinated to California's. *Id.* (citing *McCann v. Foster Wheeler LLC*, 48 Cal.4th 68, 81–82 (2010)).

"Application of California's three-step governmental test requires a case- and fact-specific analysis that will seldom be amenable to conclusive resolution on a Rule 12(b)(6) motion." *Urban v. Tesla, Inc.*, 698 F. Supp. 3d 1124, 1133 (N.D. Cal. 2023) (citing, e.g., *In re iPhone 4S Consumer Litigation*, 2013 WL 3829653, at *9 ("California's choice-of-law analysis must be conducted on a case-by-case basis because it requires analyzing various states' laws 'under the circumstances of the particular case' and given 'the particular [legal] issue in question.'")). Here, defendants focus their briefing on the alleged contractual choice-of-law clause and have not even

7

1 briefed the three factors relevant to applying California's choice-of-law test in the absence of the
2 alleged contract, let alone satisfied their burden to demonstrate that California law could not
3 possibly apply to plaintiffs' claims. At this stage of the litigation, without full briefing on what
4 legal issues are material, whether California and the UK differ with respect to those issues, and
5 what facts must be evaluated to determine which state's interests will be most impaired if the other
6 state's law is applied, the Court cannot conclude that plaintiffs' UK residency and citizenship on
7 their own establish that there is no possible set of circumstances under which plaintiffs could
8 succeed in establishing a right to proceed under California law. Accordingly, the Court will
9 consider defendants' motion to dismiss by applying the California law under which plaintiffs bring
10 their claims.

### IV. Plaintiffs fail to state a claim for breach of an implied or unilateral contract.

Plaintiffs' first claim is for breach of an implied or unilateral contract.[5] Defendants argue that plaintiffs have not adequately alleged the existence of an implied or unilateral contract.[6]

Whether plaintiffs pursue an implied or unilateral contract theory, the key issue is whether plaintiffs adequately allege that defendants made an "offer" to enter into a contract. *See Roley v. Google LLC*, 40 F.4th 903, 908 (9th Cir. 2022) (discussing how "[i]n either case, an offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it") (cleaned up)). A legally enforceable offer must be sufficiently clear and definite in its terms, demonstrate the

---

[5] Defendants argue that the Court should only consider the implied contract theory, which is more clearly alleged in the complaint, and should ignore the unilateral contract theory that plaintiffs raise in their opposition. The Court exercises its discretion to consider both theories.

[6] Defendants contend that the judicially noticed terms of service constitute an express contract that forecloses any implied contract claim, citing *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1000–01 (N.D. Cal. 2014). But in *O'Connor*, neither the terms' authenticity nor the fact that the plaintiffs had agreed to them was disputed. *Id.* Here, plaintiffs dispute the terms' authenticity and applicability. The Court cannot determine based on any judicially noticed material that plaintiffs entered into an express contract because there remain several questions of fact, such as whether the terms existed for the entire class period, whether plaintiffs encountered these terms in signing up such that their "assent" was manifest, and whether and how the terms were modified in 2024.

8

1    offeror's intent to be bound upon acceptance, and be capable of acceptance without the need for
2    further negotiation. In determining whether a statement constitutes an offer, courts consider
3    whether a reasonable person in the position of the offeree would interpret the statement as
4    expressing an intent to enter into a contract. *See id*. at 909.

      "[A]dvertisements have been held to constitute offers where they invite the performance of a *specific act* without further communication and leave *nothing for negotiation*." *Id.* (emphasis in original) (quotations omitted). "The operative question under California law ... is simply whether the advertiser, in clear and positive terms, promised to render performance in exchange for something requested by the advertiser, and whether the recipient of the advertisement reasonably might have concluded that by acting in accordance with the request a contract would be formed." *Id.* (quotations omitted).

      Plaintiffs attach several screenshots of defendants' website to the complaint and describe them in the complaint, arguing that these statements constitute offers:

- If there's a better price, we'll find it.
- Stop wasting money—Honey finds you the Internet's best discount codes.
- We'll find every working promo code online.
- We'll apply the code with the biggest savings. ...
- Add Honey—It's Free
- We search for the internet's best coupons
    - Stop wasting time and money—Honey helps you find coupon codes on 30,000+ sites.
    - Add Honey—undefined
- How it works
    - 1. Add in Seconds It just takes a few clicks to add to your computer and it's 100% free.
    - 2. Shop like normal. We'll automatically look for codes when you shop on select sites.
    - 3. We'll do the work. If we find working codes, we'll apply the one with the biggest savings to your cart.

9

- 30,000+ stores "Whether you're ordering pizza, picking up shoes, or booking travel, we'll look for coupons when you shop on thousands of sites.

- Automatic coupons

  o Still looking for codes on your own? We'll search for them so you don't have to. If we find working codes, we'll automatically apply the best one to your cart

- "This lazy online trick actually saves you a ton of money."

- What Honey members are getting ... $126 yearly average savings … 17.9% average discount

- Start saving now.

  o Add Honey—undefined

Dkt. No. 1-1, at 91, 100–02. Plaintiffs also include a screenshot of an email that states "If there's a better price, we'll find it … get started with Honey." *Id.* at 110. Another screenshotted page reads "We search for the internet's best coupons. Stop wasting time and money—PayPal Honey helps you find coupon codes on 30,000+ sites. Add to Chrome—It's Free." *Id.* at 105.

    None of these advertisements are sufficiently concrete to constitute an offer. They do not specify what kind of coupons are being offered, their value, their quantity, or the conditions under which they will be provided. Such general language does not rise to the level of a definite and certain promise that the law requires for contract formation. In *Harris v. Time, Inc.*, 191 Cal. App. 3d 449 (1987), for example, the court recognized that an advertisement can potentially be treated as an offer only where it calls for performance of a specific act without further communication and leaves nothing for further negotiation, such as "we'll send you a watch just for opening this envelope." *Id.* at 453–55. Here, no such specific request or promise exists.

    A reasonable person in the position of the offeree would not understand these phrases to invite the performance of a specific act *without* further communication and while leaving nothing for negotiation. This is evidenced by the fact that it is not clear or definite what is expected from the offeree to accept the offer. The statements say "add Honey", "get started with Honey", or "add to Chrome," but a reasonable person in the position of the offeree would unable to determine exactly what performance is needed from the offeree to accept the alleged offer for the "best coupons." The offer does not specify what it means to "add Honey" or what additional steps may

be needed to do so. For example, one part of the advertisement states "[i]t just takes a few clicks to add to your computer." Dkt. No. 1-1, at 105. The complaint further describes how plaintiffs put their emails into the Honey site and subsequently each received an email that stated "get started with Honey," a phrase indicating that additional undefined performance was necessary to begin using the service. *Id.* at 110. These statements are better understood as an invitation to negotiate or an effort to solicit user interest, rather than as a promise of consideration in exchange for a specific act. *See Roley*, 40 F.4th at 909 (finding no unilateral contract where defendants' statements "neither informed users how they might conclude the bargain, nor invited the performance of a specific act without further communication, leaving nothing for negotiation" (internal citation omitted)).

Because plaintiffs fail to plausibly allege the existence of an implied or unilateral contract, defendants' motion to dismiss is granted as to plaintiffs' claim for breach of contract.

## V. Plaintiffs fail to state a UCL claim.

Defendants ask the Court to dismiss plaintiffs' UCL claim for, among other things, seeking to apply the UCL extraterritorially. "[T]he presumption against extraterritoriality applies to the UCL." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). This means that "'the UCL does not apply to actions occurring outside of California that injure non-residents.'" *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1130 (N.D. Cal. 2014) (quoting *Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.,* C–09–5815 CW, 2010 WL 3619884 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 Fed. App'x. 362 (9th Cir.2012)). But "the UCL reaches any unlawful business act or practice committed *in* California." *Sullivan*, 51 Cal. 4th at 1208 (emphasis added).

California courts have permitted UCL claims brought by out-of-state plaintiffs to stand where the "alleged misrepresentations [ ] were disseminated from California." *Ehret*, 68 F. Supp. 3d at 1129–31 (collecting cases). "The UCL's focus is 'on the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices.'" *Id.* (quoting *In Re Tobacco II Cases,* 46 Cal.4th 298, 312 (2009)).

11

Defendants note that there are no specific allegations of misconduct taking place in California in the complaint. While the complaint alleges that defendants are California citizens and have their principal place of business in California, the complaint does *not* allege that the statements or website at issue here were conceived within and/or disseminated from California.

As numerous courts have recognized, something more than an allegation that the defendant is a California citizen is necessary for non-California residents to assert a UCL claim. *See Fontenberry v. MV Transp., Inc.*, 984 F. Supp. 2d 1062, 1069 (E.D. Cal. 2013) (finding that plaintiffs failed to plead facts demonstrating that an unlawful act occurred in California where plaintiffs only alleged that defendant maintained its headquarters in California but did not allege that the alleged misconduct occurred in California); *Ice Cream Distributors*, 2010 WL 3619884, at *8 (finding a UCL claim barred as extraterritorial where the plaintiff alleged that statements were made by employees outside of California even though they were at the direction of employees in California because "the UCL does not apply to actions occurring outside of California that injure non-residents" (cleaned up)). Instead, plaintiffs must allege that harmful conduct occurred in or emanated from California. *See Ehret*, 68 F. Supp. 3d at 1131–32 (N.D. Cal. 2014) (differentiating the case from those that merely allege California citizenship by describing plaintiff's allegations that defendants' misrepresentations were developed in California, contained on websites and an application that are maintained in California, and that the billing and payment of services went through servers located in California).

Here, plaintiffs' operative complaint includes no allegation that the harmful conduct at issue occurred in or emanated from California. Accordingly, the Court grants defendants' motion to dismiss plaintiffs' UCL claim.

## CONCLUSION

For the reasons discussed herein, the Court grants defendants' motion to dismiss plaintiffs' complaint.[7] Dismissal is with leave to amend. Any amended complaint must be filed within 28

---

[7] Although defendants identified other purported defects in plaintiffs' complaint in their motion to dismiss, the Court need not address them given the Court's conclusion that the operative complaint fails to plead any viable cause of action.

12

days of this Order.

**IT IS SO ORDERED.**

Dated: August 28, 2025

P. Casey Pitts
United States District Judge