CLEMENT S. ROBERTS (SBN 209203)
croberts@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RICHARD JACOBSEN (admitted pro hac vice)
MARC R. SHAPIRO (admitted pro hac vice)
rjacobsen@orrick.com
mshapiro@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:    +1 212 506 5000
Facsimile:    +1 212 506 5151

PAUL F. RUGANI (SBN 342647)
prugani@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
Telephone:    +1 949 567 6700
Facsimile:    +1 949 567 6710

Attorneys for Defendants
Honey Science, LLC and PayPal, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM CAMPBELL, DANIEL JENKS-BERRYMAN, DECLAN LYNN, ADITHYA NARAYANAN, JAMES POAD, DAN SORAHAN, ALAN SUTCH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HONEY SCIENCE, LLC, a Delaware limited liability company, PAYPAL, INC., a Delaware corporation, and DOES 1 through 50<br><br>Defendants. | Case No. 5:25-cv-02850-PCP<br><br>**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(B)(6) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:    October 30, 2025<br>Time:    10:00 AM<br>Dept:    Courtroom 8, 4th Floor<br>Judge:  Hon. P. Casey Pitts |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 2

II.   BACKGROUND ................................................................................................. 3

    A.    Plaintiffs Are Located in the U.K. and Defendants Have a Presence in the U.K. ................................................................................................................. 3

    B.    PayPal Advertises the Honey Browser Extension on its Website in the U.K. ......... 3

    C.    Plaintiffs' First Amended Complaint Was Dismissed, and Plaintiffs Fail to Remedy the Deficiencies in their SAC. ......................................................... 5

III.  LEGAL STANDARD .......................................................................................... 6

IV.   ARGUMENT ...................................................................................................... 6

    A.    Plaintiffs Improperly Seek To Apply The UCL Extraterritorially Because The SAC Contains No Plausible Allegations That The Harmful Conduct Occurred In California. ............................................................................... 6

    B.    Plaintiffs' UCL Claim Fails On Its Own Terms. .................................... 9

        1.    Plaintiffs Lack Standing Under the UCL. ...................................... 9

        2.    Plaintiffs Have Not Identified Any Actionable Misrepresentations Under Any Prong of the UCL. ............................................... 10

        3.    Plaintiffs Do Not Allege Reliance. ............................................ 14

        4.    Plaintiffs Improperly Seek Compensatory Damages Based On Their Contingent Interest In Additional Savings. ............................ 16

    C.    Plaintiffs' UCL Claim Should Be Dismissed Because U.K. Law Applies. ........ 18

    D.    Plaintiffs' Failure to Cure the Deficiencies in its Complaint Should Result in Dismissal with Prejudice. .................................................................. 21

V.    CONCLUSION ................................................................................................. 22

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3
**Cases**

4
*Aguinaldo v. Ocwen Loan Servicing, LLC*,
5
    No. 5:12-CV-01393-EJD, 2012 WL 3835080 (N.D. Cal. Sept. 4, 2012) .............................. 13

6
*Am. Italian Pasta Co. v. New World Pasta Co.*,
    371 F.3d 387 (8th Cir. 2004)..................................................................................................... 12

7
*Amalgamated Transit Union, Loc. 1756, AFL-CIO v. Superior Ct.*,
8
    46 Cal. 4th 993 (2009) ......................................................................................................... 6, 19

9
*Anunziato v. eMachines, Inc.*,
10
    402 F. Supp. 2d 1133 (C.D. Cal. 2005).................................................................................... 12

11
*Archdale v. Am. Int'l Specialty Lines Ins. Co.*,
    154 Cal. App. 4th 449 (2007)................................................................................................... 16

12
*Ashcroft v. Iqbal*,
13
    556 U.S. 662 (2009) ................................................................................................................... 6

14
*Atherton v. Toshiba Am. Info. Sys., Inc.*,
15
    No. CV 08-2141 AG, 2008 WL 11338566 (C.D. Cal. Aug. 19, 2008) ................................... 12

16
*Baton v. Ledger SAS*,
    740 F. Supp. 3d 847 (N.D. Cal. 2024) .................................................................................... 19

17
*Berke v. Whole Foods Mkt., Inc.*,
18
    No. CV 19-7471 PSG (KSX), 2020 WL 5802370 (C.D. Cal. Sept. 18, 2020)...................... 15

19
*BioResource, Inc. v. U.S. Pharmaco Distribution, Ltd.*,
20
    No. C 10-1053 SI, 2010 WL 2763681 (N.D. Cal. July 13, 2010) ........................................... 16

21
*Brown v. Madison Reed, Inc.*,
    No. 21-CV-01233-WHO, 2021 WL 3861457 (N.D. Cal. Aug. 30, 2021)............................... 15

22
*In re California Title Ins. Antitrust Litig.*,
23
    No. C 08-01341 JSW, 2009 WL 3756686 (N.D. Cal. Nov. 6, 2009) ........................................ 9

24
*Cimoli v. Alacer Corp.*,
25
    587 F. Supp. 3d 978 (N.D. Cal. 2022) .............................................................................. 19, 21

26
*Cortez v. Purolator Air Filtration Prods. Co.*,
    23 Cal. 4th 163 (2000) ............................................................................................................. 17

27
*Cover v. Windsor Surry Co.*,
28
    14-CV-05262-WHO, 2016 WL 520991 (N.D. Cal. Feb. 10, 2016) ........................................ 20

*Deirmenjian v. Deutsche Bank AG*,
    548 F. App'x 461 (9th Cir. 2013) ........................................................................... 18

*Doe v. Kaiser Found. Health Plan, Inc.*,
    No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .............................. 18

*Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of California*,
    No. SACV150736DOCDFMX, 2018 WL 10072961 (C.D. Cal. May 1, 2018) .................... 10

*Eberhardt v. U-Haul International, Inc.*,
    2025 WL 1294652 (N.D. Cal. May 5, 2025) ........................................................... 21

*Ehret v. Uber Techs., Inc.*,
    68 F. Supp. 3d 1121 (N.D. Cal. 2014) .................................................................... 7

*Frezza v. Google Inc.*,
    No. 12-cv-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ....................... 19, 20

*Gianino v. Alacer Corp*,
    846 F. Supp. 2d 1096 (C.D. Cal. 2012) ............................................................. 19, 20

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ............................................................................. 8

*Gustafson v. BAC Home Loans Servicing, LP*,
    294 F.R.D. 529 (C.D. Cal. 2013) ........................................................................ 19

*Gustafson v. BAC Home Loans Servicing, LP*,
    No. SACV 11–915–JST, 2012 WL 4761733 (C.D. Cal. Apr. 12, 2012) .......................... 7

*Hambrick v. Healthcare Partners Med. Grp., Inc.*,
    238 Cal. App. 4th 124 (2015) ............................................................................. 18

*Hawaii Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.*,
    422 F. Supp. 3d 821 (S.D.N.Y. 2019) .................................................................. 13

*Hawkins v. Shimano N. Am. Bicycle Inc.*,
    No. 8:23-CV-02038-JVS (JDE), 2024 WL 4405249 (C.D. Cal. Aug. 1, 2024) ................ 13

*Katz-Lacabe v. Oracle Am., Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023) ................................................................. 18

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................ 6, 14

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ............................................................................... 16, 17

*Kwikset Corp. v. Superior Ct.*,
    51 Cal. 4th 310 (2011) .................................................................................... 17

*LegalJiffy.com, Inc. v. LegalCPU.com, Inc.*,
    No. CV091867AHMJTLX, 2009 WL 10699601 (C.D. Cal. Sept. 11, 2009) ....................... 16

*Lewis v. DiPonzio*,
    529 F. App'x 855 (9th Cir. 2013) ......................................................................................... 21

*Littlehale v. Hain Celestial Grp., Inc.*,
    No. 11-cv-06342-PJH, 2012 WL 5458400 (N.D. Cal. July 2, 2012).................................... 19

*Mattel, Inc. v. MGA Entertainment, Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011).............................................................................. 9, 10

*Mazza v. Am. Honda Motor Co., Inc.*,
    666 F.3d 581 (9th Cir. 2012)................................................................................... 18, 19, 20

*McKinney v. Corsair Gaming, Inc.*,
    646 F. Supp. 3d 1133 (N.D. Cal. 2022) ......................................................................... 19, 21

*Meyer v. Ward*,
    No. 13 C 3303, 2017 WL 6733726 (N.D. Ill. Dec. 18, 2017)............................................ 13

*Moates v. Facebook Inc.*,
    No. 22-CV-04478-RFL, 2024 WL 2853976 (N.D. Cal. Apr. 3, 2024) ................................ 14

*Narayan v. EGL*,
    616 F.3d 895 (9th Cir. 2010)............................................................................................... 18

*Nat'l Rural Telecomm. Co-op. v. DIRECTV, Inc.*,
    319 F. Supp. 2d 1059 (C.D. Cal. 2003)......................................................................... 16, 17

*Neu v. Terminix Int'l, Inc.*,
    No. C 07-6472 CW, 2008 WL 2951390 (N.D. Cal. July 24, 2008)..................................... 13

*Norwest Mortg., Inc. v. Superior Ct.*,
    72 Cal. App. 4th 214 (1999)............................................................................................. 6, 7

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
    31 F.4th 651 (9th Cir. 2022)............................................................................................... 18

*Papasan v. Allain*,
    478 U.S. 265 (1986) ............................................................................................................. 6

*Pattison v. HP Inc.*,
    No. 24-CV-02752-MMC, 2024 WL 5011945 (N.D. Cal. Dec. 5, 2024)................................ 7

*Prager Univ. v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020)............................................................................................... 12

*Prata v. Superior Ct.*,
    91 Cal. App. 4th 1128 (2001)............................................................................................. 17

*Shuman v. SquareTrade Inc*,
No. 20-CV-02725-JCS, 2020 WL 7458001 (N.D. Cal. Dec. 18, 2020) ............................... 20

*Sommer v. Gabor*,
40 Cal. App. 4th 1455 (1995)............................................................................................. 18

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997)............................................................................................ 13

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) ....................................................................................................... 7

*Tabler v. Panera LLC*,
No. 19-CV-01646-LHK, 2019 WL 5579529 (N.D. Cal. Oct. 29, 2019) ........................... 15

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ....................................................................................................... 14

*Wesch v. Yodlee, Inc.*,
No. 20-CV-05991-SK, 2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) ................................ 9

*West v. PBC Mgm't*,
754 F. Supp. 3d 914 (N.D. Cal. 2024) ............................................................................... 21

*Winzig v. Stockpile Invs., Inc.*,
No. 2:21-CV-02170-RGK-E, 2021 WL 4812956 (C.D. Cal. July 2, 2021) ......................... 9

*Woo v. Am. Honda Motor Co.*,
462 F. Supp. 3d 1009 (N.D. Cal. 2020) ............................................................................. 21

*Yastrab v. Apple Inc.*,
173 F. Supp. 3d 972 (N.D. Cal. 2016) ............................................................................... 14

*Young v. Neurobrands, LLC*,
No. 18-cv-05907-JSW, 2020 WL 11762212 (N.D. Cal. Oct. 15, 2020)............................. 19

*Zhang v. Superior Ct.*,
57 Cal. 4th 364 (2013) ....................................................................................................... 17

**Statutes**

Cal. Bus. & Prof. Code, §§ 17200, et seq. ................................................................................ 20

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 6

**Other Authorities**

*Consumer Protection from Unfair Trading Regulations 2008*, SI 2008/1277 (UK),
    Practical Law Commercial, at 2-381-1492 ....................................................................... 19, 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND RELIEF SOUGHT

PLEASE TAKE NOTICE that on October 30, 2025 at 10:00 AM, or as soon thereafter as may be heard by the Honorable District Judge P. Casey Pitts, United States District Court, Northern District of California, San Jose Courthouse, Courtroom 8, 4th Floor, 280 South First Street, San Jose, CA 95113, Defendants Honey Science, LLC and PayPal, Inc. (together "PayPal") will and hereby do move to dismiss the Second Amended Complaint ("SAC") filed by Plaintiffs Tom Campbell, Daniel Jenks-Berryman, Declan Lynn, Adithya Narayanan, James Poad, Dan Sorahan, Alan Sutch ("Plaintiffs").

This motion is based upon this notice of motion and motion, the memorandum of points and authorities in support that follows, the Request for Judicial Notice filed concurrently herewith, all pleadings and papers on file in this action, the arguments of counsel, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing on this motion. PayPal seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing Plaintiffs' SAC with prejudice for failure to state a claim.

Dated: September 16, 2025                     ORRICK, HERRINGTON & SUTCLIFFE LLP


                                              By: */s/ Clement S. Roberts*
                                              CLEMENT S. ROBERTS
                                              Attorney for Defendants
                                              HONEY SCIENCE, LLC and PAYPAL,
                                              INC.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiffs' Second Amended Complaint ("SAC") is their third attempt to bring a claim in California under California law on behalf of a putative class of U.K. citizens who allegedly viewed PayPal's advertisements in the U.K., downloaded PayPal's free Honey browser extension in the U.K., and used it to obtain discounts when shopping online while in the U.K.  Plaintiffs have not fixed the two key issues identified by the Court in its order dismissing Plaintiff's First Amended Complaint ("FAC").

First, Plaintiffs do not allege *any* facts that state a plausible claim that the challenged conduct occurred in California.  The Court previously dismissed Plaintiffs' California UCL claim because that statute does not apply extraterritorially and because "plaintiffs' operative complaint includes no allegations that the harmful conduct at issue occurred in or emanated from California." ECF 57 ("MTD Order") at 12.  The only allegation Plaintiffs add this time around is that statements on the Honey Website "were made and disseminated from within the State of California."  SAC ¶ 55.  But this addition does nothing more than parrot what the Court said was the *standard* for stating a claim under the UCL.  It is, therefore, simply a conclusory allegation that is legally insufficient.  And, given that PayPal is a global company with a presence in the U.K., nothing about this additional allegation *plausibly* suggests that the statements actually *did* come from California as a factual matter.

Second, although Plaintiffs are no longer asserting a claim for breach of an implied contract, Plaintiffs' UCL claim advances *the same legal theories* the Court already rejected.  The Court dismissed Plaintiffs' implied contract claim because it concluded that a "reasonable person" could not read the "general language" in the ads identified in the complaint as creating a binding contract pursuant to which PayPal promised to provide Plaintiffs with specific coupons.  MTD Order at 10. Undeterred by the Court's order, Plaintiffs still rely on the same ads that the Court already evaluated to allege that PayPal is liable because it failed to do "what Defendants had promised it would do … 'search for the internet's best coupons'".  SAC ¶ 34, Prayer for Relief.  Given that a "reasonable person" would not rely on the "general language" in PayPal's advertising as a promise to provide

specific coupons, MTD Order at 10, the statements are not actionable as misrepresentations under the UCL. Indeed, the statements are not alleged to be false in many cases, constitute nonactionable puffery, and cannot form the basis of a UCL claim.

Aside from issues this Court has already addressed, the SAC fails for several additional reasons: (1) Plaintiffs lack standing under the UCL; (2) Plaintiffs have not claimed to have relied on the alleged misrepresentations; (3) Plaintiffs seek only compensatory damages that are not recoverable under the UCL; and (4) laws of the U.K. apply and Plaintiffs cannot bring a UCL claim at all. Because of the myriad deficiencies in the SAC, and Plaintiffs' failure to fix the issues this Court identified in its order, the SAC should be dismissed with prejudice.

## II.    BACKGROUND

### A.    Plaintiffs Are Located in the U.K. and Defendants Have a Presence in the U.K.

Honey is a downloadable browser extension for computers and mobile devices. SAC ¶ 15. Honey is completely free to obtain and use. *Id*. Among the free services Honey provides its users is a tool that automatically searches for and applies coupon codes to save users money on their online purchases. *See id.* ¶¶ 17-18. Plaintiffs are all citizens and residents of the U.K. "who downloaded the free Honey software browser extension from within the U.K." to use when shopping online in the U.K. *Id*. ¶ 30. Plaintiffs acknowledge the Honey Website viewable in the U.K. is tailored to U.K. residents, including by displaying currency in pounds rather than dollars. *Id*. ¶ 24.

In January of 2020, PayPal, Inc. acquired Honey. *Id*. ¶ 19. PayPal, Inc. has owned and operated Honey from January 2020 to the present, and since PayPal, Inc. acquired Honey, the website has referred to the product as "PayPal Honey." *Id*. ¶¶ 19, 27. PayPal has offices all over the world, including an office in the U.K. RJN Exs. 1-2.

### B.    PayPal Advertises the Honey Browser Extension on its Website in the U.K.

Plaintiffs allege PayPal advertises the free benefits and services Honey provides to its consumers on its website. SAC ¶¶ 18, 25-26. For example, some advertisements note, "Stop wasting time and money – Honey helps you find coupon codes on 30,000+ sites;" "Whether you're ordering pizza, picking up shoes, or booking travel, we'll look for coupons when you shop on

thousands of sites;" "Still looking for codes on your own? We'll search for them so you don't have to." *Id*. ¶ 26.  Plaintiffs' SAC focuses on advertisements stating that Honey will "search for the internet's best coupons" and apply the "biggest savings to your cart." *Id*.  Plaintiffs do not allege they personally saw these advertisements (much less relied on them in deciding to use Honey).  In fact, they do not even allege when they became users of Honey or whether the advertisements were in existence prior to that date.  Instead, Plaintiffs allege on information and belief they could be seen by "any person who accessed the Honey Website from the U.K." *Id*. ¶ 28.

Plaintiffs allege they voluntarily provided their email addresses to Honey when downloading the browser extension and, upon doing so, received an email stating "[i]f there's a better price, we'll find it." *Id*. ¶ 33.  After downloading the Honey browser extension, Plaintiffs allege that, at some point thereafter, they "purchased items over the Internet, and clicked on the Honey button to have PayPal search for and apply the 'best' coupons or discount codes." *Id*. ¶ 35.  While Plaintiffs speculate that "on at least some occasions" Plaintiffs "did not receive the 'best' coupons or discount codes because Defendants had agreements with many vendors pursuant to which Defendants would not find and apply the 'best' coupons or discount codes" (*id*. ¶ 36), they do not identify any specific agreement with any merchant or any specific transaction in which a coupon code was available that would have provided them a "better" deal than Honey returned.

Instead, they rely on PayPal's public statement on the Honey "FAQ" (Frequently Asked Questions) page, which discloses to consumers that Partner vendors (i.e., merchants) can exercise control over which coupons they choose to make available through Honey.  *Id*. ¶ 37.  In light of that disclosure, Plaintiffs allege, on information and belief, "on at least some occasions, each Plaintiff, and each member of the Plaintiff Class, paid more for an item than he or she would have paid if he or she knew that the Honey browser extension did not actually search for the 'best' coupons or discount codes." *Id*. ¶ 41.  The SAC not only fails to identify any such situation, but also contains no allegations about how any consumer would have (in this hypothetical situation) found the "better" coupon code that Honey allegedly failed to provide.  There is nothing, for example, explaining how the Plaintiffs would have, in the absence of using Honey, obtained a

"better" coupon code using less effort than they were able to using Honey or saved more money than they did through Honey.

**C.    Plaintiffs' First Amended Complaint Was Dismissed, and Plaintiffs Fail to Remedy the Deficiencies in their SAC.**

On January 29, 2025, Plaintiffs filed their original complaint in California state court. *See Tom Campbell et al. v. Honey Science, LLC*, No. 25CV459473 (Super. Ct. Santa Clara County 2025). On March 26, 2025, Plaintiffs filed their First Amended Complaint ("FAC"). *Id.* The FAC asserted two causes of action (presented as "legal theor[ies]"): (1) breach of implied contract and (2) violation of the UCL. *Id.*

This case was removed to federal court on March 26, 2025. ECF No. 1. On April 16, 2025, PayPal moved to dismiss the FAC. ECF No. 25. On August 28, 2025, the Court granted PayPal's motion to dismiss in its entirety. MTD Order. The Court first rejected Plaintiffs' implied contract claim. It concluded that "none" of the ads that Plaintiffs allege created an implied contract were "sufficiently concrete to constitute an offer." *Id.* at 10. Instead, the ads contained "general language [that] d[id] not rise to the level of a definite and certain promise." *Id.* The Court thus held that "plaintiffs fail to plausibly allege the existence of an implied or unilateral contract" because "[a] reasonable person in the position of the offeree would not understand [the advertisements] to invite the performance of a specific act." *Id.* at 10-11. The Court also dismissed Plaintiffs' UCL claim on the basis that "plaintiffs' operative complaint includes no allegation that the harmful conduct at issue occurred in or emanated from California." *Id.* at 12. The Court allowed Plaintiffs 28 days from its order to amend its complaint. *Id.*

On September 2, 2025, five days after the Court's order, Plaintiffs filed their SAC. The SAC eliminated the implied contract claim. As to the UCL claim, Plaintiffs added just one barebones sentence: "PayPal's public statements on the Honey Website (as quoted above), all of which were made and disseminated from within the State of California, are unlawful for purposes of the Unfair Competition Law, because they have been made and disseminated in contravention of Business and Professions Code section 17500." SAC ¶ 55. Plaintiffs include no facts to support this allegation.

1    **III.    LEGAL STANDARD**

2    A complaint must be dismissed where it fails to "state a claim upon which relief can be

3    granted." Fed. R. Civ. P. 12(b)(6). A complaint cannot survive a motion to dismiss unless it

4    contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

5    face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

6    544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative

7    level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.

8    Legal conclusions—even if couched as factual allegations—need not be accepted as true. *See*

9    *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Further, when fraud is alleged, "a party must state

10   with particularity the circumstances constituting fraud." *See* Fed. R. Civ. P. 9(b). If a plaintiff

11   alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the

12   basis of their claim, they are required to satisfy the particularity requirements of Rule 9(b). *Kearns*

13   *v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

14   To allege a violation of the UCL, Plaintiffs must allege (1) a business act or practice that

15   is fraudulent, unlawful, or unfair, (2) standing in the form of lost money or property as a result of

16   the alleged misconduct, and (3) that the alleged misconduct occurred in California. *Amalgamated*

17   *Transit Union, Loc. 1756, AFL-CIO v. Superior Ct.*, 46 Cal. 4th 993, 998 (2009); *see also*

18   *Norwest Mortg., Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 225 (1999). Because Plaintiffs allege

19   misrepresentations, they must also meet Rule 9(b)'s heightened pleading standard. *Kearns*,

20   567 F.3d at 1125 (noting that a claim based upon alleged misrepresentation and deception

21   requires application of a heightened pleading standard).

22   **IV.    ARGUMENT**

23   **A.    Plaintiffs Improperly Seek To Apply The UCL Extraterritorially Because The**
24   **SAC Contains No Plausible Allegations That The Harmful Conduct Occurred**
     **In California.**

25   Although PayPal believes the Court need not reach the merits of Plaintiffs' UCL claim

26   because U.K. laws apply, *see infra* § IV(C), the claim also fails on the merits. As an initial matter,

27   Plaintiffs improperly seek to apply the UCL extraterritorially. Despite this Court's prior order

28   dismissing the claim because the FAC lacked allegations of conduct occurring in or emanating from

California, MTD Order at 12, Plaintiffs have failed to cure that issue in the SAC. California courts have "made clear that there is a strong presumption against the extraterritorial application of California law," including the UCL. *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1129-30 (N.D. Cal. 2014). "Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). The Court is therefore required to determine whether Plaintiffs' proposed application of the UCL would cause it to impermissibly operate with respect to occurrences outside of the state. *See Norwest Mortg., Inc.*, 72 Cal. App. 4th at 225.

Plaintiffs' SAC includes a *single* new conclusory allegation about the conduct occurring in California: "PayPal's public statements on the Honey Website (as quoted above), all of which were made and disseminated from within the State of California..." SAC ¶ 55. This allegation lacks any factual content. Courts have repeatedly recognized that similar barebones allegations are insufficient to show that conduct occurred in California. *See, e.g.*, *Pattison v. HP Inc.*, No. 24-CV-02752-MMC, 2024 WL 5011945, at *2 (N.D. Cal. Dec. 5, 2024) (holding that allegation that the "'acts and omissions giving rise to [plaintiff's] claims occurred in and emanated from this District'" were "conclusory and, consequently, … insufficient" to establish that the challenged conduct took place in California); *see also Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11–915–JST (ANx), 2012 WL 4761733, at *6 (C.D. Cal. Apr. 12, 2012) (finding the single allegation that "'Defendants' scheme was devised, implemented and directed from BAC Home Loans Servicing's and Balboa's offices in California'" was "too vague to 'plausibly suggest an entitlement to relief'").

Plaintiffs' new allegation does not come close to those in cases where courts "have permitted the application of California law where the plaintiffs' claims were based on alleged misrepresentations that were disseminated from California." *See Ehret*, 68 F. Supp. at 1130. In *Ehret*, for example, the Court held that a UCL claim was viable where the plaintiff alleged that misrepresentations and omissions were contained on defendant's website and application, which were maintained in California and the billing and payment for defendant's services were processed on defendant's servers in San Francisco, California. *Id.* at 1131-32. Unlike in *Ehret*, where the plaintiff alleged specific facts about the location where the defendant's website and applications

1    were maintained and the location of the defendant's servers, Plaintiffs here merely assert that

2    statements were made from California without alleging *any* supporting facts.

3       Plaintiffs' failure to allege specific facts showing the UCL applies is particularly

4    problematic because PayPal has offices in a wide range of locations and Plaintiffs offer no reason

5    for this Court to infer that the challenged statements emanated from California.  As Plaintiffs

6    acknowledge, PayPal purchased Honey in 2020, PayPal owns and operates Honey, and on the

7    website, the product is referred to as "PayPal Honey."  SAC ¶¶ 19-20, 27.  PayPal has offices all

8    around the world, including in London.  RJN Ex. 1-2.  As this Court noted, Plaintiffs are asking for

9    "an inference from the fact that [PayPal is] based here…that whatever wrongful conduct happened

10   was … happening here as opposed to, say, through their London office."  MTD Tr. 41:13-16.  The

11   Court is not required to accept as true Plaintiffs' conclusory allegations and inferences.  *In re Gilead*

12   *Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) ("Nor is the court required to accept as true

13   allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

14   inferences").

15      The remainder of Plaintiffs' allegations all relate to conduct occurring in the U.K. and are

16   identical to the allegations in the FAC.  Plaintiffs allege "the Honey Website invited members of

17   the public, including citizens and residents of the U.K. who are based within the U.K., to 'join'

18   Honey by downloading the free Honey software browser extension."  SAC ¶ 29.  They state that

19   each member of the Plaintiff Class "are citizens and residents of the U.K.," "are based within the

20   U.K.," and "downloaded the free Honey software browser extension from within the U.K."  *Id*. at

21   ¶ 30.  They specifically allege the offending advertising was made "to any person who accessed the

22   Honey Website from the U.K."  *Id*. at ¶ 28.  Finally, they allege that members of the class

23   "purchased items over the Internet" and, "[o]n at least some occasions," "did not receive the 'best'

24   coupons or discount codes."  *Id*. at ¶¶ 35-36.  In short, Plaintiffs allege all of the relevant conduct

25   occurred in the U.K.  Despite being given the opportunity to allege additional facts showing they

26   are not improperly seeking to apply the UCL extraterritorially, Plaintiffs were unable to do so, and

27   thus the UCL claim should be dismissed.

28

**B.    Plaintiffs' UCL Claim Fails On Its Own Terms.**

Even if this Court concludes that the UCL applies to purchases made using Honey by U.K. residents, Plaintiffs' claim must still be dismissed.  As discussed below, Plaintiffs:  (1) do not have standing because they have not adequately pleaded that they lost money or property; (2) have not identified any actionable misrepresentations; (3) do not allege reliance on the alleged misrepresentations; and (4) have no cognizable claim for relief.

**1.    Plaintiffs Lack Standing Under the UCL.**

Plaintiffs also fail to allege standing under the UCL.  To bring a claim under the UCL, Plaintiffs must allege they parted, deliberately or otherwise, with some identifiable sum such that they suffered a loss. *Mattel, Inc. v. MGA Entertainment, Inc.*, 782 F. Supp. 2d 911, 1012 (C.D. Cal. 2011).  Plaintiffs' theory of harm in their SAC remains that they "paid more for an item than he or she would have paid"—a benefit of the bargain theory that requires Plaintiffs to allege they paid money or property to PayPal in exchange for a product or service.  SAC ¶ 41; *Winzig v. Stockpile Invs., Inc.*, No. 2:21-CV-02170-RGK-E, 2021 WL 4812956, at *4 (C.D. Cal. July 2, 2021).

The new allegations in Plaintiffs' SAC simply recycle a theory PayPal already refuted—that Plaintiffs can establish UCL standing by alleging they paid money to PayPal indirectly by virtue of PayPal's partnerships with merchants.  SAC ¶ 42.  Specifically, Plaintiffs argue that because PayPal receives monetary compensation from its merchant partners when Plaintiffs make a purchase from a merchant website, Plaintiffs are paying money to PayPal for the Honey browser extension indirectly.  *Id.*  As PayPal explained in its Reply in support of its Motion to Dismiss the FAC, this theory is fundamentally at odds with California law.  *See* Dkt. 31 at 12.  The UCL requires that Plaintiffs pay money or property to the defendant—an indirect theory of payment is insufficient.  *See, e.g., In re California Title Ins. Antitrust Litig.*, No. C 08-01341 JSW, 2009 WL 3756686, at *7 (N.D. Cal. Nov. 6, 2009) (finding plaintiffs failed to establish standing where they did not directly purchase title insurance from the defendants and where the parent companies did not exercise control over the subsidiaries); *see also Wesch v. Yodlee, Inc.*, No. 20-CV-05991-SK, 2021 WL 1399291, at *6 (N.D. Cal. Feb. 16, 2021) (noting that because Plaintiffs have not paid the defendant any money for the use of its service, "Plaintiffs have not alleged how they lost

money or property in this manner").

But even setting aside Plaintiffs' failure to allege that they paid any sum of money to PayPal, Plaintiffs fail to allege "'some identifiable sum [of money] formerly belonging to [them]'" that they lost by virtue of their use of Honey. *Mattel, Inc.*, 782 F. Supp. 2d at 1012. All Plaintiffs plead is that some unspecified better deal existed that the Honey browser extension did not provide to them and which (in some way they don't explain) they would have found but for their reliance on Honey. SAC ¶ 41. But the lost opportunity to save more (especially on some isolated transaction) is not a deprivation of property. *See Dual Diagnosis Treatment Ctr., Inc. v. Blue Cross of California*, No. SACV150736DOCDFMX, 2018 WL 10072961, at *2 (C.D. Cal. May 1, 2018) (rejecting "Plaintiffs' first allegation of economic injury because Plaintiffs did not allege that lost opportunity to collect more money up front resulted in Plaintiffs losing money or property, as required by the UCL").

Even if a lost opportunity to save money could be considered a deprivation of property, Plaintiffs have not plausibly alleged they suffered any such lost opportunity. In fact, Plaintiffs have not identified a single instance where they were deprived of a more lucrative coupon and, as a result, lost the opportunity to save more money. Plaintiffs themselves admitted the speculative nature of their loss allegations when contesting jurisdiction in this Action, stating that "Plaintiffs have no information about … the amount in controversy in this action." *See* Dkt. 29 at 9. While Plaintiffs assume for purposes of their complaint that they were harmed because they used Honey, they simultaneously argue that it was "highly implausible" that all UK users experienced that harm. *Id*. However, the named Plaintiffs fail to identify anything unique about themselves that would make it more likely they were harmed as compared to any other UK user. Without more, Plaintiffs' claimed harm is purely speculative.

### 2.    Plaintiffs Have Not Identified Any Actionable Misrepresentations Under Any Prong of the UCL.

Even if Plaintiffs could establish standing, their UCL claim fails on the merits because they have not alleged that PayPal made any actionable false or misleading statements. Each of the statements Plaintiffs dispute were either literally true, not misleading, or non-actionable puffery.

*First*, Plaintiffs have not pleaded that many of the statements they identify as deceptive were actually false. For example, the statements "Honey helps you find coupon codes on 30,000+ sites," "[Honey will] search for the internet's best coupons," or "if we find working codes, we'll automatically apply the best one to your cart," convey that Honey will *search* for the best coupons, and will apply the best coupons *if a working code is found*. SAC ¶ 26. Plaintiffs do not allege any facts suggesting that these statements were not true—much less explain how a reasonable user would interpret them to mean that Honey will always provide the very best coupon in existence. Indeed, Plaintiffs themselves describe their theory of alleged loss as the difference between the price they paid using Honey's coupons, and the price they would have paid if Honey "had actually sought out and applied the most favorable *publicly-available* coupons." *Id*. ¶ 41. This makes clear that Plaintiffs were not expecting that Honey would literally find the best coupons that exist—such as friends and family coupons or coupons that merchants had pulled from publication.

Instead, Plaintiffs rely on the same theory put forth in their FAC—that the statements were false or misleading because PayPal was actually partnering with its merchants to withhold more lucrative coupons. *See id*. ¶ 37. The sole factual basis Plaintiffs allege to support this theory is a FAQ explaining the steps for a partner merchant to have a coupon added or removed. *Id*. The FAQ states that Partners "have control over the content hosted on the Honey platform" and can reach out to the Honey team "to update the codes and promotions currently being hosted." *Id*. Plaintiffs claim this statement demonstrates that the codes Partner vendors input to the Honey business "need not be the lowest prices available." *Id*. But Plaintiffs don't provide a single plausible explanation for why a merchant would direct Honey not to offer a coupon code that it was making available elsewhere, nor do they offer a single instance where that actually happened – much less that it happened *to them*.

Plaintiffs include only three new factual allegations in their SAC, none of which move the needle in alleging that the disputed statements were fraudulent or misleading. First, Plaintiffs now allege that because the FAQ page was designated for "business," it would not be encountered by consumers. *Id*. ¶ 39. This allegation is irrelevant. Plaintiffs fail to explain how the visibility of a statement regarding the logistics of PayPal's partnerships would render Honey's advertisements

false or misleading.  Second, Plaintiffs include a block quote from an unverified YouTube video alleging that Honey's business plan includes appealing to consumers by promising to find the best deals while simultaneously appealing to businesses by claiming they help prevent consumers from finding the best deals.  *Id*. ¶ 40.  The "commentator" is not identified, and Plaintiffs provide zero additional allegations to corroborate his statement.  Accordingly, the Court need not accept it as true.  Third, Plaintiffs include reference to a July 2020 investigation by the Better Business Bureau ("BBB") into the statement "With just a single click, Honey will find every working code on the internet and apply the best one to your cart."  *Id*. ¶ 50.  Plaintiffs claim, without support, that PayPal never intended to remove the statement, and that their assurances to the BBB were made for purposes of "evasion."  *Id*. ¶ 52.  But Plaintiffs do not allege that the statement did, in fact, remain on Honey's website, nor do they allege that they ever saw the statement nor what relevance it has to their case at all.  The existence of a statement in July 2020 which was later removed has no bearing on Plaintiffs' UCL claim.

**Second**, the remaining disputed statements are "[g]eneralized, vague, and unspecified assertions" that "constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable."  *See Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005).  Where statements "are so exaggerated as to preclude reliance by consumers," they cannot form the basis for a claim under the UCL or California's False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500.[1]  *Id*.; *Atherton v. Toshiba Am. Info. Sys., Inc.*, No. CV 08-2141 AG (MLGX), 2008 WL 11338566, at *1 (C.D. Cal. Aug. 19, 2008) (concluding that "vague or highly subjective" statements were "non-actionable 'puffery'" under the FAL).  For example, statements that Honey will "find every working promo code on the internet" or find the "best" coupons are puffery because they are "exaggerated statements of bluster or boast upon which no reasonable consumer would rely."  *See Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390-91 (8th Cir. 2004); *Prager Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020) (statements that a product or service will "help [one] grow," "work[] best," or provide "best practices" were

---

[1] Plaintiffs' claim under the UCL's "unlawful" prong is based on a violation of the FAL.  *See* SAC ¶ 55.

1    "impervious to being 'quantifiable,' and thus are non-actionable puffery.").  Courts routinely

2    conclude that marketing statements containing words like "every," such as the statements Plaintiffs

3    identify in the SAC, constitute puffery.  *See Hawaii Structural Ironworkers Pension Tr. Fund v.*

4    *AMC Ent. Holdings, Inc.*, 422 F. Supp. 3d 821, 845 (S.D.N.Y. 2019) (AMC's statement that it

5    would "turn[] over every rock to get … synergies" was nonactionable puffery); *Meyer v. Ward*,

6    No. 13 C 3303, 2017 WL 6733726, at *8 (N.D. Ill. Dec. 18, 2017) (advertising claim that financial

7    advisor had achieved "positive returns for every client every year since ... 1998" was nonactionable

8    puffery); *Hawkins v. Shimano N. Am. Bicycle Inc.*, No. 8:23-CV-02038-JVS (JDE), 2024

9    WL 4405249, at *3 (C.D. Cal. Aug. 1, 2024) (advertising claim that bicycle crankset would give

10    the rider "every possible advantage" was nonactionable puffery).

11        This Court has already recognized that Honey's ads contain "general language," do not

12    "specify what kind of coupons are being offered, their value, their quantity, or the conditions under

13    which they will be provided," and would not be relied upon by a "reasonable person in the position

14    of the offeree" to create a binding contract.  *See* MTD Order at 10.  Those same principles mean

15    the ads are not statements of fact that are actionable under the UCL.  Identifying the "best" coupon

16    for any individual consumer is a highly subjective inquiry that will depend on, at least, what the

17    consumer is ordering, their preferences, and where they are located.  *See, e.g.*, *Neu v. Terminix Int'l*,

18    *Inc.*, No. C 07-6472 CW, 2008 WL 2951390, at *3 (N.D. Cal. July 24, 2008) (concluding statement

19    that defendant's product "was the best defense against the threat of subterranean termite

20    infestation" was "expression of opinion or belief … not a representation of fact").  For example, a

21    free shipping coupon may be far more valuable to consumers in Alaska or Hawaii than a 20% off

22    coupon.  For the consumer that prefers to order in bulk, a "buy two, get one free" coupon may be

23    "better" than a percentage discount.  Because the statements Plaintiffs have identified are "product

24    superiority claim[s]" that constitute "exaggerated advertising, blustering, and boasting upon which

25    no reasonable buyer would rely," they cannot form the basis of a UCL claim.  *See Southland Sod*

26    *Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997).

27        ***Finally***, many of the allegedly deceptive statements are not actionable future predictions.

28    "Statements that are predictions of future events or commitments to take or refrain from taking

13

action in the future are not actionable fraud." *Aguinaldo v. Ocwen Loan Servicing, LLC*, No. 5:12-CV-01393-EJD, 2012 WL 3835080, at *5 (N.D. Cal. Sept. 4, 2012).     The alleged misrepresentations at issue here are, at best, vague statements of this nature.  *See* SAC ¶¶ 26, 33. They are thus not actionable as fraudulent misrepresentations under the UCL.

Each prong of Plaintiffs' UCL claim is based on the same alleged misrepresentations.  *See id*. ¶¶ 53-55.  Plaintiffs' failure to identify any actionable misrepresentations thus dooms their UCL claim under every prong.  *See Moates v. Facebook Inc.*, No. 22-CV-04478-RFL, 2024 WL 2853976, at *3 (N.D. Cal. Apr. 3, 2024) ("[W]here, as here, the conduct that comprises the UCL fraudulent or unlawful prongs is the same conduct as the unfair prong, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." (cleaned up)).

### 3.     Plaintiffs Do Not Allege Reliance.

Plaintiffs also fail to state a claim under the UCL because they have not alleged that they relied on the allegedly deceptive statements in downloading and using Honey.  To state a claim based on fraudulent business acts or practices under the UCL, Plaintiffs must allege with particularity that PayPal made a misrepresentation upon which Plaintiffs detrimentally relied.  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).  Because their claim is based on allegations of a unified course of fraudulent conduct (and in fact alleges that PayPal's conduct was fraudulent), Plaintiffs are required to meet Rule 9(b)'s heightened pleading standard as to the *entirety* of the complaint.  *See Kearns*, 567 F.3d at 1125 (noting that where a plaintiff alleges a "unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of that claim," the claim is "said to be 'grounded in fraud'" such that the claim "as a whole must satisfy the particularity requirement of Rule 9(b).").  Accordingly, Plaintiffs' allegations "must identify 'the who, what, when, where, and how of the misconduct charged.'"  *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 978 (N.D. Cal. 2016) (citing *Cafasso v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1055 (9th Cir. 2011)).

Plaintiffs have failed to plead reliance, or that the allegedly false advertising caused their loss of money or property, with particularity.  Pleading detrimental reliance with particularity

would require, at a minimum, that Plaintiffs identify the transactions in which they suffered harm, the misrepresentations they relied on in completing those transactions and when and how they encountered them, and the allegedly better coupons that were available to them at the time of those transactions. Plaintiffs have not done so in the SAC. While the SAC includes a list of advertisements allegedly present on Honey's website as of February 24, 2021 (SAC ¶ 26), Plaintiffs nowhere allege when they each downloaded Honey, whether these advertisements were present on the website when they downloaded Honey, that they in fact saw these advertisements before downloading Honey, or that they relied on them at all in deciding to download Honey.  In fact, the only specific allegation in the complaint regarding any of the Plaintiffs viewing one of the advertisements relates to the email Plaintiffs allegedly received after they sign up for an account. Plaintiffs state that "upon providing his or her e-mail through the Honey Website, each Plaintiff…received an e-mail which prominently stated:  "If there's a better price, we'll find it." *Id*. ¶ 33.  But this advertisement is inapposite, because Plaintiffs had already downloaded Honey when they viewed this ad in their email, meaning they could not have detrimentally relied on it in choosing to download Honey.  *See Brown v. Madison Reed, Inc.*, No. 21-CV-01233-WHO, 2021 WL 3861457, at *10 (N.D. Cal. Aug. 30, 2021) (noting that "[t]he defect in the pleading is that plaintiffs fail to allege that they saw or relied upon specific statements in deciding to purchase the [] products").

Courts routinely dismiss similar threadbare fraud claims that are grounded in allegedly false advertisements.  *See, e.g.*, *Tabler v. Panera LLC,* No. 19-CV-01646-LHK, 2019 WL 5579529, at *12 (N.D. Cal. Oct. 29, 2019) (granting motion to dismiss fraud claim where plaintiff did not "provide any information about when [she] allegedly viewed Defendant's advertisements, or which ones [she] found to be material in making her purchases"); *Berke v. Whole Foods Mkt., Inc.*, No. CV 19-7471 PSG (KSX), 2020 WL 5802370, at *11 (C.D. Cal. Sept. 18, 2020) (dismissing fraud claim where plaintiff "has not alleged that he viewed one, or any, of" the alleged misrepresentations or "accessed the [defendant's] website prior to making his purchases").  This Court should follow suit.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.   **Plaintiffs Improperly Seek Compensatory Damages Based On Their Contingent Interest In Additional Savings.**

Plaintiffs' UCL claim must also be dismissed because the relief they are seeking cannot be recovered under the UCL.   *See, e.g., LegalJiffy.com, Inc. v. LegalCPU.com, Inc.*, No. CV091867AHMJTLX, 2009 WL 10699601, at \*2 (C.D. Cal. Sept. 11, 2009) (dismissing UCL claim where "Plaintiff … alleged no injury that could be compensated by the restitutionary relief available under the UCL"); *BioResource, Inc. v. U.S. Pharmaco Distribution, Ltd.*, No. C 10-1053 SI, 2010 WL 2763681, at \*3 (N.D. Cal. July 13, 2010) (dismissing "defective" UCL claim "because the claim seeks relief that is not available under the UCL").   Plaintiffs seek "monetary restitution" in the amount of "the difference between:  (a) the price actually paid by the Plaintiff or Class Member (on the one hand), and (b) the lower price which would have been paid if the Honey browser extension had actually sought out and applied the most favorable publicly-available coupons or discount codes (on the other hand)."   SAC Prayer For Relief.   Plaintiffs' claim for "restitution" is deficient for three reasons.

**First**, Plaintiffs are not seeking "restitution" at all, but compensatory damages that are not recoverable under the UCL.   *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003) ("A UCL action is equitable in nature; damages cannot be recovered.").   The California Supreme Court has been clear that the UCL "is not an all-purpose substitute for a tort or contract action," is designed to create a "streamlined procedure for the prevention of ongoing or threatened acts of unfair competition," and has "limited" remedies.   *Id.* at 1150.   Consequently, the only monetary remedy available to private plaintiffs under the UCL is restitution.   *Id.* at 1148. "Restitution measures the remedy by the defendant's gain," whereas "damages" "measures the plaintiff's loss."   *Nat'l Rural Telecomm. Co-op. v. DIRECTV, Inc*., 319 F. Supp. 2d 1059, 1080–81 (C.D. Cal. 2003) (citation omitted).

Here, Plaintiffs seek classic compensatory damages—the difference between the price they would have paid if PayPal had provided the "best" coupon (as Plaintiffs' assert PayPal promised to do in its advertising) and the price they actually paid.   *See* SAC Prayer For Relief; *Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 469 (2007) (contract damages are "the

1  equivalent of the benefits of the contract as he or she would have received, had the performance

2  been rendered as promised"). But the law is clear that "compensatory damages are not recoverable

3  as restitution." *Zhang v. Superior Ct.*, 57 Cal. 4th 364, 371 (2013); *see also Prata v. Superior Ct.*,

4  91 Cal. App. 4th 1128, 1143–44 (2001) ("[I]ndividual claims for compensatory damages would be

5  inconsistent with the streamlined procedure of the UCL."). Because Plaintiffs are seeking to

6  recover damages, not restitution, they cannot maintain their UCL claim.

7  **Second**, Plaintiffs' interest in the money they seek is at most an "expectancy interest," not

8  a vested interest. To be entitled to restitution, Plaintiffs must have a "vested interest in the money

9  [they] seek[] to recover." *Korea Supply*, 29 Cal. 4th at 1149 . A vested interest is an interest in

10  money or property which is sufficiently concrete that it can be likened to property converted by the

11  defendant. *See Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178 (2000) (allowing

12  restitution for earned wages that were due and payable because they were, in effect, "the property

13  of the employee who has given his or her labor to the employer in exchange for that property");

14  *Nat'l Rural Telecomm. Co-op.*, 319 F. Supp. 2d at 1080 ("A 'vested' interest is one that is

15  'unconditional,' 'absolute,' and 'not contingent.'"). Plaintiffs' interest in purported better deals is,

16  in contrast, a mere expectancy or "contingent" interest, since Plaintiffs at most only could have

17  "expected to receive" those deals *if* they had found them elsewhere and subsequently completed

18  their purchase. *Korea Supply*, 29 Cal. 4th at 1149. "Such an attenuated expectancy cannot … be

19  likened to 'property' converted by" PayPal. *Id.*

20  **Finally**, Plaintiffs do not claim their requested relief would replace money that PayPal took

21  from them. This is a problem because "[a] restitution order against a defendant … requires both

22  that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired

23  by a defendant, on the other." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 336–37 (2011).

24  Plaintiffs do not identify any money they lost that PayPal subsequently acquired. They

25  acknowledge that Honey is "free" and never allege that they directly paid PayPal for any product

26  or service. SAC ¶ 15. Plaintiffs' attempt to avoid this issue by alleging that they indirectly paid

27  PayPal by paying merchants who in turn paid PayPal. *Id.*¶ 42. But Plaintiffs do not plausibly allege

28  that they have a vested interest in that money, for all of the reasons explained above. Indeed, the

California Court of Appeal rejected a similar theory in *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 156-57 (2015).  There, the plaintiff sought recovery of payments from a third party to the defendant.  The court found that such funds were not subject to restitution, even though the payments were based on premiums paid by plaintiff to the third-party.  *Id.*; *see id.* at 137 n.9 (explaining that third-party payments to defendant were based on plaintiffs' and other health-care plan members' payments to third party).  As the court explained, these third-party payments were "not recoverable … as restitution because this is not money in which [Plaintiff] has an ownership interest or that was 'lost by a plaintiff.'"  *Id.*

Because Plaintiffs have not pleaded ***any*** valid claim for relief, their UCL claim must be dismissed.

### C.    Plaintiffs' UCL Claim Should Be Dismissed Because U.K. Law Applies.

Plaintiffs' UCL claim is also foreclosed under California's choice of law rules.  This Court must apply California's choice of law rules to determine whether the UCL applies.  *Narayan v. EGL,* 616 F.3d 895, 898 (9th Cir. 2010).  In resolving choice-of-law issues, California courts apply a three-step "governmental interest test."  *Deirmenjian v. Deutsche Bank AG*, 548 F. App'x 461, 463 (9th Cir. 2013).  The "analysis is the same when the inquiry involves a foreign country."  *Id.* at 464 n.1 ; *see Sommer v. Gabor*, 40 Cal. App. 4th 1455, 1467-70 (1995).

The governmental interest inquiry asks:  (1) whether the relevant law pertaining to the particular issue in question of each affected jurisdiction is the same or different; (2) if there is a difference, whether there is a true conflict based on the particular circumstances; and (3) if there is a true conflict, whether the other state's interest would be more impaired if its policy were subordinated to California's.  *Mazza v. Am. Honda Motor Co.*, Inc., 666 F.3d 581, 590 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).  While *Mazza* was decided in relation to a motion for class certification, district courts in this Circuit routinely dismiss claims at the pleadings stage based on choice-of-law analyses where, as here, "it is unlikely that further fact development would materially impact the choice of law determination."  *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 947 (N.D. Cal. 2023); *see, e.g.*, *Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865-EMC,

1   2024 WL 1589982, at *13 (N.D. Cal. Apr. 11, 2024); *Cimoli v. Alacer Corp.*, 587 F. Supp. 3d 978,

2   991 (N.D. Cal. 2022): *McKinney v. Corsair Gaming, Inc.*, 646 F. Supp. 3d 1133, 1144 (N.D. Cal.

3   2022); *Frezza v. Google Inc.*, No. 12-cv-00237-RMW, 2013 WL 1736788, at *5-6 (N.D. Cal. Apr.

4   22, 2013); *Littlehale v. Hain Celestial Grp., Inc.*, No. 11-cv-06342-PJH, 2012 WL 5458400, at *1-

5   2 (N.D. Cal. July 2, 2012).

6           Under step one, California's and the U.K.'s consumer protection laws materially differ.  In

7   the U.K., the relevant law is the Consumer Protection from Unfair Trading Regulations 2008

8   ("CPUT").  *Consumer Protection from Unfair Trading Regulations 2008*, SI 2008/1277 (UK),

9   Practical Law Commercial, at 2-381-1492.  CPUT prohibits false or misleading practices which is

10  defined as "provid[ing] false information or deliver an overall impression that deceives (or is likely

11  to deceive) the average consumer, even if the information is factually correct."  *Id*.  However, there

12  are key differences between CPUT and the UCL.  First, while the UCL allows for claims to be

13  brought as class actions, the UK does not have the class action mechanism but instead allows for a

14  "group litigation order" which is a distinct mechanism from class actions.  *See Baton v. Ledger*

15  *SAS*, 740 F.Supp.3d 847, 895 (N.D. Cal. 2024) (recognizing the differences between a group

16  litigation order in English and Welsh courts and a class action UCL claim that would be brought in

17  the U.S.).  Courts have found that a material difference between state laws when some states allow

18  for class actions and others do not.  *See Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D.

19  529, 539 (C.D. Cal. 2013) (finding difference in availability of class actions under consumer

20  protection laws a material difference because they determine class members' rights to bring

21  consumer protection based claims and whether there is any relief available at all); *see also Gianino*

22  *v. Alacer Corp*, 846 F.Supp.2d 1096, 1102 (C.D. Cal. 2012) (same).  Second, to recover under

23  CPUT, "[t]he false or deceptive information must also cause or be likely to cause the average

24  consumer to take a transactional decision they would not have taken otherwise."  *Consumer*

25  *Protection from Unfair Trading Regulations 2008*, SI 2008/1277 (UK), Practical Law Commercial,

26  at 2-381-1492.  The UCL has no such requirement.  *See Amalgamated Transit Union*, 46 Cal. 4th

27  at 998.  When claims have different elements, it is evidence that the laws materially differ.  *See*

28  *Mazza*, 666 F. 3d at 591; *Young v. Neurobrands, LLC*, No. 18-cv-05907-JSW, 2020 WL 11762212,

at *9 (N.D. Cal. Oct. 15, 2020) (holding that difference in elements of relevant laws was sufficient to show material difference). Third, although CPUT allows for a "civil right of redress for consumers against traders for some practices prohibited by CPUT," it relies on public enforcement, including criminal actions against "a director, manager, secretary or similar officer and anyone purporting to act as such may be prosecuted, as well as the corporate body." *Consumer Protection from Unfair Trading Regulations 2008*, SI 2008/1277 (UK), Practical Law Commercial, at 2-381-1492. The UCL, on the other hand, does not allow for criminal penalties. *See* Bus. & Prof. Code, §§ 17200, et seq. The difference in available remedies demonstrates that U.K. law materially differs from California's UCL. *See Gianino*, 846 F.Supp.2d at 1102 (holding differences in "types of relief or remedies available to a plaintiff" are material conflicts in states' laws); *Frezza*, 2013 WL 1736788, at *6 (holding material differences exist between the UCL and another state's consumer protection laws based on the difference in available remedy).

Under step two, there is a true conflict because both California and the UK have an interest in having their laws apply. While California "has an interest in setting the appropriate level of liability for companies conducting business within its territory" the UK "has an interest in having its law applied to its resident claimants." *Mazza*, 666 F. 3d at 592-93. Even where misrepresentations allegedly emanate from California, the state where a consumer made his purchase typically has a valid interest in having its own law applied to out-of-state companies who operate within their jurisdiction. *Cover v. Windsor Surry Co.*, 14-CV-05262-WHO, 2016 WL 520991, at *7 (N.D. Cal. Feb. 10, 2016).

Under step three, the U.K.'s interests would be impaired if its policy were subordinated to California's. The Ninth Circuit has held that "the place of the wrong has the predominant interest" under step three. *Mazza*, 666 F. 3d at 593. Here, the U.K. is the place of the alleged wrong. "[C]ourts applying California choice of law rules have repeatedly held in cases involving misrepresentations that the place of the wrong is where the transaction in which the misrepresentation occurred and not where the intention to misrepresent was formed." *Shuman v. SquareTrade Inc.*, No. 20-CV-02725-JCS, 2020 WL 7458001, at *6 (N.D. Cal. Dec. 18, 2020). ; *see Mazza*, 666 F.3d at 594 (finding other states' laws applied in nationwide suit because, even

though defendant was a California corporation, "the last events necessary for liability as to the foreign class members—communication of the advertisements to the claimants and their reliance thereon in purchasing vehicles—took place in the various foreign states."); *Cimoli*, 587 F. Supp. 3d at 994 (concluding the "place of the wrong" in a case involving allegedly false advertising was the location of the plaintiffs' made purchases after relying on the advertising); *McKinney*, 646 F. Supp. 3d at 1145 (striking nationwide class allegations for false-advertising-related consumer protection claims after conducting governmental-interest analysis where defendant, "though headquartered in California, advertise[d] its products to consumers nationwide, who purchase them in their home states"); *Woo v. Am. Honda Motor Co.*, 462 F. Supp. 3d 1009, 1023-24 (N.D. Cal. 2020) (dismissing nationwide CLRA claim because "California's interest in applying its law to residents of foreign states is attenuated and does not outweigh the interests of the jurisdictions in which the purchase took place") (cleaned up)).  Here, the last events necessary to make PayPal liable under Plaintiffs' theory—Plaintiffs' use of Honey while purchasing an item and not receiving the "best" coupon—occurred in the U.K.  SAC ¶¶ 30, 35. Accordingly, the U.K.'s interests predominate under step three, which requires dismissal of the UCL claim.

### D.    Plaintiffs' Failure to Cure the Deficiencies in its Complaint Should Result in Dismissal with Prejudice.

A district court does not abuse its discretion in dismissing without leave to amend after providing plaintiff with an opportunity to amend and concluding that further amendment would be futile. *Lewis v. DiPonzio*, 529 F. App'x 855, 856 (9th Cir. 2013).  For the reasons explained above, Plaintiffs have failed to allege a violation of the UCL.  Although the Court allowed Plaintiffs leave to amend in granting PayPal's prior motion to dismiss, MTD Order at 12, Plaintiffs have failed to allege any additional facts to adequately plead a UCL violation.  As such, dismissal should be without leave to amend.  *See Eberhardt v. U-Haul International, Inc.*, 2025 WL 1294652, at *3 (N.D. Cal. May 5, 2025) ("Because the Court previously gave [plaintiff] the opportunity to amend his complaint and he was unable to cure its deficiencies, the dismissal is with prejudice and without leave to amend."); *see also West v. PBC Mgm't*, 754 F. Supp. 3d 914, 924 (N.D. Cal. 2024) ("Dismissal is without leave to amend because the Court has already given [plaintiff] an opportunity

1  to remedy the deficiencies in his allegations and further amendment would almost certainly be

2  futile.").

3  **V.    <u>CONCLUSION</u>**

4      For the foregoing reasons, PayPal respectfully requests that the Court dismiss the SAC in

5  its entirety with prejudice.

6

7  Dated: September 16, 2025                ORRICK, HERRINGTON & SUTCLIFFE LLP

8

9                                By: */s/ Clement S. Roberts*

10                                CLEMENT S. ROBERTS
                                  Attorney for Defendants
11                                HONEY SCIENCE, LLC and PAYPAL,
                                  INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28