1  DAVID J. GALLO *(California Bar No. 127722)*
   **LAW OFFICES OF DAVID J. GALLO**
2  12702 VIA CORTINA, SUITE 500
   DEL MAR, CALIFORNIA  92014
3  Telephone: (858) 509-3652

4  Attorneys for all Plaintiffs

5

6              **UNITED STATES DISTRICT COURT**

7           **NORTHERN DISTRICT OF CALIFORNIA**

8

9   TOM CAMPBELL,                         Case Number:
    DANIEL JENKS-BERRYMAN,
10  DECLAN LYNN,                          **5:25-cv-02850**
    ADITHYA NARAYANAN,
11  JAMES POAD,
    DAN SORAHAN,
12  ALAN SUTCH,
        individually and on behalf of
13      all others similarly situated,    **CLASS ACTION**

14      Plaintiff,

15  v.

16  HONEY SCIENCE, LLC,                   **OPPOSITION TO MOTION TO**
        a Delaware limited liability      **DISMISS SECOND AMENDED**
17      company,                          **COMPLAINT**
    PAYPAL, INC.,
18      a Delaware corporation, and
    DOES 1 through 50,                    Hearing:
19
        Defendants.                           Date: 30 October 2025
20                                             Time: 10:00 a.m.
                                               Dept.: Courtroom 8, 4th Floor
21                                             Judge: Hon. P. Casey Pitts

22

23

24

25

26

27

28

---

**OPPO. TO MOT. TO DISMISS 2ndAC – P. 1**          **5:25-cv-02850**

1

2

## **TABLE OF CONTENTS**

**PAGE**

3  I.   INTRODUCTION..........................................................................................8

4  II.  RESPONSE TO BACKGROUND..............................................................9

5  III. RESPONSE TO LEGAL STANDARD........................................................9

6  IV.  ARGUMENT..............................................................................................10

7      A.   Application of UCL.........................................................................10

8      B.   UCL Claim.......................................................................................11

9           1.   Standing....................................................................................11

10          2.   Actionable Misrepresentations...............................................14

11          3.   Reliance....................................................................................17

12          4.   Measure of Recovery...............................................................18

13     C.   California Law Applies....................................................................20

14     D.   Leave to Amend...............................................................................27

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2
**PAGE**

3
## CASES

4
*AGK Sierra De Montserrat, L.P. v. Comerica Bank,*
109 F.4th 1132 (9th Cir. 2024)...................................................................11

5

*A.J. v. LMND Medical Group, Inc.,*
6
2024 WL 4579143 (N.D. Cal. 25 Oct. 2024)...........................................21

7
*Anunziato v. eMachines, Inc.,* 402 F.Supp.2d 1133 (C.D. Cal. 2005).................15

8
*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)................................................................9-10

9
*Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255.......................15

10
*Baton v. Ledger SAS,* 740 F.Supp.3d 847 (N.D. Cal. 2024)................................22

11
*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)......................................9-10

12
*Cassirer v. Thyssen-Bornemisza Collection Foundation,* 89 F.4th 1226
*("Cassirer VII"),* (9th Cir. 2024), *vacated and remanded to address*
13
*supervening legislation,* 145 S.Ct. 1331 (2025)...................................................22

14
*Clancy v. The Bromley Tea Company,* 308 F.R.D. 564 (N.D. Cal. 2013)......14, 20

15
*In re Clorox Consumer Litigation,* 894 F.Supp.2d 1224 (N.D. Cal. 2012)..........21

16
*Clothesrigger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605........................25-26

17
*Concha v. London,* 62 F.3d 1493 (9th Cir. 1995)...................................................13

18
*Conley v. Gibson,* 355 U.S. 41 (1957).....................................................................9

19
*Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992 (9th Cir. 2010)...................10

20
*Demetriades v. Yelp, Inc.* (2014) 228 Cal.App.4th 294.......................................16

21
*Diamond Multimedia Systems, Inc. v. Superior Court*
(1999) 19 Cal.4th 1036.....................................................................................25-26
22

23
*Doe 1 v. AOL LLC,* 552 F.3d 1077 (9th Cir. 2009)................................................22

*Donohue v. Apple, Inc.,* 871 F.Supp.2d 913 (N.D. Cal. 2012).............................21
24

25
*Dual Diagnosis Treatment Center, Inc. v. Blue Cross of California,*
2018 WL 10072961 (C.D. Cal. 2018).....................................................................12

26
*Ehret v. Uber Technologies, Inc.,* 68 F.Supp.3d 1121 (N.D. Cal. 2014).............10

27

28

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>TABLE OF AUTHORITIES</u>
(Continued)

<u>PAGE</u>

*Engel v. CBS Inc.,* 981 F.2d 1076 (9th Cir. 1992)......................................23, 25-26

*Gianino v. Alacer Corp.,* 846 F.Supp.2d 1096 (C.D. Cal. 2012).........................22

*Glen Holly Entertainment, Inc. v. Tektronix Inc.,*
343 F.3d 1000 (9th Cir. 2003)......................................................................16

*Grouse River Outfitters, Ltd. v. Oracle Corporation,*
848 Fed.Appx. 238 (9th Cir. 2021)................................................................16

*Gustafson v. BAC Home Loans Servicing, LP,*
294 F.R.D. 529 (C.D. Cal. 2013)...................................................................22

*Haddock v. Board of Dental Examiners of California,*
777 F.2d 462 (9th Cir. 1985).........................................................................27

*Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th 1373.....................................17

*Hambrick v. Healthcare Partners Medical Group, Inc.*
(2015) 238 Cal.App.4th 124.....................................................................19-20

*Hebbe v. Pliler,* 627 F.3d 338 (9th Cir. 2010).......................................................10

*Hurtado v. Superior Court* (1974) 11 Cal.3d 574.................................................25

*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939...........................................................16

*Kearns v. Ford Motor Co.,* 567 F.3d 1120 (9th Cir. 2009)...................................13

*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134...........18-19

*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310.........................11-12, 20

*Lagrisola v. North American Financial Corp.* (2023) 96 Cal.App.5th 1178.......18

*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49..............14

*Mattel, Inc. v. MGA Entertainment, Inc.,*
782 F.Supp.2d 911 (C.D. Cal. 2011)................................................................11

*Mazza v. American Honda Motor Co., Inc.,*
666 F.3d 581 (9th Cir. 2012)..............................................................20-22, 24, 26

*McCann v. Foster Wheeler LLC* (2010) 48 Cal.4th 68..............................22, 24, 26

*Moore v. Kayport Package Express, Inc.,* 885 F.2d 531 (9th Cir. 1989)..........13-14

# TABLE OF AUTHORITIES
## (Continued)

**PAGE**

*Nayab v. Capital One Bank (USA), N.A.,* 942 F.3d 480 (9th Cir. 2019).............14

*Newcal Industries, Inc. v. Ikon Office Solution,*
513 F.3d 1038 (9th Cir. 2008)..................................................................16

*North American Chemical Co. v. Superior Court*
(1997) 59 Cal.App.4th 764.......................................................................12

*Norwest Mortgage, Inc. v. Superior Court* (1999) 72 Cal.App.4th 214.........10, 24

*People v. Ashford University, LLC* (2024) 100 Cal.App.5th 485.......................10

*Reich v. Purcell* (1967) 67 Cal.2d 551.....................................................25

*Rubenstein v. Neiman Marcus Group LLC,*
687 Fed.Appx. 564 (9th Cir. 2017).............................................................14

*In re SanDisk SSDs Litigation,* 736 F.Supp.3d 786 (N.D. Cal. 2024)...............20

*Scanlon v. County of Los Angeles,* 92 F.4th 781 (9th Cir. 2024)........................10

*Shersher v. Superior Court* (2007) 154 Cal.App.4th 1491...........................11, 20

*Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191....................................10, 21, 24

*In re TFT–LCD (Flat Panel) Antitrust Litigation,*
2013 WL 6327490 (N.D. Cal. 03 Dec. 2013).........................................24

*In re Tobacco II Cases* (2009) 46 Cal.4th 298..............................14, 17-18, 26-27

*In re Tracht Gut, LLC,* 836 F.3d 1146 (9th Cir. 2016)........................................10

*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305........................11, 20

*United States ex rel. Vatan v. QTC Medical Services, Inc.,*
721 Fed.Appx. 662 (9th Cir. 2018)..........................................................14

*Urban v. Tesla, Inc.,* 98 F.Supp.3d 1124 (N.D. Cal. 2023).................................20

*Washington Mutual Bank, FA v. Superior Court*
(2001) 24 Cal.4th 906..........................................................................23, 27

*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224............................25

*Whiteside v. Kimberly Clark Corp.,* 108 F.4th 771 (9th Cir. 2024).....................14

*Van v. Wal-Mart Stores, Inc.,* 583 Fed.Appx. 761 (9th Cir. 2014).......................27

1

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

2

3

<u>PAGE</u>

### <u>STATUTES</u>

4

Bus. & Prof. Code, §§ 17200, *et seq.,*
**(a/k/a "UCL")**...................................................................................*passim*

5

6  Bus. & Prof. Code, § 17200....................................................................15

7  Bus. & Prof. Code, § 17203....................................................................12

8  Bus. & Prof. Code, § 17204....................................................................12

9  Bus. & Prof. Code, § 17500...............................................................15, 26

10 Class Action Fairness Act of 2005
**(a/k/a "CAFA"),** Pub.L. No. 109-2, 119 Stat. 4...................................22

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>
### (Continued)

<u>PAGE</u>

### <u>FEDERAL RULES OF CIVIL PROCEDURE</u>

Fed.R.Civ.P. 8...........................................................................................................9

Fed.R.Civ.P. 8(a)(2)..................................................................................................9

Fed.R.Civ.P. 9(b)................................................................................................13-14

Fed.R.Civ.P. 12(b)(6)..........................................................................................9, 20

1  **I.    INTRODUCTION**

2      For the convenience of the Court and counsel, a redline version showing

3  changes from Plaintiff's FAC to Plaintiff's current 2ndAC is attached.

4      Defendants ask this Court to ignore Plaintiffs' averment that, "... all, or at

5  least a substantial part, of the events and/or omissions giving rise to the claims

6  asserted herein occurred within ... California." (*See,* 2ndAC, at ¶ 3; *cf.: ibid.,* at

7  ¶55; *cf.:* Δs' Mem., at 9:9. [All page references are to ECF / pdf page numbers.])

8  PayPal acquired the *Honey* business by acquiring Honey Science Corporation,

9  which only accounted for 1% of PayPal's revenue, as per its SEC Form 10-K.

10  (*See,* Π's accompanying RJN, at p. 58: "Our acquisition of Honey Science

11  Corporation ('Honey') contributed approximately one percentage point to the

12  [revenue] growth rate in 2020.")  While PayPal paid $4 billion for the *Honey*

13  business, PayPal's total assets were $70.379 billion, indicating that the *Honey*

14  business is a tiny fraction of PayPal's worldwide operations.  (*See,* Π's RJN, at pp.

15  74, 96.)  PayPal's principal office is in San Jose.  (*See,* Π's RJN, at p. 187.)  The

16  fact that PayPal has offices all over the world does not establish that any part of

17  its foreign operations involve the *Honey* business.  Notably, Honey Science

18  **Corporation** had operated out of Los Angeles.  (*See,* Π's RJN, at p. 181.)  When

19  PayPal acquired Honey Science **Corporation,** it set up **Defendant,** Honey

20  Science, **LLC,** whose principal offices are also in **Los Angeles.**  (*See,* Π's RJN,

21  at p. 184.)  There is nothing to suggest that Defendant, Honey Science, LLC, has

22  ever had any physical presence (or employees) outside of California.  Plaintiffs

23  have issued Interrogatory No. 10, which seeks the address at which the "Honey

24  Partnerships Team" does its work.  (*Cf.:* 2ndAC, at ¶ 37.)  Defendants have filed

25  a motion to stay discovery (ECF No. 67), and the text of Interrogatory No. 10 will

26  be included in Plaintiffs' forthcoming opposition thereto.

27      Defendants' assertion that the UCL claim, "... advances *the same legal*

28  *theories* ...", as the implied contract claim which the Court rejected is

---

**OPPO. TO MOT. TO DISMISS 2ndAC – P. 8**                    **5:25-cv-02850**

1  nonsensical (unless the Court concludes that the elements of a claim for breach

2  of implied contract are the same as the elements of a UCL claim). (*Cf.:* Δs' Mem.,

3  at 9:21.)

4

5  **II.    RESPONSE TO BACKGROUND**

6          Notwithstanding the fact that there is nothing to suggest that Defendant,

7  Honey Science, LLC, has any physical presence outside of California, Defendants

8  assert that, "Defendants Have a Presence in the U.K.". (*See,* Δs' Mem., at 10:11.)

9  Both Defendants report to the California Department of Corporations that their

10 principal offices are within California (PayPal in San Jose, and Honey Science in

11 Los Angeles) (*see,* Π's RJN, at pp. 184, 187), and neither Defendant challenges

12 the averment that both Defendants' principal places of business – **and**

13 **citizenship** – are California. (*Cf.:* 2^{nd}AC, at ¶¶ 11, 12.)

14

15 **III.   RESPONSE TO LEGAL STANDARD**

16         "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and

17         plain statement of the claim showing that the pleader is entitled to

18         relief,' in order to 'give the defendant fair notice of what the ... claim

19         is and the grounds upon which it rests,' *Conley v. Gibson,* 355 U.S.

20         41, 47 (1957). ... [A] complaint attacked by a Rule 12(b)(6) motion to

21         dismiss does not need detailed factual allegations ..."

22 *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *Cf.: Ashcroft v. Iqbal,*

23 556 U.S. 662, 678 (2009), *quoting, Twombly,* 550 U.S., at 555. ("[T]he pleading

24 standard Rule 8 announces does not require 'detailed factual allegations' ....")

25         Following *Twombly* and *Iqbal,* the Ninth Circuit has continued to hold that

26 courts are to:

27         "... accept as true all well-pleaded allegations of material fact, and

28         construe them in the *light most favorable* to the non-moving

1   party."

2   *Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).

3   (Emphasis added; citation omitted.)  *See also, Scanlon v. County of Los Angeles,*

4   92 F.4th 781, 796 (9th Cir. 2024) (judgment on the pleadings).  (Citation omitted.)

5   Following *Twombly* and *Iqbal,* a court must still, "... draw **<u>all</u>** reasonable

6   inferences in favor of the plaintiff." *In re Tracht Gut, LLC,* 836 F.3d 1146, 1150

7   (9th Cir. 2016).  (Emphasis added; citation omitted.)  A court must still, "... resolve

8   **<u>all</u>** doubts in the pleader's favor."  *Hebbe v. Pliler,* 627 F.3d 338, 340 (9th Cir.

9   2010).  (Emphasis added; citation omitted.)

10

11  **IV.    <u>ARGUMENT</u>**

12

13      **A.    <u>Application of UCL</u>**

14          Defendants ignore Plaintiffs' averment that, "... all, or at least a substantial

15  part, of the events and/or omissions giving rise to the claims asserted herein

16  occurred within ... California." (*See,* 2ndAC, at ¶ 3; *cf.:* Δs' Mem., at 14:9.)  This

17  averment, sufficient on its own, is supported by matter of which Plaintiff has

18  requested judicial notice (discussed above).  "[T]he UCL reaches ***any*** unlawful

19  business act or practice ***committed in California.***"  *Sullivan v. Oracle Corp.*

20  (2011) 51 Cal.4th 1191, 1208.  California's, "... state statutory remedies may be

21  invoked by out-of-state parties when they are harmed by wrongful conduct

22  occurring in California."  *Norwest Mortgage, Inc. v. Superior Court* (1999) 72

23  Cal.App.4th 214, 224-225, as quoted in, *Ehret v. Uber Technologies, Inc.,* 68

24  F.Supp.3d 1121, 1131 (N.D. Cal. 2014).  *Cf.: People v. Ashford University, LLC*

25  (2024) 100 Cal.App.5th 485, 524.  (Where, "... the actual law violations occurred

26  in this state, ... defendants fail to persuade us that the trial court violated

27  principles of extraterritoriality by awarding penalties based on their deceptive

28  statements to non-residents of California.")

B.    **UCL Claim**

1.    **Standing**

Defendants incorrectly assert that UCL standing requires that a plaintiff must have paid money directly to the defendant.  (*See,* Δs' Mem., at 16:21-23.) The decisions of California's courts control.  *See, AGK Sierra De Montserrat, L.P. v. Comerica Bank,* 109 F.4th 1132, 1136 (9th Cir. 2024).  "UCL restitution does **not** require money be paid *directly* to defendant." *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1340, *citing, Shersher v. Superior Court* (2007) 154 Cal.App.4th 1491, 1500.  (Emphasis added.)[1]  For example, in *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, the plaintiffs had not bought locks directly from the Kwikset company (and thus had paid no money directly to the Kwikset company) – instead they had bought the locks from retail stores (paying the stores for locks which the stores had *previously* purchased from the Kwikset company).  (That's the way retail sales and inventory work.)  In the case at bar, Plaintiffs have paid money *indirectly* to Defendants, through their "Partner" vendors.  (*See,* 2[nd]AC, at ¶42.)

Defendants cite the 5 January, 2011, federal decision in *Mattel, Inc. v. MGA Entertainment, Inc.,* 782 F.Supp.2d 911, 1012 (C.D. Cal. 2011), for the view that a loss of money is "ordinarily" demonstrated through proof that the plaintiff parted with some "identifiable sum".  (*See,* Δs' Mem., at 17:3-4.)  The Supreme Court's **subsequent, 27** January 2011, decision in *Kwikset, supra,* controls.  Under *Kwikset,* all that is required is that the plaintiff has suffered, "... some form of economic injury." *Kwikset,* 51 Cal.4th, at 323.

"There are innumerable ways in which economic injury from unfair

---

[1]    Footnote 30 in *Troyk* appears to preclude the argument Defendants now advance.  *See, Troyk,* 171 Cal.App.4th, at 1348 n.30.  The only requirement is that a plaintiff's money or property was lost, "as a result of", the proscribed conduct.  *See, ibid.,* at 1349.

1    competition may be shown. A plaintiff may (1) surrender in a

2    transaction more, or acquire in a transaction less, than he or she

3    otherwise would have ..."

4  *Kwikset,* 51 Cal.4th, at 323.  (*See,* 2[nd]AC, at ¶¶ 56-57.)  A UCL plaintiff has

5  standing even if the defendant has received nothing, so long as the defendant's

6  conduct has caused economic loss to the plaintiff.  *See, Kwikset,* 51 Cal.4th, at

7  336.  ("[T]he the economic injury that an unfair business practice occasions may

8  often involve a loss by the plaintiff without any corresponding gain by the

9  defendant, such as, for example, a diminishment in the value of some asset a

10  plaintiff possesses.")  Moreover eligibility for restitution is not even a requisite

11  for standing.  *See, Kwikset,* 51 Cal.4th, at 335-336.  ("[T]he standards for

12  establishing standing under [Business and Professions Code] section 17204 and

13  eligibility for restitution under section 17203 are wholly distinct.")  In the case

14  at bar, Plaintiffs have both standing, and eligibility for restitution, because

15  Plaintiffs' funds flowed to Defendants through their "Partner" vendors.

16    Lost profits is also a species of economic loss.  *See, North American*

17  *Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 777 n.8.  ("Although

18  purely economic loss usually occurs in the form of lost profits, it may also include

19  consequential damages, loss of expected proceeds, [or] lost opportunities ...")

20  Defendants misread *Dual Diagnosis Treatment Center, Inc. v. Blue Cross of*

21  *California,* 2018 WL 10072961 (C.D. Cal. 2018), wherein it was not discernable

22  from the complaint how the conduct of the, "... Defendants resulted in Plaintiffs

23  losing any opportunities in the first place."  (*See, ibid.,* at *11.)  (*See,* Δs' Mem.,

24  at 17:7-12.)  In the case at bar, Plaintiffs' 2[nd]AC, read as it must be (light most

25  favorable plus reasonable inferences), alleges that Plaintiffs lost the opportunity

26  to obtain the lowest prices precisely "because" of Defendants' wrongful conduct.

27  (*See,* 2[nd]AC, at ¶ 36.)

28    Defendants note that Plaintiffs have not yet identified specific transactions

1  in which Defendants' conduct harmed Plaintiffs.  (*See,* Δs' Mem., at 17:13-23.)

2  The information necessary to identify specific transactions is within the

3  ***exclusive*** possession of Defendants (and their "Partner" vendors) – this will be

4  the agreements and communications between Defendants (on the one hand) and

5  their "Partner" vendors (on the other hand) which will show when the *Honey*

6  browser knowingly failed to provide the promised highest discounts.  Plaintiffs

7  have issued Requests for Production Nos. 10 and 11, which seek production of

8  these agreements and communications.  Defendants have filed a motion to stay

9  discovery (ECF No. 67), and the text of Requests for Production Nos. 10 and 11

10 will be included in Plaintiffs' forthcoming opposition thereto.  Defendants should

11 not be heard to complain that Plaintiffs' 2ndAC lacks the precise information

12 which Defendants are refusing to disclose.

13 Even though the "fraudulent" prong of the UCL has nothing to do with

14 actual "fraud", the Ninth Circuit holds that a plaintiff must comply with

15 Fed.R.Civ.P. 9(b)'s particularity requirement – at least as to any allegations of

16 (actual) fraudulent conduct.  *See, Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1126-

17 1127 (9th Cir. 2009).  However, that requirement is "relaxed" where, as here, the

18 relevant information is within the defendant's exclusive possession and control:

19 "... Rule 9(b) may be relaxed as to matters within the opposing

20 party's knowledge.' *Moore v. Kayport Package Express, Inc.,* 885 F.2d

21 531, 540 (9th Cir. 1989).  Rule 9(b) only 'requires that plaintiffs

22 specifically plead those facts surrounding alleged acts of fraud to

23 which they can reasonably be expected to have access.' *Concha v.*

24 *London,* 62 F.3d 1493, 1503 (9th Cir. 1995).  As such, 'in cases where

25 fraud is alleged, we relax pleading requirements where the relevant

26 facts are known only to the defendant.' *Id.* In those cases, a 'pleading

27 is sufficient under Rule 9(b) if it identifies the circumstances

28 constituting fraud so that a defendant can prepare an adequate

1    <u>answer</u> from the allegations.' *Moore,* 885 F.2d at 540."

2    *Rubenstein v. Neiman Marcus Group LLC,* 687 Fed.Appx. 564, 567-568 (9th Cir.

3    2017). (Emphasis added.) *Cf.: Nayab v. Capital One Bank, N.A.,* 942 F.3d 480,

4    483-494 (9th Cir. 2019). ("[A]llegations based on information and belief may

5    suffice, so long as the allegations are accompanied by a statement of facts upon

6    which the belief is founded ..." [Citations, internal quot. mks., attrib. omitted.])

7    *See also, United States ex rel. Vatan v. QTC Medical Services, Inc.,* 721 Fed.Appx.

8    662, 663 (9th Cir. 2018), ***and the many cases cited therein.*** In the case at bar,

9    Plaintiffs' 2[nd]AC explains the basis for Plaintiffs' allegations. Defendants have

10   information sufficient to prepare an "adequate answer", which is all that is

11   required under *Moore, supra,* and *Rubenstein, supra.* The exhibits to Plaintiffs'

12   2[nd]AC provide additional detail. *See, Whiteside v. Kimberly Clark Corp.,* 108

13   F.4th 771, 786 (9th Cir. 2024). *Clancy v. The Bromley Tea Company,* 308 F.R.D.

14   564, 571-572 [standing] and 575-576 [Rule 9(b)] (N.D. Cal. 2013), sets out a

15   persuasive example of application of Rule 9(b) to cases such as the instant case.

16            **2.    <u>Actionable Misrepresentations</u>**

17       Defendants next assert that Plaintiffs have failed to identify any false

18   statements. (*See,* Δs' Mem., at 18:1-2.) But Plaintiffs **have** identified ***numerous***

19   false statements. (*See,* 2[nd]AC, at ¶¶ 18-20, 25-27, 33, 40, 50.) However, Plaintiffs

20   cannot even be required to allege false statements because it is only necessary to

21   prove that, "... members of the public are likely to be deceived ..." – there is no

22   requirement of actual falsehood. *In re Tobacco II Cases* (2009) 46 Cal.4th 298,

23   312. (Citations, internal quot. mks. omitted.) It has been held that, "[a]

24   fraudulent practice under the UCL ... can be shown even without allegations of

25   actual deception, reasonable reliance and damage." *Lueras v. BAC Home Loans*

26   *Servicing, LP* (2013) 221 Cal.App.4th 49, 81. (Citation, attribution, internal quot.

27   mks. omitted.) It has been held that, "[a] violation can be shown even if **<u>no one</u>**

28   was actually deceived, relied upon the fraudulent practice, **<u>or sustained any</u>**

---

**OPPO. TO MOT. TO DISMISS 2[nd]AC – P. 14**          **5:25-cv-02850**

1  **damage.**" *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1274.

2  (Emphasis added; citations, internal quot. mks. omitted.)

3      Defendants' deceptive conduct included both its express statements, and

4  its ***non-disclosure*** of its agreements with its "Partner" vendors that it would

5  deliberately refrain from showing the most favorable publicly-available coupons.

6  Recall that Defendants ***actively discouraged*** Plaintiffs from conducting their

7  own searches, to prevent them from discovering that the Honey browser did not

8  operate as represented:

9        "Still looking for codes on your own? We'll search for them **so you**

10       **don't have to.** If we find working codes, we'll automatically apply

11       the best one to your cart."

12 (*See,* 2nd AC, at ¶¶ 26-27. [Emphasis added.])  The phrases, "We'll search for them

13 ...", and "If we find working codes ...", clearly represent that Defendants would

14 actually look for the codes.  Plaintiffs' 2nd AC avers that Defendants, instead, hid

15 codes pursuant to secret agreements with their "Partner" vendors.

16     Even if Plaintiffs had not adequately pleaded the "fraudulent" prong of the

17 UCL (although they have), they have adequately pleaded the "unlawful" and

18 "unfair" prongs, which are separate from and independent of the "fraudulent"

19 prong.  (*See,* 2nd AC, at ¶¶ 54-55.)

20     Defendants next assert that Plaintiffs have no claim because Defendants'

21 statements were so generalized, vague and unspecified, and so exaggerated as to

22 preclude reliance by consumers.  (*See,* Δs' Mem., at 19:14-21.)  But the very

23 decision that Defendants cite, "... declines to read a reliance requirement into the

24 'as a result of' language in either Section 17200 or Section 17500'."  *See,*

25 *Anunziato v. eMachines, Inc.,* 402 F.Supp.2d 1133, 1139 (C.D. Cal. 2005).  There

26 was nothing generalized or vague about the statements quoted in the 2nd AC, and

27 the failure to disclose to *Honey* users the fact that Defendants had agreements

28 with their "Partner" vendors to withhold some publicly-available discount codes

further establishes that Defendants' conduct is "likely to deceive the public". *Cf.: Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 951. ("[UCL] prohibit[s] not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." [Cleaned up; citation omitted.])    Nor do Defendants' statements constitute mere puffery.  In California jurisprudence, "[a] statement is considered puffery if the claim is ***extremely unlikely*** to induce consumer reliance." *Demetriades v. Yelp, Inc.* (2014) 228 Cal.App.4th 294, 311, *quoting, Newcal Industries, Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1053 (9th Cir. 2008). (Emphasis by Plaintiffs.)  An example of puffery might be to state that these are the "best strawberries", or that a company places a "high priority" on product development. *Cf.: Glen Holly Entertainment, Inc. v. Tektronix Inc.,* 343 F.3d 1000, 1015 (9th Cir. 2003).   In the case at bar, Defendants' statements specified that Defendants would perform the coupon search on the users' behalf ("We'll search for them so you don't have to"), and would apply the discount code with the lowest price ("If we find working codes, we'll automatically apply the best one to your cart").  This includes an implied representation that Defendants will conduct a good-faith search; in reality, Defendants had undisclosed agreements with "Partner" vendors to ***not*** do that.   While the UCL requires nothing like actual fraud, it is noted that even a statement like, "Speed of deployment in months not years," is sufficiently specific to support a claim for actual fraud.  *See, Grouse River Outfitters, Ltd. v. Oracle Corporation,* 848 Fed.Appx. 238, 243 (9th Cir. 2021). So, too, is a claim that software, "... eliminates the need to back-up, upgrade, migrate, tune, or replace software." *See, ibid.,* 848 Fed.Appx., at 244. (Just as *Honey* claimed to eliminate the users' need to search for discount codes on their own, which was the whole *raison d'etre* of the *Honey* browser.)  *See also, Demetriades, supra,* 228 Cal.App.4th, at 311, holding that statements such as "most trusted" went, "... beyond mere expressions of opinion

1  or puffery and hyperbole ...", and were actionable under the UCL.  Decisions

2  under The Illinois Securities Law are inapposite.  (*Cf.:* Δs' Mem., at 20:5-8.)

3       While it may be opinion whether a company offers the "best" strawberries,

4  the "best" discount code unambiguously means the one affording the lowest price.

5  Because the 2ⁿᵈAC, makes no reference to any "free shipping coupons", the

6  hypothetical existence of any such thing is irrelevant to the instant motion.  (*Cf.:*

7  Δs' Mem., at 20:21.)

8            **3.   <u>Reliance</u>**

9       Defendants incorrectly assert that Plaintiffs have failed to allege reliance.

10  (*See,* Δs' Mem., at 21:13-14.)  Plaintiffs' 2ⁿᵈAC ***does*** allege reliance.  (*See,* 2ⁿᵈAC,

11  at ¶ 34.)  "[A] plaintiff [does not] need to demonstrate individualized reliance on

12  specific misrepresentations to satisfy the reliance requirement."   *Tobacco II*

13  *Cases,* 46 Cal.4th, at 327.  *Cf.: Hale v. Sharp Healthcare* (2010) 183 Cal.App.4th

14  1373, 1385-1386.  (Averment that plaintiff was "expecting" to be charged regular

15  rates constituted sufficient averment of reliance: "We see no utility in requiring

16  Hale to amend her complaint to exchange the term 'expecting' for the term

17  'relying'.")  The misrepresentation (or nondisclosure) need only, "... play[] a

18  substantial part ...", influencing the plaintiff's decision – it need not be, "... even

19  the predominant or decisive factor ..." *Tobacco II Cases,* 46 Cal.4th, at 326.

20        "Moreover, ***a presumption, or at least an inference, of reliance***

21        arises wherever there is a showing that a misrepresentation was

22        material. [Citations.] A misrepresentation is judged to be 'material'

23        if 'a reasonable man would attach importance to its existence or

24        nonexistence in determining his choice of action in the transaction

25        in question' [citations], and as such ***materiality is generally a***

26        ***question of fact*** unless the 'fact misrepresented is so obviously

27        unimportant that the jury could not reasonably find that a

28        reasonable man would have been influenced by it.' [Citation.]"

*Tobacco II Cases,* 46 Cal.4th, at 327. (Emphasis by Plaintiffs; internal quotation marks, citation omitted.) *See also, Lagrisola v. North American Financial Corp.* (2023) 96 Cal.App.5th 1178, 1201. ("Alleging a material misrepresentation or omission gives rise to a presumption or inference of reliance. ... And materiality is a question of fact not generally subject to resolution on ... [a challenge to the pleadings]." [Citations omitted.]) Plaintiffs in the case at bar are entitled to that presumption / inference.

Defendants incorrectly argue that there could be no reliance upon the e-mail that was sent after the browser extension was downloaded (which e-mail was only a small part of Defendants' disinformation campaign). (*See,* Δs' Mem., at 22:14-15.) This argument is incorrect because, after downloading the browser extension, the *Honey* user would have to click on the "Honey" button ***each time a purchase was made*** to have the browser extension (pretend to) perform a search for the publicly-available discount code affording the lowest purchase price. Defendants received compensation from the "Partner" vendors only when a purchase was made after the user clicked on the "Honey" button. Thus, Plaintiffs relied when they downloaded the browser extension, ***and each time they used it in making a purchase.***

### 4. <u>Measure of Recovery</u>

Defendants incorrectly assert that the relief they are seeking cannot be recovered under the UCL. (*See,* Δs' Mem., at 23:1-23.) Defendants assert that restitutionary recovery is measured by the defendant's gain, rather than by the plaintiff's loss. (*See,* Δs' Mem., at 23:21-23.) Even if Plaintiffs have misstated the measure of restitutionary recovery, this would not render the complaint defective. Plaintiffs' 2nd AC avers that Defendants ***have*** gained by their wrongful conduct. (*See,* 2nd AC, at ¶ 42.)

Defendants incorrectly assert that Plaintiffs must have, but did not have, a "vested interest" in the money they seek to recover, citing *Korea Supply Co. v.*

1   *Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1149. (*See*, Δs' Mem., at 24:7-19.)

2   When Plaintiffs paid money to Defendants' "Partner" vendors (at the time of a

3   purchase), they were paying over ***their own*** funds; a portion of ***Plaintiffs' own***

4   ***funds*** was then forwarded to Defendants' from the "Partner" vendors.  Thus, it

5   is ***Plaintiffs' own funds*** that have ended up in Defendants' hands.  That is in

6   fact Defendants' business model. (*See*, 2nd AC, at ¶¶ 40, 42.)

7       Defendants cite *Hambrick v. Healthcare Partners Medical Group, Inc.*

8   (2015) 238 Cal.App.4th 124, 156-157. (*See*, Δs' Mem., at 25:1-8.)  In *Hambrick,*

9   the plaintiff had sued three entities **(the "HCP Defendants"),** asserting that

10  they were operating without a required license.  *See, Hambrick,* 238 Cal.App.4th,

11  at 132.  The trial court had abstained from adjudicating a UCL claim on grounds

12  that adjudication of the claims asserted would require, "... a regulatory decision

13  involving complex economic policy considerations that should be made by ... [the

14  California Department of Managed Health Care]," ***and the court of appeal***

15  ***affirmed the abstention.*** *See, ibid.,* at 133.

16      In *Hambrick,* the plaintiff had no privity with the HCP Defendants –

17  instead, the plaintiff had paid her premiums to some other, unnamed, "... health

18  care service plan other than HCP ..." **(hereinafter "Hambrick's HMO").** *See,*

19  *ibid.,* at 134.[2]  Hambrick's HMO had then contracted with HCP to assume

20  liability for costs of Hambrick's medical treatments.  *See, ibid.,* at 134.  In

21  exchange for the HCP Defendants' assumption of liability for costs of Hambrick's

22  medical treatments, Hambrick's HMO paid the HCP Defendants a "capitation"

23  (*i.e.,* per-person fee for each plan member).  *See, ibid.,* at 137 and n.9.  Hambrick

24  had alleged that HCP then wrongfully limited her access to the health care

25  providers otherwise available through Hambrick's HMO (to limit HCP's

26

27  ――――――――――

28      [2]    "Health care service plans are commonly referred to as health
    maintenance organizations or HMOs." *See, ibid.,* at 132 n.2.

1  expenditures and increase HCP's profits), and Hambrick had sought restitution

2  of HCP's "ill-gotten gains". *See, ibid.,* at 135. "Specifically, Hambrick s[ought]

3  to recover 'all capitation [which had been] paid to [the HCP defendants] ...'," by

4  Hambrick's HMO. *See, ibid.,* at 156. The court of appeal wrote that the

5  capitation payments which Hambrick's HMO had paid to the HCP Defendants

6  were, "... not recoverable by Hambrick as restitution because this is not money

7  in which Hambrick has an ownership interest or that was 'lost by a plaintiff'."

8  *See, ibid.,* at 157. *Hambrick* is distinguishable from the instant case because in

9  the instant case, Plaintiffs' funds were paid to Defendants through Defendants'

10  "Partner" vendors. As noted above, "UCL restitution does **not** require money be

11  paid *directly* to defendant." *Troyk, supra,* 171 Cal.App.4th, at 1340, *citing,*

12  *Shersher, supra,* 154 Cal.App.4th, at 1500.

13        Finally, as noted above, eligibility for restitution is not even a requisite for

14  standing. *See, Kwikset,* 51 Cal.4th, at 335-336.

15        Defendants incorrectly assert that, "... Plaintiffs have not pleaded *any* valid

16  claim for relief ..." (*See,* Δs' Mem., at 25:9-10.) Plaintiffs' 2ndAC has pleaded a

17  UCL claim under each of the three prongs of the UCL.

18

19        **C.    California Law Applies**

20        Defendants next assert that UK law applies. (*See,* Δs' Mem., at 25:11-15.)

21  Plaintiffs dispute that this may be resolved on a challenge to the pleadings. *Cf.:*

22  *Urban v. Tesla, Inc.,* 98 F.Supp.3d 1124, 1133 (N.D. Cal. 2023). ("Application of

23  California's three-step governmental test requires a case- and fact-specific

24  analysis that will seldom be amenable to conclusive resolution on a Rule 12(b)(6)

25  motion.") "[S]uch a fact-heavy inquiry should occur during the class certification

26  stage, after discovery." *In re SanDisk SSDs Litigation,* 736 F.Supp.3d 786, 792

27  (N.D. Cal. 2024), *quoting, Clancy, supra,* 308 F.R.D., at 572.

28        "Significantly, *Mazza* [*v. American Honda Motor Co., Inc.,* 666 F.3d

581 (9th Cir. 2012)] was decided on a motion for class certification, not a motion to strike. At this stage of the instant litigation, a detailed choice-of-law analysis would be inappropriate. *See Donohue v. Apple, Inc.,* 871 F.Supp.2d 913, 922 (N.D. Cal. 2012) ('Although *Mazza* may influence the decision whether to certify the proposed class and subclass, such a determination is premature [at the pleading stage].'). Since the parties have yet to develop a factual record, it is unclear whether applying different state consumer protection statutes could have a material impact on the viability of Plaintiffs' claims."

*In re Clorox Consumer Litigation,* 894 F.Supp.2d 1224, 1237 (N.D. Cal. 2012). *See also, A.J. v. LMND Medical Group, Inc.,* 2024 WL 4579143, *2 (N.D. Cal. 25 Oct. 2024).

Assuming, *arguendo,* this court could decide on the pleadings whether California or UK law will apply, this Court should apply California law. Because each Plaintiff transacted directly with California companies (*i.e.,* Defendants), Defendants have the burden to establish that UK law should apply. *See, Mazza, supra,* 666 F.3d, at 590.

The parties agree that a federal court sitting in diversity will apply the choice-of-law rules of the forum state – here California. (*Cf.:* Δs' Mem., at 25:12-14.) In considering the application of California's choice-of-law rules, it must be remembered that: (a) "... all, or at least a substantial part, of the events and/or omissions giving rise to the claims asserted herein occurred within ... California," (*see,* 2[nd]AC, at ¶ 3; *cf.: ibid.,* at ¶55), and (b) Defendants are ***citizens of California.*** It must also be remembered that the Supreme Court holds that, "... the UCL reaches ***any*** unlawful business act or practice ***committed in California.***" *Sullivan, supra,* 51 Cal.4th, at 1208. (Emphasis added.)

In order to consider potential application of non-California law, the

1  differences between California's law and the non-California law must be

2  "material". *Mazza, supra,* 666 F.3d, at 590. The *Mazza* panel interpreted this to

3  require that, "[a]ny differences in [the states'] laws must have a ***significant***

4  ***effect*** on the ***outcome*** of the trial in order to present an actual conflict ..." *See,*

5  *Mazza,* 666 F.3d, at 590-591. (Emphasis by Plaintiffs; citation, internal quotation

6  marks, attribution omitted.) An example of a material difference would be where

7  one jurisdiction would hold that an action was timely brought, and the other

8  would not. *See, e.g., McCann v. Foster Wheeler LLC* (2010) 48 Cal.4th 68, 75; *see*

9  *also, Cassirer v. Thyssen-Bornemisza Collection Foundation,* 89 F.4th 1226, 1235

10  *("Cassirer VII"),* (9th Cir. 2024), *vacated and remanded to address supervening*

11  *legislation,* 145 S.Ct. 1331 (2025).

12      Defendants assert that class actions are available in California, and that

13  this creates a "difference". (*See,* Δs' Mem., at 26:12-22.) Defendants cite *Baton*

14  *v. Ledger SAS,* 740 F.Supp.3d 847, 895 (N.D. Cal. 2024), in which California's, "...

15  public policy [ ] strongly favor[ing] consumer class actions ...", was held sufficient

16  to overcome ***a forum selection clause.*** (*Quoting, Doe 1 v. AOL LLC,* 552 F.3d

17  1077, 1083 (9th Cir. 2009).) (This supports California's interest in applying its

18  own laws.) In *Gustafson v. BAC Home Loans Servicing, LP,* 294 F.R.D. 529, 538-

19  539 (C.D. Cal. 2013), the court merely mentioned availability of class actions as

20  one of ***many*** variations among the laws of ***several*** states, but the court neither

21  relied upon that factor, nor even acknowledged that the availability of class-

22  action treatment is ***procedural,*** and not substantive. (Indeed, here federal law

23  controls the availability of class treatment, even though CAFA jurisdiction is a

24  species of diversity jurisdiction.) *Gianino v. Alacer Corp.,* 846 F.Supp.2d 1096,

25  1100-1101 (C.D. Cal. 2012), is the same. (*Cf.:* Δs' Mem., at 26:21-22.)

26      "Only if the trial court determines that the laws are materially

27      different *and* that each state has an interest in having its own law

28      applied, thus reflecting an actual conflict, must the court take the

1  final step and select the law of the state whose interests would be

2  'more impaired' if its law were not applied. [Citations.]  In making

3  this comparative impairment analysis, the trial court must

4  determine 'the relative commitment of the respective states to the

5  laws involved' and consider 'the history and current status of the

6  states' laws' and 'the function and purpose of those laws'."

7  *Washington Mutual Bank, FA v. Superior Court* (2001) 24 Cal.4th 906, 920.

8  (Italics in original.)  The balancing of impairments is not conducted on a level

9  playing field, however.  *See, Engel v. CBS Inc.,* 981 F.2d 1076, 1081 (9th Cir.

10  1992). ("The balancing of impairment is slightly weighted by California's general

11  preference for applying its own law.")

12      Defendants refer to The Consumer Protection from Unfair Trading

13  Regulations 2008 **("CPUT"),** without placing the same before the Court.

14  Defendants assert that the CPUT imposes criminal penalties. (*See,* Δs' Mem., at

15  27:4.)  It is not clear how a criminal statute might be relevant to choice of law.

16  Defendants assert that the CPUT, "... allows for a 'civil right of redress for

17  consumers against traders for some practices prohibited by CPUT'." (*See,* Δs'

18  Mem., at 27:2-3.)  It is not clear from whence Defendants obtained the quoted

19  material, but Plaintiffs' undersigned counsel has not located the quoted language

20  within the text of the CPUT.

21      Defendants assert that under CPUT, "[t]he false or deceptive information

22  must also cause or be likely to cause the average consumer to take a

23  transactional decision they would not have taken otherwise." (*See,* Δs' Mem., at

24  26:22-26.)  The quoted language is not materially different from California's

25  requirement that conduct must merely be "likely to deceive the public".

26  Defendants have failed to proffer language from within the CPUT which would

27  create any civil remedy, or which sets out the elements of any claim for civil

28  remedies as may exist, or the civil remedies which may be available under the

1  CPUT.  Defendants have thus failed to carry their burden to show that UK law
2  would be materially different.

3      Even if Defendants had established that UK law is materially different
4  (they have not), California's interest is greater than the UK's.  Defendants
5  assertion that, "... the U.K. is the place of the alleged wrong ..." (*see,* Δs' Mem., at
6  29:23), ignores Plaintiffs' factual averments to the contrary, which must be taken
7  as true.  (*See,* 2ⁿᵈAC, at ¶ 3; *cf.: ibid.,* at ¶55.) Defendants also studiously ignore
8  the fact that they are ***citizens of California,*** which strongly implicates
9  California's interest in regulating the conduct of its own citizens within its own
10 borders.  "[A] jurisdiction ordinarily has the predominant interest in regulating
11 conduct that occurs within its borders." *Mazza, supra,* 666 F.3d, at 592, quoting,
12 *McCann, supra,* 48 Cal.4th, at 97.  It is well established that California's, "...
13 state statutory remedies may be invoked by out-of-state parties when they are
14 harmed by wrongful conduct occurring in California." *Norwest Mortgage, supra,*
15 72 Cal.App.4th, at 224-225.  The California Supreme Court has declared – as to
16 the UCL in particular – that "... the UCL reaches ***any*** unlawful business act or
17 practice ***committed in California.***" *Sullivan, supra,* 51 Cal.4th, at 1208.
18 (Emphasis added.)   California has thus declared a strong interest in the
19 application of the UCL to its own citizens as to their conduct within this State.
20 At least one well-reasoned decision from within this District recognized the
21 special importance to California of enforcement of the UCL – especially in cases
22 in which no defendant (proponent of foreign law) is a citizen of the foreign
23 jurisdiction.  *See, In re TFT–LCD (Flat Panel) Antitrust Litigation,* 2013 WL
24 6327490, *5-*6 and n.3 (N.D. Cal. 03 Dec. 2013).

25     "[A] California court may properly apply the ... [UCL] to
26      non-California members of a nationwide class where the defendant
27      is a California corporation and ***some or all*** of the challenged conduct
28      emanates from California."

---

**OPPO. TO MOT. TO DISMISS 2ⁿᵈAC – P. 24**          **5:25-cv-02850**

*Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 243. (Emphasis added.)

"[N]ormally, even in cases involving foreign elements, the court should be expected, as a matter of course, to apply the rule of decision found in the law of the forum." *Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 581. (Citation, internal quotation marks omitted.) The court is to consider, "... the interests of ***the litigants*** and the involved states ..." *Hurtado,* 11 Cal.3d, at 581. (Emphasis added.) *See also, Engel, supra,* 981 F.2d, at 1081, *slightly mis-quoting, Reich v. Purcell* (1967) 67 Cal.2d 551, 553. (Court is to, "... search to find the proper law to apply based upon the interests of the litigants in [*sic* – original was "and"] the involved states ...") In the case at bar, Defendants can have no judicially-cognizable interest in avoiding the application of their own state's laws. And the burden rests upon the proponent of foreign law to, "... demonstrate that the ... [a foreign state's] rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply ..." *Hurtado,* 11 Cal.3d, at 581. "California's more favorable laws may properly apply to benefit nonresident plaintiffs when their home states have no identifiable interest ***in denying such persons full recovery.***" *Clothesrigger, Inc. v. GTE Corp.* (1987) 191 Cal.App.3d 605, 616, *citing, Hurtado,* 11 Cal.3d, at 580-581. (Emphasis by Plaintiffs.) Defendants have offered no basis for this Court to conclude that the UK has any identifiable interest in denying Plaintiffs full recovery.

> "California ... has a legitimate and compelling interest in preserving a business climate free of fraud and deceptive practices ... and recognize[s] the importance of extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California."

*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1064, *citing, Clothesrigger, supra.* The Supreme Court noted with approval that

the *Clothesrigger* panel had, "... recogniz[ed] that 'California may have an important interest in applying its law to punish and deter the alleged wrongful conduct'." *Diamond Multimedia,* 19 Cal.4th, at 1065, *quoting, Clothesrigger, supra,* 191 Cal.App.3d, at 615.

> "California recognizes that with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest. [Citations.] California considers the 'place of the wrong' to be the state where the ***last*** event necessary to make the actor liable occurred."

*Mazza, supra,* 666 F.3d, at 593, *citing, inter alia, McCann, supra,* 48 Cal.4th, at 94 n.12. (Emphasis by Plaintiffs.) In the case at bar, the ***last*** event necessary to make Defendants liable was performed by Defendants within California each time they performed their agreements with their "Partner" vendors to withhold from customers otherwise publicly-available discount codes that would have provided a lower purchase price. The ***last*** event necessary to make Defendants liable was Defendants' inputting code into their computer for each product as to which otherwise publicly-available discount codes were withheld. This occurred on multiple occasions, and long after the deceptive statements which had induced Plaintiffs to download the *Honey* browser extension in the first place.

It is also important to note that, while the place of the wrong may have the "predominant interest", that criterion is only one factor to be considered in the comparative interest analysis. *See, Engel, supra,* 981 F.2d, at 1081 n.1. Recall, too, that, "[t]he balancing of impairment is slightly weighted by California's general preference for applying its own law." *Engel,* 981 F.2d, at 1081.

Notably, Business and Professions Code section 17500 expressly provides for application of California law where anyone has, "... cause[d] to be made or disseminated from this state before the public in any state, ... including over the Internet ..." (*See,* Bus. & Prof. Code, § 17500; *cf.: Tobacco II Cases, supra,* 46 Cal.

1  4th, at 312 n.8. ["A violation of the UCL's fraud prong is also a violation of the
2  false advertising law."])

3       As noted above, Defendants have neither shown that UK law is materially
4  different from California law, or that the UK would have some greater interest
5  than California in having its own laws applied.  Even if Defendants had shown
6  both, the motion to dismiss would be denied if the facts alleged in Plaintiffs'
7  2<sup>nd</sup>AC were to state a claim under Defendants' proffered UK law.  "[A] ...
8  complaint should not be dismissed if it states a claim under ***any*** legal theory,
9  even if the plaintiff erroneously relies on a ***different*** legal theory."  *Van v.*
10 *Wal-Mart Stores, Inc.,* 583 Fed.Appx. 761, 763 (9th Cir. 2014), *quoting, Haddock*
11 *v. Board of Dental Examiners of California,* 777 F.2d 462, 464 (9th Cir. 1985).
12 (Emphasis by Plaintiffs.)

13

14     **D.    Leave to Amend**

15     Defendants describe Plaintiffs' 2<sup>nd</sup>AC as a "third attempt".  (*See,* Δs' Mem.,
16 at 9:3.)  Plaintiffs' FAC was filed before any responsive pleading.  (*See,* ECF No.
17 1, at 2:14-15.)  This Court declined to rule upon the adequacy of Plaintiffs' FAC
18 regarding the UCL claim, beyond its omission of an averment that the wrongful
19 conduct occurred in California.  (*See,* ECF No. 57, at 12:27 n.7.)  If this Court
20 were to hold that Plaintiffs' UCL claim is deficient, Plaintiffs should be permitted
21 an opportunity to cure any deficiencies the Court may find.  If this Court were to
22 hold that the UCL cannot apply due to California's choice-of-law rules, Plaintiffs
23 should be permitted to seek to assert other claims (*e.g.,* potentially unjust
24 enrichment).  Notably, a ruling that the UCL cannot apply due to California's
25 choice-of-law rules would not preclude assertion of other claims arising under
26 California law.  *See, Washington Mutual, supra,* 24 Cal.4th, at 920.  ("[A]
27 separate conflict of laws inquiry must be made with respect to each issue in the
28 case." [Citations omitted.])  Finally, even if this Court were to hold categorically

1  (now or at a later stage of this litigation) that UK law will control every issue,

2  Plaintiffs should be permitted an opportunity to re-plead under UK law.

3

4  Dated: 30 September 2025                    Respectfully submitted,

5                                             DAVID J. GALLO
                                             **LAW OFFICES OF DAVID J. GALLO**
6                                             12702 VIA CORTINA, SUITE 500
                                             DEL MAR, CALIFORNIA  92014-3769
7                                             Telephone: (858) 509-3652

8                                                    /s/ David J. Gallo
                                             _____
9                                             By:   David J. Gallo,
                                                    California Bar No. 127722
10                                                   Attorneys for all Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  [OPPO to MOT to DISMISS (2nd).wpd]

---

**OPPO. TO MOT. TO DISMISS 2ndAC – P. 28**                    **5:25-cv-02850**