DAVID J. GALLO *(California Bar No. 127722)*
**LAW OFFICES OF DAVID J. GALLO**
12702 VIA CORTINA, SUITE 500
DEL MAR, CALIFORNIA  92014
Telephone: (858) 509-3652

Attorneys for all Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM CAMPBELL,<br>DANIEL JENKS-BERRYMAN,<br>DECLAN LYNN,<br>ADITHYA NARAYANAN,<br>JAMES POAD,<br>DAN SORAHAN,<br>ALAN SUTCH,<br>    individually and on behalf of<br>    all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>HONEY SCIENCE, LLC,<br>    a Delaware limited liability<br>    company,<br>PAYPAL, INC.,<br>    a Delaware corporation, and<br>DOES 1 through 50,<br><br>        Defendants. | Case Number:<br><br>**5:25-cv-02850**<br><br><br>**CLASS ACTION**<br><br><br>**OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Hearing:<br><br>    Date: 21 MAY 2026<br>    Time: 10:00 a.m.<br>    Dept.: Courtroom 8, 4th Floor<br>    Judge: Hon. P. Casey Pitts |

**OPPO. TO MOT. TO DISMISS 3rd AC – P. 1**          **5:25-cv-02850**

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION..................................................................................6

II.     CLARIFICATION................................................................................6

III.    UNFAIR COMPETITION LAW...........................................................7

    A.      Standing...................................................................................7

    B.      Reliance....................................................................................9

    C.      Likely to Deceive the Public..................................................12

    D.      Plaintiffs Have Cured the Deficiency Found by the Court.............17

    E.      Injunctive Relief.....................................................................18

IV.     EQUITABLE RESTITUTION FOR UNJUST ENRICHMENT...............19

V.      INVASION OF PRIVACY...................................................................21

VI.     LEAVE TO AMEND...........................................................................25

CONCLUSION..............................................................................................25

## TABLE OF AUTHORITIES

**PAGE**

### CASES

*AGK Sierra De Montserrat, L.P. v. Comerica Bank,*
109 F.4th 1132 (9th Cir. 2024)....................................................................14

*Anunziato v. eMachines, Inc.,* 402 F.Supp.2d 1133 (C.D. Cal. 2005).................13

*Astiana v. Hain Celestial Group, Inc.,* 783 F.3d 753 (9th Cir. 2015)..............19-20

*Bacon v. Woodward,* 104 F.4th 744 (9th Cir. 2024)...................................25

*Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255.......................12

*Biederman v. FCA US LLC,* 765 F.Supp.3d 920 (N.D. Cal. 2025)...............14-16

*Cattie v. Wal-Mart Stores, Inc.,* 504 F.Supp.2d 939 (S.D. Cal. 2007)................13

*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217.........................................10

*Collins v. eMachines, Inc.* (2011) 202 Cal.App.4th 249.....................................20

*Concha v. London,* 62 F.3d 1493 (9th Cir. 1995)......................................7

*County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533.......................21

*Davidson v. Kimberly–Clark Corporation,*
889 F.3d 956 (9th Cir. 2018)........................................................................18

*Demetriades v. Yelp, Inc.* (2014) 228 Cal.App.4th 294..................................14-16

*Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310....................20

*Doe v. Vaidyaji Priyanka,* __ F.Supp.3d __, __;
2026 WL 26056 (N.D. Cal. 2026)................................................................11

*In re Facebook, Inc. Internet Tracking Litigation,*
956 F.3d 589 (9th Cir. 2020).................................................................20-25

*Folgelstrom v. Lamps Plus, Inc.* (2011) 195 Cal.App.4th 986...........................24

*Ghirardo v. Antonioli* (1996) 14 Cal.4th 39.....................................................21

*Hartford Casualty Ins. Co.*
*v. J.R. Marketing, L.L.C.* (2015) 61 Cal.4th 988...........................................21

*Hebbe v. Pliler,* 627 F.3d 338 (9th Cir. 2010)........................................11

*Hodgers-Durgin v. de la Vina,* 199 F.3d 1037 (9th Cir. 1999)............................18

*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939.........................................................14

## TABLE OF AUTHORITIES
### (Continued)

**PAGE**

*Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988 (9th Cir. 2018)....................22

*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134.................17

*Krueger v. Wyeth, Inc.,* 2019 WL 4785862 (S.D. Cal. 01 Oct. 2019)..................13

*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49..............12

*McGee v. S-L Snacks National,* 982 F.3d 700 (9th Cir. 2020)............................18

*Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531 (9th Cir. 1989)......................7

*In re Natera Prenatal Testing Lit.,* 664 F.Supp.3d 995 (N.D. Cal. 2023)...........19

*Nayab v. Capital One Bank, N.A.,* 942 F.3d 480 (9th Cir. 2019)..........................7

*Newcal Industries, Inc. v. Ikon Office Solution,*
513 F.3d 1038 (9th Cir. 2008)..................................................................14

*O'Grady v. Merchant Exchange Productions, Inc.*
(2019) 41 Cal.App.5th 771.......................................................................20

*Popa v. Microsoft Corporation,* 153 F.4th 784 (9th Cir. 2025)........................24-25

*Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.*
(2018) 29 Cal.App.5th 230.......................................................................21

*Richards v. Centripetal Networks, Inc.,*
709 F.Supp.3d 914 (N.D. Cal. 2024).....................................................19

*Sanford v. MemberWorks, Inc.,* 625 F.3d 550 (9th Cir. 2010).............................7

*Sepanossian v. National Ready Mixed Concrete Co.*
(2023) 97 Cal.App.5th 192...................................................................19-20

*Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859.............................16

*Shersher v. Superior Court* (2007) 154 Cal.App.4th 1491.................................17

*Summers v. Earth Island Institute,* 555 U.S. 488 (2009).................................18

*In re Tobacco II Cases* (2009) 46 Cal.4th 298...........................................9-10, 12

*In re Tracht Gut, LLC,* 836 F.3d 1146 (9th Cir. 2016).........................................11

*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305............................17

*White v. PayPal Holdings Inc., __ F.Supp.3d __;*
2026 WL 496712 (N.D. Cal. 23 Feb. 2026)...........................................22

## TABLE OF AUTHORITIES
### (Continued)

**PAGE**

### STATUTES

Bus. & Prof. Code, §§ 17200, *et seq.*,
**(a/k/a "UCL")**.................................................6, 9-10, 12-14, 16-20

Bus. & Prof. Code, § 17200...................................................13

Bus. & Prof. Code, § 17204...................................................13

Bus. & Prof. Code, §§ 17500, *et seq.*,
**(a/k/a "FAL")**...................................................13

Bus. & Prof. Code, § 17500...................................................13

### VOTER INITIATIVES

Proposition 64 (adopted 02 November 2004)........................................20

### CONSTITUTIONAL PROVISIONS

U.S. Const., art. III.......................................................9, 20

### FEDERAL RULES OF CIVIL PROCEDURE

Fed.R.Civ.P. 9(b).........................................................7

### ATTORNEY GENERAL OPINIONS

Op.Cal.Atty.Gen. 20-303 (March 10, 2022), 2022 WL 815641...........................24

### OTHER AUTHORITY

Edelman, Benjamin, and Julian Wright:
Price Coherence and Excessive Intermediation.
[Harvard] *Quarterly Journal of Economics* 130, no. 3 (August 2015)...............8-9

## I.    INTRODUCTION

For the convenience of the Court and counsel, a redline version showing changes from Plaintiffs' 2ⁿᵈAC to Plaintiffs' 3ʳᵈAC is provided at Exhibit "A", *post.*

By their prior motion to dismiss, Defendants asserted various alleged deficiencies to Plaintiffs' 2ⁿᵈAC.  This Court rejected Defendants' arguments regarding extraterritoriality, but held that the 2ⁿᵈAC lacked allegations sufficient to establish a UCL violation.  (*See,* Order of 1 December 2025, ECF No. 86, at 3:13-17.)  This Court concluded that the 2ⁿᵈAC sought recovery of damages (not recoverable under the UCL), while noting that the 2ⁿᵈAC did not seek restitution of the commission that Defendants collected out of the purchase prices paid by Plaintiffs.[1]  (*See, ibid.,* ECF No. 86, at 5:6-11, and 6:13-22.)  This Court granted dismissal, "... because the sole theory of recovery ... [asserted in the 2ⁿᵈAC] is not available under the UCL ..."  (*See, ibid.,* ECF No. 86, at 7:2-3.)

Plaintiff's current 3ʳᵈAC amends the UCL claim to cure the deficiency found in this Court's Order of 01 December 2025 (ECF No. 86); it adds the new theory of equitable restitution / unjust enrichment; and it adds a new claim for invasion of privacy.  Because it would not be possible to summarize the 24-page 3ʳᵈAC in this 25-page Memorandum, Plaintiffs must assume the Court's intimate familiarity with the averments of their 3ʳᵈAC.

## II.    CLARIFICATION

The 3ʳᵈAC contains averments of promises and representations that Defendants make.  (*See,* 3ʳᵈAC, at ¶¶ 17-18.)  Defendants inaccurately describe these averments so as to make it appear that Plaintiffs have alleged that Defendants' actually perform these promises.  (*See,* Δs' Mem., at 2:12-14.)  The

---

[1]     "Honey requires a minimum of a 3% commission in order to partner with us which is applied to each purchase a member makes on ... [a "Partner" vendor's] site."  (*See,* 2ⁿᵈAC, at ¶ 42; *see also,* 3ʳᵈAC, at ¶ 45.)

**OPPO. TO MOT. TO DISMISS 3ʳᵈAC – P. 6**          **5:25-cv-02850**

3rdAC avers the opposite. (*See,* 3rdAC, at ¶¶ 29-30.)

## III.    UNFAIR COMPETITION LAW

### A.    Standing

Defendants attack the complaint on grounds that Plaintiffs have not identified specific items they purchased in reliance upon the *Honey* browser which could have been purchased more cheaply if Plaintiffs had conducted their own search for a discount code. (*See,* Δs' Mem., at 3:16 to 4:6.) However, the instructions Defendants received from their "Partner" vendors to withdraw (or cease to make available) publicly-available discount codes are known only to Defendants and their "Partner" vendors. Fed.R.Civ.P. 9(b)'s particularity requirement, "... may be relaxed as to matters within the opposing party's knowledge." *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531, 540 (9th Cir. 1989).

> "[Rule 9(b) merely] ... requires that plaintiffs specifically plead those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access. ... Even in cases where fraud is alleged, we relax pleading requirements where the relevant facts are known only to the defendant."

*Concha v. London,* 62 F.3d 1493, 1503 (9th Cir. 1995). "A pleading is sufficient under rule 9(b) if it ***identifies the circumstances*** constituting fraud so that a defendant can prepare an adequate answer." *Moore, supra,* 885 F.2d, at 540. (Emphasis added.) *See also, Nayab v. Capital One Bank, N.A.,* 942 F.3d 480, 483-494 (9th Cir. 2019), and *Sanford v. MemberWorks, Inc.,* 625 F.3d 550, 558-559 (9th Cir. 2010).

Plaintiffs' 3rdAC contains an entirely new allegation of economic loss:

> "[A] second way Plaintiffs and the members of the Plaintiff Class lost money or property is because they were required to pay,

---

**OPPO. TO MOT. TO DISMISS 3rdAC – P. 7**                    **5:25-cv-02850**

and did pay, higher prices for the products they bought, precisely because the 'Partner' vendors' costs were increased by the amounts of the Commissions they had contracted to pay to Defendants."

(*See,* 3rdAC, at ¶ 47.)  Defendants argue that this theory is speculative, and provide the Court – through ***legal argument*** – with their economic theories as to why Defendants' collection of commissions from vendors who have sold items might not have increased the prices which were paid by Plaintiffs.  (*See,* Δs' Mem., at 8:16 to 9:18.)  Defendants are essentially asking this Court to take judicial notice of the correctness of an economics hypothesis that they might later seek to advance through expert testimony.  Plaintiffs can produce expert testimony that will establish that Defendants' collection of commissions from vendors ***has*** increased the prices paid by Plaintiffs.  (It's not necessary that the price increases were equal to the full amounts of the commissions in order for Plaintiffs to have sustained monetary losses.)  In the parlance of the article reproduced at Exhibit "B", *post,* Defendants' "Partner" vendors are "sellers"; Defendants are "intermediaries"; and Plaintiffs are "buyers".  The fact that a person can buy from a "Partner" vendor at the same price irrespective of whether they have arrived through *Honey* (*i.e.,* irrespective of whether Defendants receive a commission) is called, "price coherence".

> "Price coherence operates by making all buyers share the intermediary's fees to sellers, thereby raising the price of direct purchases. ... This mechanism operates through three related channels.  First, when an intermediary charges sellers positive fees for intermediated transactions, price coherence results in all buyers sharing these fees through higher retail prices.  This makes direct purchase (or purchase through another intermediary) more expensive ..."

*See,* Edelman, Benjamin, and Julian Wright: Price Coherence and Excessive

Intermediation. [Harvard] *Quarterly Journal of Economics* 130, no. 3 (August 2015): 1283–1328.[2]   This article also establishes that, even without price coherence, and irrespective of whether, *vel non,* the intermediary holds a monopoly, the commissions charged by the intermediary will increase prices paid by buyers.[3]

The averment of Paragraph 47 of the 3rdAC is thus not only sufficient to satisfy the Article III injury-in-fact requirement, but also the UCL's loss-of-money-or-property requirement.

### B.   <u>Reliance</u>

Defendants inaccurately state that Plaintiffs have not alleged that they personally saw, and relied upon, statements on Defendants' website. (*See,* Δs' Mem., at 2:23-24.)   Plaintiffs have alleged that they saw, believed, and relied. (*See,* 3rdAC, at ¶¶ 23 [at lines 19-25], 28, 34-37, 61.)   *Cf.: In re Tobacco II Cases* (2009) 46 Cal.4th 298, 327.   ("Nor does a plaintiff need to demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement.")   "[W]here, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or

---

[2]   Available here – click "READ NOW" for full text:
https://www.hbs.edu/faculty/Pages/item.aspx?num=48942

[3]   **Monopoly intermediary:** "Without price coherence, sellers pass through to buyers any fees they are charged by ... [the intermediary]." (*See,* Edelman and Wright, *post,* at Section 4.1 on Page 15.)   **Non-monopoly intermediary:** "[W]ithout price coherence ... competition between intermediaries ensures that each buyer faces the cost ... of using an intermediary's service, either directly or through a sellers prices ..." (*See,* Edelman and Wright, *post,* at Section 5.1 on Pages 20-21.)   In the case at bar, because Defendants do not charge *Honey* users directly,, "... each buyer faces the cost ... of using an intermediary's service [i.e., the commissions] ... through a sellers prices ..."

**OPPO. TO MOT. TO DISMISS 3rdAC – P. 9**          **5:25-cv-02850**

statements." *Ibid.,* 46 Cal.4th, at 328; *cf.:* 3ʳᵈAC, at ¶ 23, at lines 19-25.[4]  In fact, "... a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material ... [and] materiality is generally a question of fact." *Ibid..* 46 Cal.4th, at 327.

> "[A]ctual reliance, or causation, is inferred from the misrepresentation of a material fact.[] [Citation to *Tobacco II*.]  To satisfy the requirement of pleading actual reliance, or causation, in connection with false advertising for purposes of the UCL and the false advertising law, a plaintiff need only allege a misrepresentation of a material fact."

*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 229.

Defendants assert that the Supreme Court's decision in *Tobacco II* merely creates an "exception", and that Plaintiffs have failed to plead the grounds therefor.  (*See,* Δs' Mem., at 12:1-11.)  Plaintiffs' averments are at Paragraph 23 of the 3ʳᵈAC (at lines 19-25).  Defendants have not cited any California authority for the view that the *Tobacco II* rule regarding exposure to a long-term advertising campaign constitutes any sort of "exception".  If it does, Plaintiffs have alleged the requisite grounds for any such exception.  And Plaintiffs' "advertising campaign" averments are in addition to Plaintiffs' averments describing Defendants' statements on its web site and in the "welcome" e-mail.

Defendants' assert that Plaintiffs must specifically aver that they read Defendants' welcome e-mail.  (*See,* Δs' Mem., at 3:1-4, and 11:11-21.)  This must

---

[4]    "Each Plaintiff was exposed to this intensive and long-term advertising campaign, believed the claims therein, and continued to use and rely upon the *Honey* browser extension to search for the discount codes which would result in the lowest prices on purchases (when in fact Defendants and their browser extension did not do so).  They thus ceased to perform their own searches (which they had done before the became *Honey* users) at the encouragement of Defendants." (*See,* 3ʳᵈAC, at ¶ 23.)

be inferred from the averment. A court must, "... draw **all** reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC,* 836 F.3d 1146, 1150 (9th Cir. 2016). (Emphasis added; citation omitted.) A court must, "... resolve **all** doubts in the pleader's favor." *Hebbe v. Pliler,* 627 F.3d 338, 340 (9th Cir. 2010). (Emphasis added; citation omitted.) *Cf.: Doe v. Vaidyaji Priyanka,* __ F.Supp.3d __, __; 2026 WL 26056, \*3 (N.D. Cal. 2026) (distinguishing between reasonable and unreasonable inferences). If necessary, Plaintiffs could amend to expressly state that each Plaintiff read, believed, and relied upon the e-mail when they subsequently retained and used the *Honey* browser extension.

Defendant's incorrectly assert that statements made on the *Honey* website in 2018 are irrelevant. (*See,* Δs' Mem., at 10:8-20; *cf.:* 3rdAC ¶¶ 20, 26-28.)

Defendant's incorrectly assert that Plaintiffs have failed to allege that they saw and relied upon the claims made on Defendants' website. (*See,* Δs' Mem., at 10:21 to 11:10.) Plaintiffs couldn't have, "... trusted *and relied upon* the *Honey* software browser extension to do exactly what Defendants had promised it would do ... [*i.e.,* the things stated on the website]" (*see,* 3rdAC ¶ 36 [emphasis added]), if they hadn't even read them. If necessary, Plaintiffs could amend to expressly state the obvious (that they read the statements they have already averred they relied upon), which in any event should be inferred from the 3rdAC as written. Contrary to Defendants' assertion (*see,* Δs' Mem., at 10:26), Plaintiffs have averred that they forwent their own searches for discount codes in reliance upon Defendants' statements:

> "... Because Plaintiffs trusted and relied upon the *Honey* software browser extension to do exactly what Defendants had promised it would do, each Plaintiff followed Defendants' advice and stopped searching for discount codes."

(*See,* 3rdAC ¶ 36.)

## C.    Likely to Deceive the Public

Defendants next argue that Plaintiffs, "... cannot allege any actionable false or misleading statements." (*See,* Δs' Mem., at 12:12 to 13:4.)  Plaintiffs **have** identified **numerous** false statements. (*See,* 3rdAC, at ¶¶ 17-23, 25-27, 29-30, 35, 41 [concealment], 42, 55, 56-57 [concealment].)  However, Plaintiffs are not even required to allege false statements because it is only necessary to prove that, "... members of the public are likely to be deceived ..." – there is no requirement of actual falsehood.  *Tobacco II, supra,* 46 Cal.4th, at 312. (Citations, internal quot. mks. omitted.)  It has been held that, "[a] fraudulent practice under the UCL ... can be shown even without allegations of actual deception, reasonable reliance and damage."  *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 81. (Citation, attribution, internal quot. mks. omitted.)  It has been held that, "[a] violation can be shown even if **no one** was actually deceived, relied upon the fraudulent practice, **or sustained any damage.**"  *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255, 1274.  (Emphasis added; citations, internal quot. mks. omitted.)

Defendants' deceptive conduct included both its express statements, and its **non-disclosure** of its agreements with its "Partner" vendors that it would deliberately refrain from showing the most favorable publicly-available coupons. Recall that Defendants **actively discouraged** Plaintiffs from conducting their own searches, to prevent them from discovering that the Honey browser did not operate as represented:

> "Still looking for codes on your own? We'll search for them **so you don't have to.** If we find working codes, we'll automatically apply the best one to your cart."

(*See,* 3rdAC, at ¶¶ 26-27, 36. [Emphasis added.])  The phrases, "We'll search for them so you don't have to ...", and "If we find working codes ...", clearly represent that Defendants would actually look for the codes. That representation was false,

**OPPO. TO MOT. TO DISMISS 3rdAC – P. 12**            **5:25-cv-02850**

misleading, or at least "likely to deceive". (*See,* 3rdAC, at ¶¶ 29-30.) Plaintiffs' 3rdAC avers that Defendants, instead, hid codes pursuant to secret agreements with their "Partner" vendors. (*See,* 3rdAC, at ¶¶ 39-44.)

Even if Plaintiffs had not adequately pleaded the "fraudulent" prong of the UCL (although they have), they have adequately pleaded the "unlawful" and "unfair" prongs, which are separate from and independent of the "fraudulent" prong. (*See,* 3rdAC, at ¶¶ 59-60.)

Defendants next assert that Plaintiffs have no claim because Defendants' statements were so generalized, vague and unspecified as to constitute, "mere puffery", upon which a reasonable consumer could not rely. (*See,* Δs' Mem., at 15:5-28.) But the very decision that Defendants cite notes that:

> "... reading reliance into the UCL and the FAL would subvert the public protection aspects of those statutes ... [and] declines to read a reliance requirement into the 'as a result of' language in either [Business and Professions Code] Section 17200 or Section 17500'."

*See, Anunziato v. eMachines, Inc.,* 402 F.Supp.2d 1133, 1137-1139 (C.D. Cal. 2005). *See also, Krueger v. Wyeth, Inc.,* 2019 WL 4785862, \*4 (S.D. Cal. 01 Oct. 2019), *citing, Anunziato.* ("No reliance element exists under the UCL.") *But see, Cattie v. Wal-Mart Stores, Inc.,* 504 F.Supp.2d 939, 947-948 (S.D. Cal. 2007) (*contra*). In Plaintiffs' view the "as a result of" language in Business and Professions Code section 17204 is a causation requirement that could be satisfied by any nexus between the conduct constituting unfair competition and the loss of money or property.

There was nothing generalized or vague about the statements quoted in the 3rdAC, and the failure to disclose to *Honey* users the fact that Defendants had agreements with their "Partner" vendors to withhold some publicly-available discount codes further establishes that Defendants' conduct is "likely to deceive the public".

**OPPO. TO MOT. TO DISMISS 3rdAC – P. 13**          **5:25-cv-02850**

> "[The UCL] prohibit[s] not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."

*Cf.: Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 951. (Cleaned up; citation omitted.) Nor do Defendants' statements constitute mere puffery. In California jurisprudence:

> "A statement is considered puffery if the claim is ***extremely unlikely*** to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim. [Citation.] The common theme that seems to run through cases considering puffery in a variety of contexts is that consumer reliance will be induced by specific rather than general assertions. [Citation.] Thus, a statement that is quantifiable, that makes a claim as to the ***specific or absolute characteristics*** of a product, may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery. [Citation.]"

*Demetriades v. Yelp, Inc.* (2014) 228 Cal.App.4th 294, 311, *quoting, Newcal Industries, Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1053 (9th Cir. 2008). (Emphasis by Plaintiffs; internal quotation marks omitted.) *Accord: Biederman v. FCA US LLC,* 765 F.Supp.3d 920, 946 (N.D. Cal. 2025), *quoting, Demetriades* and *Newcal.*

The importance of *Demetriades* cannot be overstated, because it is controlling authority. *See, AGK Sierra De Montserrat, L.P. v. Comerica Bank,* 109 F.4th 1132, 1136 (9th Cir. 2024). The *Demetriades* panel considered whether Yelp's claims that the reviews found on its website had gone, "... through a remarkable filtering process that takes the reviews that are the most trustworthy

---

**OPPO. TO MOT. TO DISMISS 3rdAC – P. 14**          **5:25-cv-02850**

and from the most established sources ..." (and other very similar statements), constituted mere puffery. *See, Demetriades,* 228 Cal.App.4th, at 311. The *Demetriades* panel held that these statements were:

> "... more than puffery, they are statements of fact. Yelp's statements are factual **because they are intended to induce consumer reliance** on Yelp's reviews by making specific and detailed statements intended to induce reliance, such as: the filter 'give[s]' consumers the 'most trusted' reviews, and Yelp's engineers (a word inspiring confidence) are working to provide the 'most unbiased and accurate' information available.  Although in making these statements, Yelp may use words of emphasis ('remarkable filtering process,' 'most trustworthy,' 'most established sources'), Yelp's specific representations about the accuracy of its review filter go beyond mere expressions of opinion or puffery and hyperbole; rather Yelp speaks with the authority of a Web site that **intends** to attract users with the accuracy of its filter."

*See, Demetriades,* 228 Cal.App.4th, at 311.  (Emphasis by Plaintiffs.)  In the case at bar, Defendants' statements specified that Defendants would perform the coupon search on the users' behalf ("We'll search for them so you don't have to"), and would apply the discount code with the lowest price ("If we find working codes, we'll automatically apply the best one to your cart").  This includes an implied representation that Defendants will conduct a good-faith search; in reality, Defendants had undisclosed agreements with "Partner" vendors to **not** do that.  In *Biederman, supra,* actionable representation was found from mere:

> "... **fail[ure] to disclose** that the advertised performance capabilities of the Class Trucks could only be accomplished by emitting pollutants beyond legal limits, consumer expectations, and comparable gasoline-powered vehicles."

**OPPO. TO MOT. TO DISMISS 3ʳᵈAC – P. 15**          **5:25-cv-02850**

*See, Biederman,* 765 F.Supp.3d, at 946.  (Emphasis added.)

Defendants quote from this Court's order of 28 August 2025, in which the Court concluded that the statements on Defendants' website are not, "... sufficiently concrete to constitute an offer ... [and] do[] not rise to the level of a definite and certain promise that the law requires for contract formation." (*See,* ECF No. 57, at 10:14-17; *cf.:* Δs' Mem., at 15:7-10.)  Defendants have cited no authority for the view that a statement must be sufficiently concrete to constitute an offer of a contract for the statement to be actionable under the UCL.

Defendants argue that, "no reasonable consumer would rely", upon statements like, "best coupon", or "the biggest savings".  (*See,* Δs' Mem., at 15:13-15.)  The subject matter of Defendants' claims is critical.  If a company claimed that it sold the "best" strawberries, or that it's clothing is the "biggest" thing in fashion, that would be different.  In the context of this case, "best coupon", can only mean the coupon that obtains the largest discount (in dollar terms), and, "the biggest savings", can also only mean the largest discount (in dollar terms). It is manifest that Defendants intended these phrases to be understood in that sense, and that their purpose was to induce Plaintiffs to act.  It cannot be said that Defendants', "... claim[s] [are] extremely unlikely to induce ... reliance [by a reasonable consumer]" (*Demetriades,* 228 Cal.App.4th, at 311), because that's what they were intended to do – ***and it worked.***

In addition, California's Supreme Court has only recently adopted the view that, "... it is when statements about products or services are hard to verify that the need for consumer protection may be strongest ...", and that, "... advertising claims not susceptible of precise measurement or verification ... might well be deceptive or misleading to the public, or even false ..."  *Serova v. Sony Music Entertainment* (2022) 13 Cal.5th 859, 885.  (Citations, internal quotation marks, attribution omitted.)

**OPPO. TO MOT. TO DISMISS 3ʳᵈAC – P. 16**                    **5:25-cv-02850**

**D.      Plaintiffs Have Cured the Deficiency Found by the Court**

Defendants incorrectly assert that Plaintiffs are requesting recovery of, "damages". (*See,* Δs' Mem., at 16:13.)  Plaintiffs seek restitution of their own funds which flowed to the "Partner" vendors as "commissions" of a "minimum" of 3% out of the funds paid by Plaintiffs. (*See,* 3rdAC, at ¶ 65, and . 24, at lines 13-16.)  This Court has held that, "... the UCL does not require direct privity ..." (*See,* Order of 01 December 2025, ECF No. 86, at 6:26-28 n.5, *citing, Shersher v. Superior Court* (2007) 154 Cal.App.4th 1491, 1500.)

Defendants inaccurately assert that Plaintiffs have not identified a vested interest in the funds.  It cannot be disputed that the funds that went from Plaintiffs to the "Partner" vendors were Plaintiffs' own funds.  A portion of Plaintiffs' own funds were then passed through the "Partner" vendors to Defendants.  Under *Shersher,* this is sufficient:

> "[H]ere, plaintiff allegedly lost any ownership interest in his money once he used it to purchase Microsoft's product ***from a retailer.*** The UCL does not make such a distinction, however.  It requires **only** that the plaintiff must **once** have had an ownership interest in the money or property acquired by the defendant through unlawful means."

*Shersher,* 154 Cal.App.4th, at 1500.  (Emphasis by Plaintiffs.) *See also, Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1340, *citing, Shersher, supra,* 154 Cal.App.4th, at 1500.  ("UCL restitution does **not** require money be paid ***directly*** to defendant." [Emphasis by Plaintiffs.]) In the case at bar, Plaintiffs seek return of the part of the purchase prices they paid which have ended up in Defendants' hands.  By contrast, in *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, "... plaintiff [was] not seeking the return of money or property that was once in its possession." *See, Korea Supply,* 29 Cal.4th, at 1149.

**OPPO. TO MOT. TO DISMISS 3rdAC – P. 17**                     **5:25-cv-02850**

### E.     Injunctive Relief

Plaintiffs must, "... establish a likelihood of future injury ...", to seek injunctive relief. *Hodgers-Durgin v. de la Vina,* 199 F.3d 1037, 1044 (9th Cir. 1999). This criterion may be satisfied by establishing either that the threatened injury is "certainly impending", or, alternatively, that there is, "... a substantial risk that the harm will occur ..." *See, McGee v. S-L Snacks National,* 982 F.3d 700, 709 (9th Cir. 2020). (Citations, internal quotation marks, attribution omitted.)

In proposed class actions involving the fraud prong of the UCL, the named plaintiffs will always be aware of the conduct likely to deceive the public, and so will ordinarily be in a position to avoid future harm. And, "... injunctive relief is not available based on alleged injuries to unnamed members of a proposed class." *Hodgers-Durgin,* 199 F.3d, at 1045. Thus, it might appear that there can never be a class action for injunctive relief because the named plaintiffs will always know of the deception. However, the Ninth Circuit has adopted the rule that:

> "[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm. *Summers* [*v. Earth Island Institute,* 555 U.S. 488, 493 (2009)]. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future.[]"

*Davidson v. Kimberly–Clark Corporation,* 889 F.3d 956, 969 (9th Cir. 2018). The *Davidson* rule is particularly applicable to UCL cases, because a rule that thwarts the objective of the UCL would constitute, "... an unnecessary affront to federal and state comity ..." *See, ibid.,* 889 F.3d, at 970. (Citation, internal

quotation marks, attribution omitted.)  If necessary, Plaintiffs could amend to aver that they would use the *Honey* browser extension in the future if it performed as Defendants have represented it would.  Because the *raison d'etre* of the *Honey* browser extension is that Defendants will, "... search for ["the internet's best coupons"] so you [*i.e.,* the *Honey* user] don't have to ..." (*cf.:* 3rdAC, at ¶¶ 26, 51), if Plaintiffs were to use the *Honey* browser extension as intended (*i.e.,* forgoing their own searches), they would have no way to know whether the *Honey* browser extension was, in fact, functioning as promised.

## IV.    EQUITABLE RESTITUTION FOR UNJUST ENRICHMENT

Plaintiffs' 3rdAC seeks equitable restitution as an alternate theory in support of Plaintiffs' First Claim for Relief.  Defendants incorrectly assert that this theory must be dismissed as "duplicative and derivative" of the UCL theory. (*See,* Δs' Mem., at 19:9-14.)  "[I]t is not grounds for dismissal ...", that a claim for equitable restitution is, "... duplicative of or superfluous to ... other claims ..." *Astiana v. Hain Celestial Group, Inc.,* 783 F.3d 753, 762-763 (9th Cir. 2015).  *See also, Richards v. Centripetal Networks, Inc.,* 709 F.Supp.3d 914, 925 (N.D. Cal. 2024).  ("Though a plaintiff may be required to elect remedies at a later stage, at the pleading stage a claim for restitution based on unjust enrichment may be pleaded in the alternative to a contract claim."  [Citations omitted.])  *Cf.: In re Natera Prenatal Testing Lit.,* 664 F.Supp.3d 995, 1012-1013 (N.D. Cal. 2023).

One California court of appeal has held that a claim for equitable restitution which, "... merely incorporates the allegations ...", of a UCL claim must be dismissed because, "... a separate claim is unnecessary ... to recover restitution ..." *See, Sepanossian v. National Ready Mixed Concrete Co.* (2023) 97 Cal.App.5th 192, 208.  But this assumes that the court has already found that the UCL claim has been adequately pleaded and may proceed. (*See, Sepanossian,* 97 Cal.App.5th, at 206.)  The holding in *Sepanossian* on this point is grounded in

California's rule that equitable relief is unavailable where there is an adequate remedy at law, and assumes that UCL claims are ***legal*** claims (as opposed to equitable claims). *See, Sepanossian,* 97 Cal.App.5th, at 208, *citing, Collins v. eMachines, Inc.* (2011) 202 Cal.App.4th 249, 260.

A claim for equitable restitution is not duplicative of a UCL claim because a claim for equitable restitution is not subject to Prop. 64. Thus, standing to seek relief under the theory of equitable restitution is broader than under the UCL. Defendants appear to acknowledge this, in arguing that UCL standing rules are "more restrictive" than the Article III case-or-controversy requirement of injury in fact. (*See,* Δs' Mem., at 6:19-21.)

A recent and authoritative summary of California's doctrine of equitable restitution is found in *In re Facebook, Inc. Internet Tracking Litigation,* 956 F.3d 589, 599-601 (9th Cir. 2020). "... California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss [citation] ... or in some cases, any loss ..." *Ibid.,* 956 F.3d, at 599-600. (Citation, internal quotation marks, attribution omitted.) "[T]here is no particular form of pleading necessary to invoke the doctrine of restitution." *O'Grady v. Merchant Exchange Productions, Inc.* (2019) 41 Cal.App.5th 771, 792, *quoting, Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1315. For example, in *Astiana, supra,* the plaintiff had merely alleged:

> "... she was entitled to relief under a 'quasi-contract' cause of action because ... [the defendant] had 'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling, and that ... [the defendant] was 'unjustly enriched' as a result."

*Astiana,* 783 F.3d, at 762. The *Astiana* panel found the above-quoted, "... straightforward statement ... sufficient to state a quasi-contract cause of action." *Astiana,* 783 F.3d, at 762.

**OPPO. TO MOT. TO DISMISS 3rdAC – P. 20**          **5:25-cv-02850**

Defendants incorrectly assert that, "Plaintiffs fail to identify the benefit which PayPal retained at Plaintiffs' expense." (*See,* Δs' Mem., at 19:19.) The benefit, of course, was the commissions Defendants received from Plaintiffs' purchases. "The term 'benefit' denotes **any** form of advantage." *Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 51. (Emphasis added.) "[T]he benefit that is the basis of a restitution claim may take any form, direct or indirect." *Professional Tax Appeal v. Kennedy-Wilson Holdings, Inc.* (2018) 29 Cal.App.5th 230, 238. (Emphasis added; some internal quotation marks omitted.)  "[A] privity of relationship between the parties is not necessarily required." *Hartford Casualty Ins. Co. v. J.R. Marketing, L.L.C.* (2015) 61 Cal.4th 988, 998. (Citation omitted.)

Defendants incorrectly assert that Plaintiffs' theory of economic loss is conclusory. (*See,* Δs' Mem., at 19:26.) Plaintiffs' purchases were at prices that were inflated precisely because Defendants were receiving the commissions. (*See,* 3rdAC, at ¶ 69.) As shown above, Plaintiffs will proffer expert testimony to prove their factual theory of causation (which is supported by the scholarly work quoted at 9:20 to 10:5 and 10:22-25 n.3, *supra*). In addition, the recovery may be measured, not by the plaintiff's loss, but by the defendant's profit. *See, Facebook, supra,* 956 F.3d, at 600, *citing, County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 542-543, for the view that a court may, "... solely rel[y] on profit to the defendants rather than loss to the plaintiffs to calculate damages."

## V.    **INVASION OF PRIVACY**

Defendants next turn to the privacy claim, asserting that the conduct alleged in the complaint is, "... precisely what PayPal informs users it will do ... [in] Honey's Privacy Policy ...", of which Defendants request judicial notice. (*See,* Δs' Mem., at 4:10 to 5:3.) While the Court may take judicial notice of whatever exists on Defendants' website today, the Court may not take judicial notice of how long it has been there; nor may the Court take judicial notice of any potential

**OPPO. TO MOT. TO DISMISS 3rdAC – P. 21**          **5:25-cv-02850**

facts which might have made Plaintiffs aware of the existence and contents of whatever "privacy policy" may have been on Defendants' website during the relevant time frame. *Cf.: Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d 988, 999 (9th Cir. 2018). ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.") Plaintiffs dispute all these matters, because they cannot be accurately and readily determined – by Plaintiffs or by the Court. Nor is there any basis to assume that Plaintiffs received reasonably conspicuous notice of the so-called, "Privacy Policy". *Cf.: White v. PayPal Holdings Inc.,* __ F.Supp.3d __, __; 2026 WL 496712, \*6 (N.D. Cal. 23 Feb. 2026) (finding that Defendants were unable to establish reasonably conspicuous notice as to plaintiffs who "joined" Honey prior to 2023). Nor may the Court take judicial notice of the truth of any facts stated in the proffered document, *e.g.,* that it was, "Last updated May 21, 2024". (*See,* ECF No. 91-3, at p. 2.) It is also disputed whether the so-called, "Privacy Policy", reveals that Defendants will do what the 3rd AC alleges they do.

Defendant also requests judicial notice of microscopic text at the bottom of a screenshot, claiming that it is a, "... judicially noticeable fact[] ... that when a user in the U.K. navigates to the joinhoney.com webpage for the first time, a pop up appears ...", which discloses cookies. (*See,* Δs' Mem., at 5:13-14; *see also,* ECF No. 93-2.) The Court may not take judicial notice whether this happens from the UK, or whether it happened at the relevant times. Further a microscopic statement about "cookies", even if it could be read by the naked eye, is not a disclosure that the *Honey* browser extension is reporting all of a user's Internet activity back to Defendants.

Defendants incorrectly assert that Plaintiffs do not have a legally-protected privacy interest in their browsing histories. (*See,* Δs' Mem., at 20:19 to 21:13.) In *Facebook, supra,* "... the relevant question ... [was] whether a user would

**OPPO. TO MOT. TO DISMISS 3rd AC – P. 22**                    **5:25-cv-02850**

reasonably expect that Facebook would have access to the user's individual data after the user logged out of the application." *Facebook,* 956 F.3d, at 602.  The *Facebook* panel held that the plaintiffs had, "... plausibly alleged that Facebook did not disclose that the cookies would continue to track users' **browsing history** after they log out of the platform." *See, ibid.,* 956 F.3d, at 603.[5]  (Emphasis added.)  The Facebook panel held that, "... [i]n light of the privacy interests and Facebook's allegedly surreptitious and unseen data collection, Plaintiffs have adequately alleged a reasonable expectation of privacy." *Ibid.*

After Plaintiffs' 3rdAC was filed, most of the Plaintiffs were able to recover some of their data from Defendants through subject access requests under the UK's GDPR (General Data Protection Rule).  If necessary, Plaintiffs could amend to aver as follows:

> The *Honey* browser extension doesn't have a sign-in / sign-out function.  Its user interface is a popup screen that allows the user to activate the *Honey* browser extension's (pretend) search function by clicking on an orange rectangle labeled "Apply Coupons".  A *Honey* user refrains from using the *Honey* browser extension by simply refraining from clicking on that orange rectangle.  Defendants recorded web pages viewed by Plaintiffs **even when they refrained from using the *Honey* browser extension;** and Defendants have created an extensive library of web page views for each Plaintiff (*i.e.,* as much as 12,927 website visits for a single Plaintiff, including dates and times of each Plaintiff's views).  Defendants did not effectively disclose that they would record users' web page views, and Defendants did not disclose at all that they would record users' web

---

[5]    In *Facebook,* the defendant had not even monitored *all* websites a user visited – but had instead monitored only those with a "Facebook plug-in". *See, Facebook,* 956 F.3d, at 596.

page views even when the user refrained from using the *Honey* browser extension; all this resulted in Defendants' acquiring "an enormous amount of individualized data" to compile a "vast repository of personal data."

*Cf.: Facebook,* 956 F.3d, at 603. As California's Attorney General wrote in March, 2022:

"Examples drawn from academic papers in 2018 show that seemingly innocuous data points, ***when combined with other data points*** across masses of data, may be exploited to deduce ***startlingly personal characteristics.***[]"

*See,* Op.Cal.Atty.Gen. 20-303 (March 10, 2022), 2022 WL 815641, at *5. (Emphasis added.)

Defendants implausibly suggests that their conduct is merely, "... routine commercial behavior ..." *See,* Δs' Mem., at 23:12-14, *citing, Folgelstrom v. Lamps Plus, Inc.* (2011) 195 Cal.App.4th 986, 990-992.  In *Folgelstrom,* a company collected a customer's ***Zip code*** and used that to obtain his ***mailing address*** without his knowledge or consent, and then ***mailed*** him coupons and other advertisements.  *Folgelstrom* is thus factually inapposite.  Further, the question whether Defendant's conduct is "routine" may not be resolved by judicial notice.

Defendants cite pre-*Facebook* district-court decisions for the view that collection of a user's browsing history is, "routine commercial behavior". (*See,* Δs' Mem., at 23:14-25.)  The *Facebook* panel's holding that the plaintiffs in that case had stated a claim for invasion of privacy grounded in exactly that practice is controlling authority.  Defendants also cite to *Popa v. Microsoft Corporation,* 153 F.4th 784 (9th Cir. 2025), which involved a website owner's recording a consumer's interaction with ***its own*** website.  The *Popa* panel held that the plaintiff lacked standing, because she had not alleged concrete injury from the website owner's recording a consumer's interaction with ***its own*** website, noting that the plaintiff,

**OPPO. TO MOT. TO DISMISS 3ʳᵈAC – P. 24**          **5:25-cv-02850**

"... identifies no embarrassing, invasive, or otherwise private information collected ..." *Popa,* 153 F.4th, at 791. Under *Facebook,* a person's browsing history (which was not even at issue in *Popa*), **IS** private information.

In *Facebook,* the defendant had argued that the plaintiffs,

"... need[ed] to identify specific, sensitive information that Facebook [had] collected, and that ... [the plaintiffs'] more general allegation that Facebook acquired 'an enormous amount of individualized data' is insufficient."

*See, Facebook,* 956 F.3d, at 603. The *Facebook* panel rejected this argument:

"... viewing the allegations in the light most favorable to Plaintiffs, as we must at this stage, the allegations that Facebook allegedly compiled highly personalized profiles from sensitive browsing histories [were sufficient to state a claim].

*See, Facebook,* 956 F.3d, at 604.

## VI.    LEAVE TO AMEND

Defendants assert that Plaintiffs should be denied leave to amend. (*See,* Δs' Mem., at 25:3-23.)

"Even if a complaint is deficient, we have repeatedly held that a district court should grant leave to amend *even if no request to amend the pleading was made,* unless it determines that the pleading could not be cured by the allegation of other facts."

*Bacon v. Woodward,* 104 F.4th 744, 753 (9th Cir. 2024). (Citations, internal quotation marks, attribution omitted.)

## CONCLUSION

WHEREFORE, Defendants' Motion to Dismiss should be DENIED. To the extent this Court may find any deficiency in Plaintiffs' 3rdAC, the Court should grant leave to amend.

Dated: 08 April 2026                    Respectfully submitted,

DAVID J. GALLO
**LAW OFFICES OF DAVID J. GALLO**
12702 VIA CORTINA, SUITE 500
DEL MAR, CALIFORNIA  92014-3769
Telephone: (858) 509-3652


    /s/ David J. Gallo
By:    David J. Gallo,
      California Bar No. 127722
      Attorneys for all Plaintiffs

[OPPO to MOT to DISMISS (3rd).wpd]

**OPPO. TO MOT. TO DISMISS 3ʳᵈAC – P. 26**                **5:25-cv-02850**