CLEMENT S. ROBERTS (SBN 209203)
croberts@orrick.com
GEOFFREY MOSS (SBN 258827)
gmoss@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:    +1 415 773 5700
Facsimile:    +1 415 773 5759

RICHARD JACOBSEN (admitted pro hac vice)
MARC R. SHAPIRO (admitted pro hac vice)
JENNIFER KEIGHLEY (admitted pro hac vice)
rjacobsen@orrick.com
mshapiro@orrick.com
jkeighley@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019-6142
Telephone:    +1 212 506 5000
Facsimile:    +1 212 506 5151

Attorneys for Defendants
Honey Science, LLC and PayPal, Inc.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOM CAMPBELL, DANIEL JENKS-BERRYMAN, DECLAN LYNN, ADITHYA NARAYANAN, JAMES POAD, DAN SORAHAN, ALAN SUTCH, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>HONEY SCIENCE, LLC, a Delaware limited liability company, PAYPAL, INC., a Delaware corporation, and DOES 1 through 50<br><br>    Defendants. | Case No. 5:25-cv-02850<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT**<br><br>Date:  May 21, 2026<br>Time: 10:00 AM<br>Dept: Courtroom 8, 4th Floor<br>Judge: Hon. P. Casey Pitts |

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 2

        A.      Plaintiffs Fail To Rebut PayPal's Arguments on Their UCL Claim...................... 2

                1.      Plaintiffs Fail To Refute PayPal's UCL Standing Arguments.................... 2

                2.      Plaintiffs Still Fail To Allege Reliance with Requisite Particularity. ......... 4

                3.      Plaintiffs Still Fail To Allege Any Actionable Misrepresentation
                        Under Any Prong of the UCL. ................................................................ 7

        B.      Plaintiffs Still Fail To State a Plausible Claim for Relief Under the UCL. ........... 9

                1.      Plaintiffs' Theory of Recovery Is Improper Under The UCL. ................... 9

                2.      Plaintiffs Still Cannot Demonstrate Entitlement to Injunctive Relief....... 10

        C.      Plaintiffs Cannot State a Claim for Unjust Enrichment. ...................................... 11

        D.      Plaintiffs' Opposition Fails To Save Their Invasion of Privacy Claim. .............. 11

                1.      Plaintiffs Are Incorrect That This Court Cannot Take Judicial
                        Notice of The Privacy Policy and Cookie Banner. .................................. 11

                2.      Plaintiffs' Opposition Fails To Rebut Plaintiffs' Failure To Meet
                        the Three-Part Test To Plead an Invasion of Privacy Claim..................... 13

                3.      Plaintiffs' Improper New Allegations in Their Opposition Fail To
                        Remedy the Deficiencies in the TAC...................................................... 15

        E.      Plaintiffs' Opposition Confirms That Further Amendment Would Be
                Futile. ................................................................................................................ 15

III.    CONCLUSION ................................................................................................. 15

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Abagninin v. AMVAC Chem. Corp.*,
545 F.3d 733 (9th Cir. 2008)..................................................................................... 15

*In re Actimmune Mktg. Litig.*,
2010 WL 3463491 (N.D. Cal. Sept. 1, 2010) ........................................................... 2

*Bradshaw v. Lowe's Cos.*,
2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ......................................................... 14

*Bros. v. Hewlett-Packard Co.*,
2006 WL 3093685 (N.D. Cal. Oct. 31, 2006)........................................................... 8

*Chapman v. Skype Inc.*,
220 Cal. App. 4th 217 (2013)............................................................................... 5, 6

*Cimoli v. Alacer Corp.*,
546 F. Supp. 3d 897 (N.D. Cal. 2021) ................................................................... 10

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ................................................................................................. 2

*Dahlia v. Rodriguez*,
735 F.3d 1060 (9th Cir. 2013)................................................................................. 4

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018).................................................................................. 10

*Demetriades v. Yelp, Inc.*,
228 Cal. App. 4th 294 (2014)................................................................................... 8

*Elghembri v. Muhammad*,
2025 WL 2689856 (N.D. Cal. Sept. 18, 2025) ........................................................ 3

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020)................................................................ 11, 12, 13, 14

*Feitelberg v. Credit Suisse First Bos., LLC*,
134 Cal. App. 4th 997 (2005)................................................................................... 9

*Freeman v. ABC Legal Servs., Inc.*,
877 F. Supp. 2d 919 (N.D. Cal. 2012) ................................................................... 10

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................... 8

DEFENDANTS' REPLY ISO MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT
5:25-CV-02850-PCP

*Haskins v. Symantec Corp.*,
   2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) .................................................................. 5

*Hebbe v. Pliler*,
   627 F.3d 338 (9th Cir. 2010)........................................................................................ 6

*Hernandez v. Hillsides, Inc.*,
   47 Cal. 4th 272 (2009) ................................................................................................ 14

*Hill v. Nat'l Collegiate Athletic Ass'n*,
   7 Cal. 4th 1 (1994) ..................................................................................................... 13

*Holt v. Facebook, Inc.*,
   240 F. Supp. 3d 1021 (N.D. Cal. 2017) ....................................................................... 4

*Kane v. Chobani, Inc.*,
   2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ............................................................. 5

*Key v. Qualcomm Inc.*,
   129 F.4th 1129 (9th Cir. 2025)..................................................................................... 8

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ................................................................................................. 4

*Lakes v. Ubisoft*,
   777 F. Supp. 3d 1047 (N.D. Cal. 2025) ..................................................................... 12

*Letizia v. Facebook Inc.*,
   267 F. Supp. 3d 1235 (N.D. Cal. 2017) ..................................................................... 10

*In re Meta Pixel Tax Filing Cases*,
   724 F. Supp. 3d 987 (N.D. Cal. 2024) ....................................................................... 12

*Oestreicher v. Alienware Corp.*,
   544 F. Supp. 2d 964 (N.D. Cal. 2008) ......................................................................... 8

*Pac. Structures, Inc. v. Greenwich Ins. Co.*,
   2022 WL 875639 (N.D. Cal. Mar. 24, 2022)............................................................... 7

*In re PayPal Browser Extension Litig.*,
   2025 WL 3251667 (N.D. Cal. Nov. 21, 2025).............................................................. 2

*Pfizer Inc. v. Superior Ct.*,
   182 Cal. App. 4th 622 (2010)..................................................................................... 10

*Popa v. Microsoft Corp.*,
   153 F.4th 784 (9th Cir. 2025)............................................................................... 14, 15

*Rodriguez v. Brushfire Recs.*,
   2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ............................................................ 14

*Ryan v. Microsoft Corp.*,
    147 F. Supp. 3d 868 (N.D. Cal. 2015) ................................................................... 15

*Schneider v. Cal. Dep't of Corr.*,
    151 F.3d 1194 (9th Cir. 1998).......................................................................... 3, 15

*Serova v. Sony Music Ent.*,
    13 Cal. 5th 859 (2022) ......................................................................................... 8, 9

*Tabler v. Panera LLC*,
    2019 WL 5579529 (N.D. Cal. Oct. 29, 2019).......................................................... 6

*In re Tobacco II*,
    46 Cal. 4th 298 (2009) ............................................................................................. 5

*In re Tracht Gut, LLC*,
    836 F.3d 1146 (9th Cir. 2016)................................................................................. 6

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021)................................................................................. 3

*White v. PayPal Holdings Inc.*,
    --- F. Supp. 3d ---, 2026 WL 496712 (N.D. Cal. Feb. 23, 2026) ........................... 12

*Wooten v. Biolife Plasma Servs. L.P.*,
    807 F. Supp. 3d 1139 (E.D. Cal. 2025)................................................................. 14

DEFENDANTS' REPLY ISO MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT
5:25-CV-02850-PCP

## I.    <u>INTRODUCTION</u>

Plaintiffs' Opposition (Opp.) only drives home that Plaintiffs' Third Amended Complaint (TAC) fails to state any claim for relief. Indeed, Plaintiffs implicitly concede these deficiencies by repeatedly stating that they "could amend" to add additional allegations. But Plaintiffs should not be given another bite at the apple, and the case should be dismissed.

Plaintiffs' Opposition fails to address numerous fundamental flaws with Plaintiffs' UCL claim. Unable to deny that the TAC fails to identify a single "better" coupon that was available to them, Plaintiffs now hang their hat on an unpled academic theory that (purportedly) supports the TAC's conclusory claim that merchants would have decreased their prices if they were not paying commissions to Honey. But Plaintiffs cannot amend their TAC via their Opposition. And even if this Court were to consider Plaintiffs' latest hypothesis, a review of the "scholarly" paper Plaintiffs improperly attach to their Opposition shows it does not support Plaintiffs' theory of economic harm. As for reliance, Plaintiffs argue they "could amend" to add additional allegations that they "read, believed, and relied upon" certain statements, Opp. 11, thereby conceding the TAC's failure to meet Rule 9(b)'s heightened pleading requirements. And Plaintiffs' theory of UCL recovery remains improper, as Plaintiffs do not dispute that they fail to connect the relief they seek—*all* commissions received by PayPal—with their alleged monetary harm.

With respect to Plaintiffs' invasion of privacy claim, Plaintiffs yet again argue that they "could amend" to add an additional paragraph of allegations. *Id*. at 23-24. This constitutes another implicit admission that Plaintiffs' allegations, as currently pled, are insufficient to state a claim. Even if this Court were to consider Plaintiffs' unpled new allegations, they would not save Plaintiffs' invasion of privacy claim as they do not identify any sensitive or confidential information collected by PayPal and fail to show any "highly offensive" invasion of Plaintiffs' right to privacy.

The reality is that Plaintiffs, on their fourth attempt, are still unable to state the factual allegations needed to assert their claims. The Court should dismiss the TAC with prejudice.

DEFENDANTS' REPLY ISO MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT
5:25-CV-02850-PCP

## II.    ARGUMENT

### A.    Plaintiffs Fail To Rebut PayPal's Arguments on Their UCL Claim.

#### 1.    Plaintiffs Fail To Refute PayPal's UCL Standing Arguments.

Plaintiffs' standing theory relies on a conclusory chain of attenuated possibilities that their Opposition fails to remedy, as Plaintiffs cannot dispute that they have not pointed to any better deals that were available to them, or otherwise identified how they suffered any economic harm.

*First*, implicitly conceding that they failed to identify any better coupons, Plaintiffs argue that they need not "identif[y] specific items they purchased in reliance" on Honey which would have been cheaper "if Plaintiffs had conducted their own search for a discount code" because Rule 9(b)'s particularity requirement should be "relaxed" as to matters "only" within the opposing party's knowledge. Opp. 7. But even under Rule 8(a), a plaintiff "must allege a plausible entitlement to relief, including a plausible causal chain of injury" to establish standing under the UCL. *In re Actimmune Mktg. Litig.*, 2010 WL 3463491, at *10 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 F. App'x 651 (9th Cir. 2011). Plaintiffs have not explained how their allegations satisfy the Rule 8(a) standard. The TAC does not identify any particular transaction from *any* of the Plaintiffs in which a better deal existed. Indeed, Plaintiffs do not even allege the number of purchases they generally made using Honey or the frequency with which better coupons generally existed. To the contrary, they expressly disclaim that ability, stating they "have no information as to the number of purchase transactions in which this occurred." TAC ¶ 38. Their theory thus rests on a speculative chain of possibilities that Plaintiffs do not even attempt to address in their Opposition. *Compare* Mot. 6-8 *with* Opp. 7; *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (rejecting standing contention in the more lenient Article III context where plaintiffs relied on an "objectively reasonable likelihood" of injury because the contention is premised on a "highly attenuated chain of possibilities" and thus does not constitute a "certainly impending" injury). Arming themselves with no metrics whatsoever, Plaintiffs ask this Court to engage in even more guesswork than the sort rejected by Judge Freeman in related litigation. *See In re PayPal Browser Extension Litig.*, 2025 WL 3251667, at *4 (N.D. Cal. Nov. 21, 2025).

Furthermore, Plaintiffs fail to explain how "better" coupon codes could qualify as

information exclusively within PayPal's knowledge. Plaintiffs' own theory belies the contention. They contend that if they had not relied on Honey, *they* would have found the "better" codes. Accordingly, all the information Plaintiffs need to make a claim of injury is publicly available and accessible to them: the codes Honey offered and the codes available elsewhere on the internet.

***Second***, Plaintiffs then pivot to their equally speculative theory that they can establish economic injury because merchants purportedly increased their prices across the board to cover Honey's costs. Opp. 7-9. But as PayPal explained, this second theory is conclusory and implausible as it is devoid of any factual support and ignores that real-world pricing decisions are based on a multitude of factors. Mot. 8-9. In response, Plaintiffs insist their allegations suffice because they "can produce expert testimony that will establish that Defendants' collection of commissions from vendors has increased the prices paid by Plaintiffs," and then block quote an academic article setting forth a theory that Plaintiffs claim shows they suffered economic harm. Opp. 8-9. But Plaintiffs' effort to bolster allegations through their Opposition is improper. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) ("[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss); *Elghembri v. Muhammad*, 2025 WL 2689856, at *2 (N.D. Cal. Sept. 18, 2025) ("new allegations in an opposition are 'irrelevant for Rule 12(b)(6) purposes'"). The TAC offers only a single conclusory paragraph that claims it is "axiomatic" vendors would have charged less for their products if they weren't paying Honey commissions. TAC ¶ 47. And promises of future expert testimony do not relieve plaintiffs of their pleading obligations. *See Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) (plaintiffs cannot "rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery").

Even if this Court does consider Plaintiffs' unpled academic theory, it only further illustrates the implausibility of Plaintiffs' theory of harm. According to Plaintiffs, the academic article shows that when an intermediary (like "distributors, brokers, payment processors, or other facilitators," Opp. Ex. B at 1) charges fees to a seller, "all buyers share the intermediary's fees to sellers, thereby raising the price of direct purchases," with sellers passing through to buyers the fees they are

charged. Opp. 8-9 & n.3. In other words, all shoppers purportedly pay a markup to cover intermediary costs, even if a buyer does not operate through an intermediary. *Id*. Assuming Honey qualifies as an intermediary, this still lends no support to Plaintiffs' theory that "if the 'Partner' vendors had not contracted to pay the Commissions to Defendants, the prices they could have charged, and would have charged, for items would have been lower than if the sales had been Commission-free." TAC ¶ 47. Plaintiffs acknowledge that Honey qualifies as a "non-monopoly intermediary," *see* Opp. 9, n.3, since Honey plainly competes against other browser extensions and affiliate marketers for commissions, *see, e.g.*, TAC ¶ 55 (identifying RetailMeNot.com and other businesses offering coupons); *Id*. Ex. H (identifying RetailMeNot as a "competing online coupon code aggregation service"). This article nowhere suggests that if a merchant no longer pays commissions to a single non-monopoly intermediary, that merchant will decrease its prices despite the continuing presence of other intermediaries. Indeed, such a theory would make no sense because even if merchants were not paying Honey commissions, they would still be paying commissions to other browser extensions and affiliate marketers. Implausible allegations to the contrary should not be accepted as true. *See Dahlia v. Rodriguez*, 735 F.3d 1060, 1076 (9th Cir. 2013).

Furthermore, this speculative theory has no connection to the alleged wrongdoing at issue: withholding better coupons. Plaintiffs must plead that the alleged injury "was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1035 (N.D. Cal. 2017) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011)). Plaintiffs have not, and cannot, allege that merchants' alleged decisions to increase their prices to account for Honey's commissions results from Honey's allegedly false representations that it would find the "best" coupons. Plaintiffs' theory necessarily posits that Honey and other intermediaries harm *all* consumers (even those who don't use Honey) because merchants raise their prices to cover the cost of commissions. This is disconnected from the alleged harm at issue, and thus does not suffice for UCL standing.

### 2. Plaintiffs Still Fail To Allege Reliance with Requisite Particularity.

Plaintiffs do not identify a single statement they saw and relied upon. Yet, they argue their allegations are sufficient under *In re Tobacco II*, 46 Cal. 4th 298 (2009). Plaintiffs first protest that

*Tobacco II* does not constitute a narrow exception to the general rule that a plaintiff must allege with particularity the statements she relied upon. Opp. 10. Plaintiffs are wrong. As PayPal's cited authority demonstrates, courts have characterized *Tobacco II* in precisely this way. *See* Mot. 12; *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *9 (N.D. Cal. Sept. 19, 2013) (*In re Tobacco II* exception inapplicable where plaintiffs "have not alleged anything approaching a 'decades-long campaign of deceptive advertising'"); *Haskins v. Symantec Corp.*, 2013 WL 6234610, at *5 (N.D. Cal. Dec. 2, 2013) ("[T]he *Tobacco II* 'exception' appears to be a narrow one, and Plaintiff has not demonstrated that she falls within it."). Plaintiffs offer no response to either case.

Plaintiffs argue they "have alleged the requisite grounds for any such exception" (Opp. 10), but point to no factual allegations to support this conclusory statement. While the TAC alleges that PayPal attempted to drive traffic to the Honey website through advertisements and influencer campaigns that were "intensive and long-term" (TAC ¶ 23), these allegations are conclusory and without any factual support. Plaintiffs do not explain how long this purported "long-term" campaign was in effect, where these advertisements were placed, how often they appeared, how often Plaintiffs were "exposed" to them, or the specific content of any advertisement. While a plaintiff may not need to plead with an "'*unrealistic degree* of specificity [the] particular advertisements and statements'" that she relied upon if the plaintiff "has been exposed to numerous advertisements over a period of decades," *Kane*, 2013 WL 5289253 at *9 (quoting *Tobacco II*, 46 Cal. 4th at 328), this does not mean a plaintiff can simply insert the term "long-term advertising campaign" into her complaint and thereby be absolved of pleading any facts related to reliance. And while the TAC alleges that certain other statements were present on the Honey website and in an email, Plaintiffs (1) do not allege how long (or when) the statements were present on the Honey website or how frequently they visited the Honey website (if ever), and (2) only refer to receipt of one email (that they do not allege that they ever read or relied upon). Indeed, even assuming that Plaintiffs visited the website once before downloading the extension (which Plaintiffs do not allege), Plaintiffs offer no explanation for why they would repeatedly visit the Honey website *after* downloading the extension, which remains on their browser. Nor do they even allege they used Honey prior to 2020. This is far from the decades-long advertising campaign at issue in *In re*

DEFENDANTS' REPLY ISO MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT
5:25-CV-02850-PCP

*Tobacco II*, where the plaintiff was repeatedly exposed to smoking advertisements in various forms over the span of several decades. 46 Cal. 4th at 307.

Plaintiffs' argument that they are entitled to a presumption of reliance because the statements are material is similarly misplaced. Plaintiffs cite *Chapman v. Skype Inc.*, but *Chapman* addressed UCL *causation,* noting that a plaintiff is not required to allege that "reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct," because it is enough to show that it was a "substantial factor." 220 Cal. App. 4th 217, 229 (2013). There was no question in that case that the plaintiff had seen the misrepresentations at issue. *Chapman* does not alleviate Plaintiffs' burden to demonstrate that the misrepresentation was at least "an immediate cause" of the injury, *id.*, a standard Plaintiffs cannot satisfy here where Plaintiffs do not allege that they even saw the alleged misrepresentations.

Plaintiffs have no substantive response to PayPal's argument that the statement appearing on Honey's website in 2018 is irrelevant since no Plaintiff alleges they saw the statement, and because it was published prior to the date the class period commenced. Opp. 11. As to the remaining statements, Plaintiffs contend they adequately alleged reliance by virtue of their conclusory statement that Plaintiffs "trusted and relied upon" Honey "to do exactly what Defendant had promised it would do." *Id*. But this vague statement does not relieve Plaintiffs of their burden to allege that they saw a single challenged statement before they downloaded or used Honey, particularly under the heightened Rule 9(b) pleading standard. *See, e.g.*, *Tabler v. Panera LLC,* 2019 WL 5579529, at \*12 (N.D. Cal. Oct. 29, 2019) (insufficient to identify "a range of 'representative' advertisements that Plaintiff alleges to be misleading," but provide "no indication which statements, if any, Plaintiff herself relied on"); Mot at 9-11 (collecting cases).

Apparently recognizing the TAC's deficiencies, Plaintiffs repeatedly offer to amend to "state that each Plaintiff read, believed, and relied upon" these statements." Opp. 11. This is just another implicit concession that the TAC's allegations are insufficient. And Plaintiffs' reliance on utterly inapposite cases that generally discuss the pleading standard under Rule 8(a) only further demonstrates their inability to meet the heightened pleading standard that applies here. *See In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) (dismissing adversary bankruptcy

proceeding for failing to allege any facts in support of claims); *Hebbe v. Pliler*, 627 F.3d 338, 340 (9th Cir. 2010) (pro-se prisoner's rights case).

### 3. Plaintiffs Still Fail To Allege Any Actionable Misrepresentation Under Any Prong of the UCL.

Plaintiffs' TAC fails to identify any actionable misrepresentations under the UCL. Plaintiffs argue that (i) they are only required to allege that "members of the public are likely to be deceived," and (ii) the disputed statements do not constitute puffery. Opp. 12-13. Neither argument succeeds.

*First*, Plaintiffs' argument that they are only required to allege the statements are misleading (as opposed to false) fails to save their claim, because they have not adequately alleged the statements were likely to deceive a reasonable consumer. Plaintiffs largely fail to contend with PayPal's argument that statements like "stop wasting time and money – Honey helps you find coupon codes on 30,000+ sites" are not misleading on their face under any of Plaintiffs' theories. *See* Mot. 12. None of Plaintiffs' allegations, including that merchants can request removal of codes or that PayPal searches specific sources, would render these generic statements misleading.

Plaintiffs primarily rely on their allegations that PayPal purportedly "hid codes pursuant to secret agreements with their 'Partner' vendors" to support their claim that the statements are misleading. Opp. 13. But as PayPal explained *supra*, Plaintiffs make no attempt to offer "factual content that allows the court to draw the reasonable inference" that Honey was not in fact attempting to search for the best coupons. *Pac. Structures, Inc. v. Greenwich Ins. Co.*, 2022 WL 875639 at *1 (N.D. Cal. Mar. 24, 2022). Without pointing to a single "better" coupon that was publicly available, Plaintiffs cannot allege that the statements that PayPal was searching for the best coupons are false or misleading. A Partner vendor's ability to request removal of a coupon code does not allege with the requisite particularity that a better coupon was actually available. Because Plaintiffs have not adequately alleged that PayPal was not searching for coupons in the way it described, Plaintiffs have not alleged that those statements were misleading under Rule 9(b).

While Plaintiffs include one throwaway paragraph stating they have adequately pleaded the unlawful and unfair prongs of their UCL claim even if they have failed to allege the fraudulent prong (Opp. 13), they include zero explanation of why. And Plaintiffs are wrong. Their failure to

allege a predicate violation of any law means they cannot pursue a claim under the unlawful prong. And because the "conduct that comprises the UCL fraudulent or unlawful prongs is the same conduct as the unfair prong, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *See* Mot. 16; *see also Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1105 (N.D. Cal. 2017). Plaintiffs provide no response to this argument.

*Second*, Plaintiffs also fail to demonstrate that the remaining advertisements—"we search for the internet's best coupons," "we'll search for them so you don't have to," "Honey will find every working promo code on the internet"—are anything more than puffery. "[G]eneralized and vague statements" like these "are not actionable." *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) (citations omitted). Plaintiffs offer no response to PayPal's argument that searching for the "best" coupon is subjective, given that different discounts may be more valuable to different shoppers based on what they are buying, their location, and their preferences. While Plaintiffs suggest that puffery is actionable because the UCL does not require reliance (Opp. 13), this is inconsistent with case after case recognizing both that (1) a UCL claim premised on misrepresentations requires the plaintiff to establish reliance, and (2) puffery is not actionable under the UCL. *See Key v. Qualcomm Inc.*, 129 F.4th 1129, 1141 (9th Cir. 2025) (a plaintiff relying on a UCL fraud theory "must demonstrate actual reliance"); *see also Bros. v. Hewlett-Packard Co.*, 2006 WL 3093685, at *5 (N.D. Cal. Oct. 31, 2006) (product superiority statements are non-actionable puffery).

Plaintiffs primarily rely on *Demetriades v. Yelp, Inc.*, where the court found Yelp's statements were not puffery. *See* Opp. 14-16. But the statements in *Demetriades* were "specific and detailed statements intended to induce reliance." 228 Cal. App. 4th 294, 311 (2014). They are thus different in kind from those here. For example, Yelp stated: "All reviews that live on people's profile pages go through a remarkable filtering process that takes the reviews that are the most trustworthy and from the most established sources and displays them on the business page. This keeps the less trustworthy reviews out…"; "Rest assured that our engineers are working to make sure that whatever is up there is the most unbiased and accurate information…" *Id.* at 311. Comparing those detailed representations with Honey's generic statements highlights the flaws in

Plaintiffs' argument. Finally, while Plaintiffs cite to *Serova v. Sony Music Entertainment* to argue that statements which are hard to verify may be deceptive (Opp. 16), that case was discussing the definition of commercial speech, and the court explicitly acknowledged case law recognizing that non-verifiable statements may be nonactionable as puffery. 13 Cal. 5th 859, 885 (2022).

**B.    Plaintiffs Still Fail To State a Plausible Claim for Relief Under the UCL.**

**1.    Plaintiffs' Theory of Recovery Is Improper Under The UCL.**

Plaintiffs still fail to allege an ownership interest in the recovery they seek. Plaintiffs' TAC requests recovery of "all commissions" PayPal received "as a result of the above-described unfair competition," TAC ¶ 65, but as PayPal explained, Plaintiffs cannot demonstrate a vested interest in the entirety of PayPal's commissions, including on purchases that did not even involve Plaintiffs or where no better coupons were available. *See* Mot. 17. Plaintiffs' Opposition does not even attempt to explain how Plaintiffs have a vested interest in PayPal's commissions writ large, instead claiming that "Plaintiffs seek return of the part of the purchase prices they paid which have ended up in Defendants' hands." Opp. 17. But the TAC requests far more than that.

Even assuming Plaintiffs had requested that narrower form of relief, neither the TAC nor the Opposition cures the disconnect between the commissions that PayPal purportedly obtained and any monetary harm Plaintiffs suffered by not using the "best" coupons. Despite this Court's prior guidance that the vested interest Plaintiffs may be able to seek, if any, would be the portion of the commission received by PayPal as a result of the increased price Plaintiffs purportedly paid due to Honey's inferior coupons (*see* Dkt. 86 at 6), Plaintiffs just seek the entire commission. Plaintiffs have not, and cannot, demonstrate a vested interest in those funds. Plaintiffs do not dispute, and thereby concede, that they have not alleged that the commissions PayPal received on any purchases were equal to or less than the monetary harm Plaintiffs suffered. *See* Mot. 17-18; Opp. 17. Instead, Plaintiffs seek a return of PayPal's profits. That type of relief is unavailable.

While Plaintiffs again spend significant space insisting that the UCL does not require direct privity, Opp. 17, this does not cure the fatal flaw with their claim because it does not connect Plaintiffs' monetary harm with the relief Plaintiffs seek. Even if the funds PayPal received were once in Plaintiffs' possession, that does not mean that the relief automatically qualifies as

restitutionary. *See Feitelberg v. Credit Suisse First Bos., LLC*, 134 Cal. App. 4th 997, 1012 (2005) (restitution requires that defendant "have obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep") (emphasis added).

### 2. Plaintiffs Still Cannot Demonstrate Entitlement to Injunctive Relief.

Plaintiffs have not, and cannot, allege any facts demonstrating "a real and immediate threat of repeated injury." *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 926 (N.D. Cal. 2012). First, Plaintiffs fail to respond to PayPal's argument that Plaintiffs have not even alleged that the statements are present on the Honey website. Mot. 18. This alone requires dismissal. *See, e.g., Pfizer Inc. v. Superior Ct.*, 182 Cal. App. 4th 622, 631, n.5 (2010) (denying injunctive relief where the "as effective as floss" campaign "has ceased").

In any event, Plaintiffs would not be able to establish a threat of future harm even if the statements were currently posted on the website. While there are limited circumstances where a court may find a threat of repeated injury even after a plaintiff becomes aware of a misstatement, that is not the case here. Plaintiffs rely on *Davidson v. Kimberly-Clark Corporation*, but they misunderstand that decision. In *Davidson*, the plaintiff intended to continue buying flushable wipes that were labeled as flushable, and had no way to know whether defendant's representation was true unless she purchased the product. 889 F.3d 956, 971 (9th Cir. 2018). The same is not true here. "Unlike the plaintiff in *Davidson*, Plaintiff[s] [have] not (and cannot) reasonably claim that [they have] no way of determining whether Defendants' representations are true." *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021). First, despite arguing that they can amend their complaint yet again to aver they would use Honey in the future, Plaintiffs have not done so, which means they cannot point to any immediate harm. *See, e.g., Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1248 (N.D. Cal. 2017) (denying injunctive relief where plaintiffs did not allege an intent to purchase from Facebook in the future). Further, because Plaintiffs are now aware of the way Honey searches for coupons, including via the disclosures in the operative Terms of Service explaining that Honey may not always find the best deal (which this Court has already found judicially noticeable, *see* Dkt. 57 at 5), Plaintiffs can decide whether they want to continue using Honey. Indeed, unlike in *Davidson*, Plaintiffs need not purchase *anything* to evaluate whether

DEFENDANTS' REPLY ISO MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED COMPLAINT
5:25-CV-02850-PCP

Honey is providing the "best" coupons because Honey is a free service—Plaintiffs can simply perform their own online searches to confirm whether they can find "better" coupons.

### C.    Plaintiffs Cannot State a Claim for Unjust Enrichment.

Even setting aside the fact that Plaintiffs' unjust enrichment claim is entirely duplicative of their UCL claim (and necessarily fails for the same reasons), Plaintiffs still fail to state a cognizable claim for unjust enrichment. First, Plaintiffs fail to identify any benefit that PayPal unjustly retained because they have not alleged that they were ever deprived of a better coupon. As it stands, Plaintiffs bought products they already planned to purchase, and received coupons through the Honey browser extension that lowered the price they paid to purchase those products. PayPal did not retain any benefit unjustly at Plaintiffs' expense, certainly not where they are unable to identify any particular benefit of which they were deprived in the first instance.

Second, Plaintiffs rely on their new allegation that the prices for products sold by merchants who partnered with Honey were purportedly inflated because merchants were paying PayPal commissions. Opp. 21. But that theory is flawed for the reasons stated *supra* Part II.A.1. This unpled academic theory actually undermines Plaintiffs' arguments, as it shows that these products would have been priced the same regardless of whether Honey was receiving commissions given the presence of multiple different competing intermediaries. In other words, PayPal did not retain any benefits at "Plaintiffs' expense" because Plaintiffs would have paid the same price for these products regardless of Honey's involvement. While Plaintiffs cite cases stating they have a right to disgorgement of profits even where they have not suffered a corresponding loss, these cases still require that they allege "a stake in the profits garnered" because "the circumstances are such that, as between the two [parties], it is unjust for [PayPal] to retain it." *See, e.g., In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020). Plaintiffs fail to allege that stake.

### D.    Plaintiffs' Opposition Fails To Save Their Invasion of Privacy Claim.

#### 1.    Plaintiffs Are Incorrect That This Court Cannot Take Judicial Notice of The Privacy Policy and Cookie Banner.

Plaintiffs agree that the Court can take judicial notice of the Privacy Policy as it exists on PayPal's website today, but dispute that Plaintiffs had adequate notice of the Privacy Policy and

dispute what the Privacy Policy reveals. *See* Opp. 21. As an initial matter, PayPal pointed to its Privacy Policy only to pre-emptively distinguish the instant case from *In re Facebook, Inc. Internet Tracking Litigation*. In *Facebook*, the Ninth Circuit held that a user had a reasonable expectation of privacy where Facebook collected user data after the user had logged out of Facebook, in direct contravention of statements in Facebook's privacy policy. 956 F.3d at 602. Here, however, there are no statements in the Honey Privacy Policy that PayPal would not collect this data. In fact, the Privacy Policy explicitly discloses that it *will* collect this data. *See* Mot. 22. While Plaintiffs' contend that PayPal has not demonstrated that Plaintiffs had reasonably conspicuous notice of the Privacy Policy, relying on *White v. PayPal Holdings Inc.*, --- F. Supp. 3d ---, 2026 WL 496712 (N.D. Cal. Feb. 23, 2026), this argument is inapposite since *White* concerned whether the plaintiffs in that case could be bound by an arbitration provision in Honey's Terms of Use. PayPal does not seek to bind any Plaintiff here to a contractual agreement to arbitrate. And while Plaintiffs claim it is disputed whether the Privacy Policy reveals what conduct PayPal engages in (Opp. 22), Plaintiffs do not point to anything in support of this alleged dispute. As PayPal noted, the language in Honey's Privacy Policy discloses that PayPal Honey collects "Internet or Network Activity" and "Shopping and Usage Data," which includes users' browsing histories. Mot. 22 (citing RJN Ex. 1).

Plaintiffs also argue that the Court cannot take judicial notice of Honey's cookie banner (Opp. 22) but cite no authority in support. Courts in this district, including this Court, routinely take judicial notice of cookie banners. *See Lakes v. Ubisoft*, 777 F. Supp. 3d 1047, 1053-54 (N.D. Cal. 2025); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1001 (N.D. Cal. 2024). This Court should do the same here. Plaintiffs claim the cookie banner uses "microscopic text," but the cookie banner is legible to the naked eye and requires the user to affirmatively click a button accepting or declining the use of cookies. *See* Dkt. 93-2 (Exhibit 2 to Request for Judicial Notice). Further, Plaintiffs' argument that the cookie banner fails to disclose that Honey reports all of the user's activity is a straw man because PayPal does not argue that the cookie banner serves as some broad disclosure. Rather, PayPal relies on the cookie banner for the narrow purpose of demonstrating that Plaintiffs' allegation that PayPal's "intrusion into the electronic devices of Plaintiffs and the members of the Plaintiff Class [was] without advance notice or any opportunity to consent to or

reject that intrusion" (TAC ¶ 90) is false. The Court should take judicial notice of the cookie banner which demonstrates that users had both notice and opportunity to consent or reject cookies.

### 2. Plaintiffs' Opposition Fails To Rebut Plaintiffs' Failure To Meet the Three-Part Test To Plead an Invasion of Privacy Claim.

As described in PayPal's Motion, to allege a claim for invasion of privacy, Plaintiffs must allege "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy" such that the breach is "highly offensive." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 35-37 (1994). Plaintiffs largely do not address these three elements and instead rely solely on *Facebook* to argue that they can plead a claim. Opp. 22-23. However, *Facebook* explicitly acknowledges and follows this three-part test. *See Facebook*, 956 F.3d at 601.

As to the first element, as PayPal demonstrated in its motion, Plaintiffs fail to plead a legally protected privacy interest because they do not identify any sensitive or confidential information collected by PayPal, or anything that remotely approaches a privacy interest in bodily autonomy. Mot. 20-21. As to the second element, PayPal's Motion also demonstrated that Plaintiffs have failed to allege any facts demonstrating they had a reasonable expectation of privacy in their shopping browsing history. Mot. 21-23. Plaintiffs' Opposition collapses these two distinct elements and argues that *Facebook* means their claim can proceed. *See* Opp. 22-23. But *Facebook* is inapplicable here and cannot excuse Plaintiffs from their pleading burden.

*First*, in *Facebook*, the court held that cognizable privacy interests were at issue where plaintiffs alleged that Facebook tracked their "comprehensive browsing" histories "'no matter how sensitive' or personal" they were, and where "by correlating users' browsing history with users' personal Facebook profiles—profiles that could include a user's employment history and political and religious affiliations—Facebook gained a cradle-to-grave profile without the user's consent." 956 F.3d at 598-99. But the TAC here contains no allegations that PayPal collected *any* sensitive or personal data, let alone used that data to construct personal profiles of Honey users. In fact, there are no allegations that PayPal collected any of Plaintiffs' data whatsoever. *Second*, in *Facebook*, the court held that users had a reasonable expectation of privacy in their browsing history activity

outside of Facebook where the data was collected *after* the user had logged out of Facebook, and where Facebook's privacy policy represented that Facebook would not collect that data. 956 F.3d at 602. But here, Plaintiffs do not allege that PayPal tracked Plaintiffs' browsing history after the Honey browser was uninstalled, or that the Honey Privacy Policy represents that PayPal would not collect this data. Indeed, as explained *supra* at Part II.D.1, Honey's Privacy Policy explicitly discloses that it does collect this information.

Thus, *Facebook* is distinguishable and cannot establish that Plaintiffs meet either of the first two prongs. *See Bradshaw v. Lowe's Cos.*, 2025 WL 3171740, at *6 (S.D. Cal. Nov. 12, 2025) (plaintiffs' analogy to *Facebook* "inapt" because the plaintiffs alleged only that their "'IP addresses,' undefined 'unique identifiers,' and 'browsing information'" were collected); *Wooten v. Biolife Plasma Servs. L.P.*, 807 F. Supp. 3d 1139, 1145 (E.D. Cal. 2025) (distinguishing *Facebook* where plaintiffs did not allege tracking of any "embarrassing, invasive, or otherwise private information"); *Rodriguez v. Brushfire Recs.*, 2025 WL 3692144, at *7 (C.D. Cal. Dec. 15, 2025) (distinguishing *Facebook* where there were no "allegations as to what of plaintiff's personal information, beyond her IP address, was collected by defendant").

As to the third element, Plaintiffs must allege that the invasion of privacy is "'highly offensive' to a reasonable person, and 'sufficiently serious' and unwarranted so as to constitute an 'egregious breach of the social norms.'" *Facebook*, 956 F.3d at 606 (citing *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009)). As PayPal explained, Plaintiffs' conclusory allegations fall far short of this standard. Mot. 23-25. Plaintiffs' Opposition entirely ignores this third element and makes no arguments that the alleged invasion of privacy here is "highly offensive" or an "egregious breach of the social norms," thereby conceding this third element is not met. A wise choice since the Ninth Circuit has recently held that the collection of online shopping data is not "remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law" and thus cannot support a claim for invasion of privacy. *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). Plaintiffs attempt to distinguish *Popa* by noting that it involved a merchant recording a consumer's interaction with its own website. Opp. 24. But that was not germane to the Ninth Circuit's holding. As Plaintiffs point out, the key fact was that that the plaintiffs in *Popa*

"identifie[d] no embarrassing, invasive, or otherwise private information collected." Opp. 25 (citing *Popa*, 153 F.4th at 791). This same is true here. Thus, Plaintiffs have not—and cannot—establish a highly offensive breach of privacy. Because Plaintiffs have failed to plead the three elements, their invasion of privacy claim should be dismissed.

### 3. Plaintiffs' Improper New Allegations in Their Opposition Fail To Remedy the Deficiencies in the TAC.

Plaintiffs argue for the first time that "[a]fter Plaintiffs' [TAC] was filed, most of the Plaintiffs were able to recover some of their data from Defendants through subject access requests under the UK's GDPR (General Data Protection Rule)" and that they "could amend" to add additional allegations. Opp. 23. As an initial matter, as discussed *supra* Part II.A.1, these additional allegations "are irrelevant for Rule 12(b)(6) purposes." *See Schneider*, 151 F.3d at 1197 n. 1. Even if the Court was inclined to consider Plaintiffs' improper additional allegations, Plaintiffs' claim would fail because these allegations still do not identify any personal or sensitive information collected by PayPal. The most Plaintiffs "could amend" to say is that they "were able to recover some of their data" and that PayPal "created an extensive library of web page views for each Plaintiff." Opp. 23. Plaintiffs still cannot identify any personal or sensitive data collected by PayPal, and fail to describe any conduct remotely similar to *Facebook*. Thus, even if the Court were to consider these additional allegations, Plaintiffs' invasion of privacy claim fails.

### E. Plaintiffs' Opposition Confirms That Further Amendment Would Be Futile.

Despite Plaintiffs' prior attempts at amending their complaint, Plaintiffs' Opposition implicitly acknowledges the TAC's deficiencies by repeatedly asserting they "could amend" to add additional allegations. However, for the reasons described *supra*, the TAC fails to state a claim and fares no better even with these additional allegations. Because Plaintiffs have failed to cure the deficiencies in the complaint on their fourth bite at the apple, the TAC should be dismissed with prejudice. *See Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 896-97 (N.D. Cal. 2015); *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

## III. CONCLUSION

PayPal respectfully requests that the Court dismiss the TAC in its entirety with prejudice.

Dated: April 29, 2026                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ Clement S. Roberts*
CLEMENT S. ROBERTS
Attorney for Defendants
HONEY SCIENCE, LLC and PAYPAL,
INC.